BUCHALTER
A Professional Corporation
MICHAEL L. MEEKS (SBN: 172000)
FARAH P. BHATTI (SBN: 218633)
CHRISTINA L. TRINH (SBN: 307879)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: mmeeks@buchalter.com; fbhatti@buchalter.com;
ctrinh@buchalter.com

Attorneys for Plaintiff
THE VINEYARD HOUSE, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE VINEYARD HOUSE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CONSTELLATION BRANDS U.S. OPERATIONS, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN;**<br>**(2) DECLARATORY RELIEF;**<br>**(3) CANCELLATION OF TRADEMARKS;**<br>**(4) FALSE ADVERTISING STATE LAW; AND**<br>**(5) UNFAIR BUSINESS PRACTICES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff THE VINEYARD HOUSE ("TVH") alleges as follows:

### GENERAL BACKGROUND

1.      TVH and Defendant Constellation Brands U.S. Operations Inc. own land in a particular area of Oakville, Napa Valley, California.  While both parties own different parcels of land, which are not contiguous, the land at one time was all under the ownership of Hamilton Walker Crabb ("Crabb"), and some of the land of

**COMPLAINT FOR FALSE ADVERTISING, ETC.**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

each party was owned by Crabb upon his death.  Crabb was widely recognized as one of the most significant pioneer winemakers in Napa Valley and during his ownership of what is now part of the TVH and Constellation properties, Crabb operated the To Kalon Vineyard Company using the said properties (hereinafter referred to as "To Kalon estate") to facilitate his operations.  Crabb's "To Kalon" wine was distributed throughout the United States and won several national and international awards and gained notoriety prior to the turn of the 20th century.  Given the notoriety of the "To Kalon" mark and its historical significance as it relates to Napa Valley, even after Crabb's death and subsequent purchase of the To Kalon estate by the Churchills and others, the "To Kalon" mark has remained a valuable geographical designation even today.  Because of the historical significance and importance of the "To Kalon" name as a geographical indication of a location in Napa Valley as it relates to the To Kalon estate, and as a vineyard designation[1], all those who own land that was a part of the original estate (as defined herein) should be given rights to enjoy use of the name.

2.     Through this action, TVH seeks to prevent Constellation from continuing to deceptively use its TO KALON trademark in a manner that is confusing to consumers and deceives them into purchasing wine that may or may not originate from the original To Kalon estate.  In fact, Constellation brands certain of its wines as TO KALON even though Constellation owns land that was not a part of the original To Kalon estate and is rather a part of the Robert Mondavi Winery.  Such marking is deceptive and geographically misdescriptive of the origin of the goods, especially given that the Alcohol and Tobacco Tax and Trade Bureau ("TTB") has enumerated rules and regulations regarding the manner in which

---

[1] A vineyard designation is used to denote the single vineyard from which a wine is produced. While a vineyard designation is often owned by one party that owns a particular vineyard, in this instance, given the historical use and context of To Kalon, the vineyard designation TO KALON can be claimed by multiple parties who own portions of Crabb's To Kalon estate which Crabb owned at his death.  Each such owner should be able to fairly use TO KALON in connection with its wine.

vineyard designations can appear, specifically stating that where the name of a vineyard is used, 95% of the wine must be produced from primary winemaking materials grown on the named vineyard. 27 C.F.R. § 4.39(m). Constellation's so called "To Kalon Vineyard" includes land that was not a part of the original To Kalon estate and therefore, this designation is false. Constellation's "To Kalon Vineyard" also includes land that was not owned by Crabb during his lifetime or upon his death. TVH seeks to enjoin Constellation from using TO KALON in connection with land that was not a part of the original and historic To Kalon estate. Constellation must also be enjoined from making any further false statements with regard to its To Kalon property and rights in the trademark, which it should never have been granted.

3.     Constellation fraudulently obtained and maintained Federal Trademark Registrations for marks containing the TO KALON name. In inducing the Trademark Office to provide the registrations, the Robert Mondavi Winery, the original owners of the trademark registrations, represented that To Kalon had no historical meaning or significance in the wine industry. Such statement was clearly false given the publicly available materials that clearly show that the Robert Mondavi Winery was aware of the historical significance of the geographic name and wanted to profit off of the same while preventing others who were also rightful owners of the To Kalon estate from doing the same. After fraudulently obtaining trademark registrations for TO KALON, Constellation has not only prevented others from using TO KALON but has filed for additional appellations of the mark in an attempt to expand its trademark hold on the term and to further prevent any use by third parties with legitimate rights to the name. Through this action, TVH seeks to cancel Constellation's trademark registrations based on fraud on the Trademark Office.

4.     TVH is also seeking declaratory relief that it has the right to use the term TO KALON or a variation thereof ("H.W. Crabb's To-Kalon" or "H.W.

Crabb's ToKalon Valley Vineyard") as a vineyard designation and in any other manner to accurately describe the historical nature and geographical location of TVH's property as it relates to H.W. Crabb and the use of To Kalon in connection with the property.  In the past, Constellation filed lawsuits against other owners of property that had been a part of the historical To Kalon estate, claiming that its ownership of the TO KALON trademark would prevent others from being able to use the term.  TVH asserts that it has a fair use right to use "H.W. Crabb's To Kalon" in connection with its property, and thereafter its wine, as such property was a part of the original To Kalon estate and such statement would be a truthful and accurate description of the same.

## THE PARTIES

5.     Plaintiff The Vineyard House LLC is a California Limited Liability Company with its principal place of business at 1581 Oakville Grade, Oakville, CA 94562.  Jeremy Justin Nickel is the President of Plaintiff.  Mr. Nickel currently owns approximately 43 acres of land in Napa Valley.  Part of his estate, approximately 17 acres, was historically a part of Crabb's To Kalon estate which was founded in the late 19th century, was owned by Crabb upon his death and during Crabb's lifetime was designated as a part of the To Kalon Vineyard Company.  The To Kalon Vineyard Company name was also used by the subsequent purchasers, the Churchills, to reference this part of the property.  TVH currently makes wines under THE VINEYARD HOUSE trademark.

6.     Defendant Constellation Brands U.S. Operations Inc. is a New York Corporation with its principal place of business at 235 North Bloomfield Road, Canandaigua, New York 14424.  Constellation owns the Robert Mondavi Winery in Napa Valley, which owns hundreds of acres of land, part of which was the original To Kalon estate.  Plaintiff is informed and believes and on that basis alleges that Constellation sells more than approximately 40 million cases of wine

annually, and that Constellation uses the "TO KALON" designation or a variation thereof on some of this wine.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 15 U.S.C. §1064 (cancellation of trademark registration); 15 U.S.C. §1121 (action arising under the Lanham Act); 28 U.S.C. §1331 (federal question); 28 U.S.C. §1338(a) (any Act of Congress relating to trademarks); 28 U.S.C. §1338(b) (action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws); 28 U.S.C. §1367 (supplemental jurisdiction); and 28 U.S.C. §§2201-2202 (declaratory judgment).

8.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant does business in this district and performs acts in this district that constitute false advertising and false designation of origin.  In addition, Constellation resides in this district.  Venue is also proper as Defendant's contact with this district would be sufficient to subject it to personal jurisdiction if the district were a separate state.  TVH does business in this district and has suffered harm in this district, and a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## GENERAL ALLEGATIONS

9.     "To Kalon" is the name of one of Napa Valley's oldest and historic vineyards. To Kalon was also used in connection with Crabb's estate as a whole, was used to identify the properties he owned at his death, and subsequently in connection with property owned by the To Kalon Vineyard Company, which was owned not only by Crabb but also subsequent to acquisition of Crabb's property, by the Churchill family.

10.     Hamilton Walker Crabb is widely recognized as one of the most significant pioneer winemakers in Napa Valley.  Crabb traveled to California in 1853 to mine gold in the Sierra Nevada and eventually settled as a farmer near

1  Hayward in Alameda County.  He moved to the Oakville area in Napa Valley

2  shortly after the Civil War and purchased 240 acres at the northwest corner of

3  Highway 29 and Walnut Lane in 1868.  Crabb originally focused on growing

4  Muscat of Alexandria grapes for raisins but after realizing the quality of the soil on

5  his property in 1872, he switched from table to wine grapes and christened his new

6  winery Hermosa Vineyards.  By 1878, he planted half his property with wine

7  grapes. The following year, he expanded his property to 359 acres after purchasing

8  an adjacent 119-acre parcel. By the end of the decade, Crabb had transformed his

9  359-acre estate into one of the largest, most productive wineries in Napa Valley and

10 perhaps the state. Joining the ranks of venerated winemakers such as Charles Krug

11 and Jacob Schram, Crabb's prolific output transformed Napa Valley into a premier

12 wine region in California in the 1880s, both in quality and quantity of wine

13 produced.

14      11.     In 1886, H.W. Crabb rebranded his winery as the To-Kalon Winery

15 Company.  He is widely quoted as saying that "the name To Kalon is Greek and

16 means the highest beauty, or highest good, but I try to make it the boss vineyard."[2]

17 (See Attached at Exhibit A).  Under the To Kalon label, Crabb's wine won

18 numerous awards at many national and European expositions.  Crabb established a

19 nationwide distribution network, which allowed him to ship bulk and case goods to

20 his wine agencies located throughout the East Coast, Midwest, and other locations.

21 He turned "To-Kalon" into a national brand.

22      12.     Crabb was regularly featured in newspapers, magazines, and trade

23 publications both as a prominent winemaker and for his model winery, which grew

24 to encompass a large winery building, distillery, cooperage, and steam powered

25 crushers and water pumps. In 1886, the *St. Helena Star* described To Kalon estate

26 as presenting "the appearance of a young town, in fact being more of a place than

27 [2] Frona Eunice Wait, *Wines & Vines of California or a Treatise on the Ethics of Wine Drinking*
(San Francisco: The Bancroft Company, 1889; reprint, Berkeley, CA: Howell-North Books,
28 1973), 108.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**COMPLAINT FOR FALSE ADVERTISING, ETC.**

many a California city."[3] In addition to the *St. Helena Star*, he routinely appeared in other publications such as the *Napa Register*, *Napa Daily Journal*, *San Francisco Chronicle*, *Pacific Rural Press*, *Pacific Wine and Spirit Review*, *San Francisco Merchant*, and *Breeder and Sportsman* throughout the late 19th century. He was featured in every major publication on Napa County's history from the 1870s to 1890s.[4]

13.     Crabb was known for his viticultural experimentation and for planting one of the largest varieties of vines in the nation, importing approximately 300 to 400 varietals from across the United States and Europe. His work attracted the attention of the Board of the State Viticultural Commissioners, the University of California, and later the U.S. Department of Agriculture, which each operated an experimental viticultural station within the To Kalon estate. He served on many viticultural committees and boards, including the Board of the State Viticultural Commissioners; presented at viticutural trade meetings; and authored numerous publications, including a chapter in George Husmann's *American Grape Growing and Wine Making*.[5] He was regarded as an authority on viticulture, enology, and soil quality and sold his cuttings to winemakers throughout the state.

14.     In 1889, Crabb purchased a 168-acre parcel of land from William Baldridge, a part of which now belongs to Plaintiff. The entire 526-acre property was known as the To Kalon estate, and he continued his prolific output through his death in March 1899.

15.     After his death in 1899, Crabb's 526-acre estate was sold at auction to E.S. Churchill.  Most historians consider the land owned by Crabb at his death to be

---

[3] "Viticultural," *St. Helena Star,* August 6, 1886.
[4] C.A. Menefee, *Historical and Descriptive Sketch Book of Napa, Sonoma, Lake, and Mendocino* (Napa, CA: Reporter Publishing House, 1873); *Illustrations of Napa County California with Historical Sketch* (Oakland, CA: Smith & Elliot, 1878); *History of Napa and Lake Counties, California* (San Francisco: Slocum, Bowen & Co., 1881); *A Memorial and Biographical History of Northern California* (Chicago: The Lewis Publishing Co., 1891).
[5] H.W. Crabb, "Viticulture in Napa County, California," in *American Grape Growing and Wine Making, with Contributions from Well-Known Grape Growers*, ed. George Husmann (New York: Orange Judd Company, 1880), 169-173.

considered the original To Kalon.  Such definition is used in this complaint to define "To Kalon estate."  The To Kalon estate includes part of the parcel now owned by TVH.  In 1902, E.S. Churchill deeded the property to his wife Mary W. Churchill.  Mary W. Churchill transferred the property to the To-Kalon Vineyard Co.  The To Kalon brand continued to be known for its quality wine and to win awards in the first decades of the 20th Century.  Napa Valley maps show the Plaintiff's parcel of land, which belonged to the Churchills, designated as the TO KALON VINEYARD COMPANY (See attached at Exhibit B).

16.     In 1943, Mary Churchill sold the approximate 526 acres that had comprised To-Kalon Vineyard Company to Martin Stelling Jr., a wealthy San Francisco steel manufacturer.  Following Martin Stelling's death in 1950, the estate was broken up and sold in pieces.  A small portion (including the Far Niente vineyard and TVH's property) was inherited by Martin Stellings's son, Doug Stelling.

17.     In 1984, Harold Gilliland (Gil) Nickel purchased TVH's property from Robert L. and Sharon L. Lieff who had bought the property from Stelling Vineyards.  Following Gil Nickel's death, TVH became the owner of a 43-acre property, of which 17 acres clearly dates back to Crabb and the original To Kalon estate comprised of land which Crabb owned at the time of his death.

18.     Portions of Crabb's To Kalon estate are also now owned by various third parties, including Constellation, Beckstoffer Vineyards , and the University of California at Davis.  The entire 526-acre property continues to be referred to as "To Kalon."  As used herein, "To Kalon estate" shall refer to the 526-acre vineyard that was founded, owned, and made famous by Crabb prior to the turn of the 20th century, and which was owned by Crabb upon his death.  It has been argued that the MacDonald family and the Detert family own a portion of To Kalon. However, the MacDonald and Detert properties were not part of To Kalon given that Crabb only

owned the properties for 1 month and apparently bought the same to aid a family member. Crabb did not own the Detert and MacDonald properties upon his death.

19. Throughout the 20th century, the term TO KALON was a known geographical area amongst consumers of wine. There were several maps (attached at Exhibits B & C) which reference TO KALON and the TO KALON VINEYARD CO. and many of those maps include a portion of Plaintiff's property noted as a part of the original To Kalon Vineyard Company.

20. Use of the TO KALON mark did not cease after the property was sold to the Stellings in 1943. In fact, TO KALON VINEYARD was used on letterhead between 1943-1950 to designate the property (attached at Exhibit D). In addition, a map dated 1950 commissioned by Caroline Bishop Stelling, the widow of Martin Stelling Jr., clearly shows use of TO KALON in connection with the property (attached at Exhibit C).[6] A Swiss colony postcard dated 1951-1953 shows use of "Tokalon Vineyards" as a prominent landmark along Highway 29 in Napa (see attached at Exhibit C). And in 1977, Douglas B. Stelling filed a DBA for "Far Niente and Tokalon." The notice was published in the paper four times and was set to expire on December 31, 1982. (See attached at Exhibit E). Therefore, it is clear that even up until the end of the 20th century, To Kalon was a term familiar and well known as a geographical area.

**Mondavi Fraudulently Obtained Federal**
**Trademark Registrations for TO KALON Trademarks**

21. On June 9, 1987, Robert Mondavi Winery Corporation ("Mondavi") filed an application to register TO KALON for wine. The application claims a date of first use of May 7, 1987 in interstate commerce and included a wine label featuring the wording TO-KALON to support such use.

---

[6] Caroline Bishop Stelling apparently recognized the monetary value of the TO KALON label and sought to brand the entire Stelling land as "To Kalon" even though not all of it was a part of Crabb's actual estate.

22.     On October 29, 1987, the U.S. Patent and Trademark Office issued an office action requesting Applicant Robert Mondavi Winery Corporation to "indicate whether TO-KALON can be translated, and/or whether that term has any meaning or significance in the relevant trade or industry."

23.     On November 21, 1987, attorneys for Robert Mondavi Winery Corporation filed a response stating that TO-KALON cannot be translated and has no present meaning or significance in the relevant trade or industry. They further stated that "Prior to the turn of the 20th Century, there was a winery in the Napa Valley which used the name 'Tokalon.'  Upon information and belief, that winery was sold off in parcels during the first fifteen to twenty years of the 20th Century and use of the name was discontinued.  Accordingly, although the name has some historical significance, it has no current meaning or significance in the wine industry."

24.     As stated above, in 1950, Caroline Bishop Stelling commissioned a map which clearly shows use of TO KALON in connection with the vineyard (See attached Exhibit C).  Such map includes the holdings and land of Robert Mondavi to which the Robert Mondavi Winery Corporation lays claim as TO KALON.[7] Mondavi falsely claimed that the name was discontinued during the first fifteen to twenty years of the 20th Century.  It is clear from the attached evidence that the mark was continuously used and was known as a geographical area at least until 1982, five (5) years before Mondavi filed its application.

25.     Throughout the 20th century, Crabb and To Kalon's significance within the Napa Valley wine industry continued to be recognized in a wide array of publications. These include *History of Solano and Napa Counties California* (1912); *American Wines* (1941); *Vines in the Sun* (1949); "Historic Napa County Wine Growers" (1951); "The Settlement Geography of the Napa Valley" (1961); *A*

---

[7] Again, the map commissioned by Caroline Stelling included land that was not a part of the original TO KALON as it was clear that use of the name had monetary value.  The map itself does not designate the actual TO KALON estate or what can be claimed as such.

*History of the Napa Viticultural District* (1965); *History of Napa Valley: Interviews and Reminiscences of Long-Time Residents* (1981); and *Winemaking in California* (1983).[8]

26.     In December 1963, the *Pacific Coast Review* published an article on Peter & Robert Mondavi and the Charles Krug Winery.  The article discusses the history of the Charles Krug Winery and its acquisition by the Mondavi family.  The article also states that the Mondavis acquired the "historic To Kalon vineyard…from Mr. and Mrs. Ivan N. Schoch.  These nearly 500 acres of vines in bearing are considered one of the most outstanding vineyards in California.  The original owner, Hamilton Walker Crabb, ranked with Krug among the immortal pioneers."[9]

27.     In January 1969, the *San Francisco Chronicle* published an article stating that Robert Mondavi "announces the purchase of 250 acres of the adjoining Tokalon Vineyards."[10] The following month, a *Wines and Vines* article published a separate article on the Robert Mondavi Winery's acquisition of 250 acres of "the famed To Kalon Vineyard."[11]

28.     There is also ample evidence to show that Mondavi knew of the fame and geographical indications of the TO KALON name.  It appears that <u>Mondavi twice commissioned research to be done on TO KALON, once in 1966 by Francis Gould and then again in 1979 by William Heinz.</u>

---

[8] Tom Gregory, *History of Solano and Napa Counties* California (Los Angeles: Historic Record Company, 1912); Frank Schoonmaker and Tom Marvel, *American Wines* (New York: Duell, Sloan and Pearce, 1941); Idwal Jones, *Vines in the Sun* (New York: William Morrow & Company, 1949); Irving McKee, "Historic Napa County Wine Growers," *California: Magazine of the Pacific* (September 1951); William James Ketteringham, "The Settlement Geography of the Napa Valley," (Master's thesis, Stanford University, 1961); Ernest P. Peninou, *A History of the Napa Viticultural District* (1965, reprint, Santa Rosa, CA: Nomis Press, 2004); *History of Napa Valley: Interviews and Reminiscences of Long-Time Residents*, vol. 3 (St. Helena, CA: Napa Valley Wine Library Association, 1981); Ruth Teiser and Catherine Harroun, *Winemaking in California* (New York: McGraw-Hill Book Company, 1983).
[9] Francis R. Gould, "Charles Krug—Wines in the Traditional Manner" *Pacific Coast Review* (December 1963).
[10] "Mondavi Winery," *San Francisco Chronicle*, January 14, 1969.
[11] "Big Vineyard Buy in Napa Valley," *Wines and Vines* (February 1969).

29.     Mondavi had commissioned Francis Gould, the author of the *Bottles and Bins* newsletter for Charles Krug Winery, to perform research regarding TO KALON in 1966.  Gould had written a letter to Joan Ingalls at the Wine Institute, dated August 22, 1970, stating that Charles I. Daniels, Vice President of the Robert Mondavi Winery "believes this property was once owned by Crabb and may be in fact the original To-Kalon Vineyard."  In 1970, Daniels signed a receipt for copies of documents pertaining to Kalon loaned by Gould. In addition, there are notes from a wine course held at the Mondavi Winery in 1969, which reference To-Kalon. (See attached at Exhibit F).

30.     In or around 1979, Tim Mondavi had asked William Heinz, a noted wine historian to author "The Vineyards of Wine of H.W. Crabb, Oakville, CA and his To-Kalon Label." It appears that the research was commissioned by Mondavi to establish "To Kalon" as an appellation.  An appellation is defined as a legally defined and protected geographical indication.  In the correspondence from Heinz to Mondavi, Mondavi was informed that the Robert Mondavi Winery was not the only owner of the To Kalon estate and that they had only purchased part of the original property.  Heinz recommended that "what obviously is required here is to trace through county deed books, the acquisition of lands by Crabb, and then how this was broken up to various owners and WHAT PART THE ROBERT MONDAVI WINERY NOW OWNS." (See attached at Exhibit G).   Based on this correspondence, it is clear that the "To Kalon" mark was well known and should have clearly been well known to Mondavi as at least a geographical indication based on the report commissioned by them and provided by William Heinz. Furthermore, it is evident that the Mondavis did not want to pursue the appellation as 1) they knew they did not own all of the original To Kalon estate 2) they did not want other third parties to be able to use TO KALON and wanted to reserve exclusive rights to use the name (which if it became an appellation, all rightful owners of the To Kalon estate would be able to use) and 3) wanted to use TO

KALON with parts of its property that were not a part of the original To Kalon estate.

31.     In the late 1970s and 1980s, To Kalon was referenced in conjunction with the partnership between Robert Mondavi and Baron Philippe de Rothchild in the Opus One Winery venture. In 1981, Bob Logan and Charlie Williams wrote to Robert Mondavi describing the soil quality of To Kalon parcels of land under consideration for the Opus One venture. A 1984 *San Francisco Chronicle* article featuring Opus One states that the joint venture purchased "grapes for its first few vintages from Mondavi's prime Tokalon vineyard."[12] In the draft text for an Opus One promotional brochure published in 1987, Robert Mondavi handwrote "Tokalon Bench" in the description of his winery, indicating he considered it to be a valuable marketing moniker.

32.     Robert Mondavi was a prolific public speaker, and in 1983, he gave a presentation at the Napa Valley Wine Symposium on Sauvignon Blanc wine, which he had rebranded as Fume Blanc. In his speech, he discussed the first plantings of Sauvignon Blanc wines in Napa Valley: "Both Keith Bowers of the University of California Extension Service and the wine historian, William Heintz, speculate that H.W. Crabb of Tokalon Vineyards was already growing Sauvignon Blanc among his 300 varietals at the same time, if not before, [Charles] Wetmore's documented cuttings arrived in California."[13]

33.     Robert Mondavi gave an in-depth interview to the author of *Robert Mondavi of the Napa Valley*, written by Cyril Ray and published in 1984. This book was written 3 years before the filing of any trademark applications for TO KALON by the Robert Mondavi Winery.  The book clearly uses TO KALON to geographically reference the property owned by Robert Mondavi Winery, stating

---

[12] Moira Johnston, "A Marriage Made in Napa," *San Francisco Chronicle*, April 22, 1984.
[13] *Transcription of Oral Tapes of the Napa Valley Wine Symposium, Silverado Country Club, 1983* (Napa Valley Wine Symposium, 1983).

that the "600-acre vineyard adjoining the winery is still To Kalon."[14] (See attached at Exhibit H).   Clearly, in 1984, TO KALON was still being used to reference this particular piece of property.   Therefore, the statements denying any significance of the term in the trademark application was intentionally false.

34.     In his remarks at a service for Mr. Ivan Schoch after his death in 1995, Mr. Robert Mondavi referred to the To Kalon in a geographically descriptive manner, referring to them as the "To-Kalon Vineyards in Oakville, the historic vineyards originally planted by Napa Valley's winemaking pioneer, H.W. Crabb." Mr. Mondavi also seems to admit that the Robert Mondavi Winery does not own the entirety of the To Kalon estate, stating that "Today, this internationally-renowned vineyard surrounds our Robert Mondavi Winery and is the source of fruit for the finest Cabernet Sauvignon and Fume Blanc wines." (See Exhibit I)

35.     In his 1998 book, *Harvests of Joy: How the Good Life Became Great Business*, Robert Mondavi states that he had "first encountered To Kalon during one of our early expansion phases at Krug" and that Louis M. Martini, Sr. had urged him to "take a look at the To Kalon Vineyard in Oakville" and that he was told by Mr. Martini that "that darn place To Kalon is one of the finest places in California for cabernet sauvignon."[15]  Mr. Mondavi continues to refer to the area as the To Kalon or To Kalon property throughout his book, clearly using the term as a geographical indication and not a brand name. (See attached at Exhibit J).

36.     Contrary to Defendant's assertions in its Trademark Application, use of TO KALON was not discontinued during the first ten to twenty years of the 20th Century.  In fact, in 1977, the ATF informed Sharon Lieff that the tradename TO KALON was used until 1965 by the California Champagne Co. dba Mt. Diamond Cellars. (See attached at Exhibit K).

---

[14] Cyril Ray, *Robert Mondavi of the Napa Valley* (London: Heinemann/Peter Davies, 1984.
[15] Robert Mondavi, *Harvests of Joy: How the Good Life Became Great Business* (San Diego, CA: Harcourt Brace & Company, 1998).

37.    On December 10, 1992, Robert Mondavi made a statement at a hearing in order to establish Oakville as a viticultural district in a proceeding before the ATF which clearly shows that Mondavi was aware of the significance of TO KALON and that the statements made to the U.S. Patent and Trademark Office were patently false.  In the hearing, Mondavi's founder, Robert G. Mondavi, provided testimony stating that "In the early 1950s, Louis Martini, Sr.,…told me that the grapes produced from the Oakville area, from the *To Kalon especially*, produced the finest Cabernet in all of Napa Valley.  Such testimony clearly shows that as early as the 1950s, Mondavi knew of the significance of the term TO KALON and referred to the place in 1992 as a geographical location.  It is important to note that when referencing TO KALON in the statement above, Mondavi was not referencing only the Robert Mondavi Winery Corporation property, but the original To Kalon estate, which is owned by multiple third parties as defined herein.

38.    On November 3, 1993, the Robert Mondavi Winery filed a second application for TO KALON VINEYARD, claiming a first use date of August, 1988 and a date of first use in interstate commerce of December, 1989.  Mondavi claimed ownership of its prior U.S. trademark registration for TO KALON but did not make any corrections to the claims of significance or translation that it had included in the previous application filing for TO KALON.

39.    In his 1998 book, Robert Mondavi clearly states "In Greek, To Kalon means "highest quality" or "highest good."  To me, that meant, simply, The Best." (See attached at Exhibit J)

40.    Mondavi failed to disclose to the U.S. Patent and Trademark Office that: (a) To Kalon is the name of a geographical location in Napa and is identifiable as such not only by residents of the area and consumers of wine but was also clearly designated on maps; (b) that "To Kalon" is the name of a well-documented and historic vineyard property; (c) that Mondavi owns a part of the historic To Kalon

estate but is not the sole owner of such property; (d) other owners rightfully also own portions of the original To Kalon estate; (e) To Kalon is a Greek phrase that was intended to be translated into "the highest beauty" by the founder of the historic estate, and (f) that the TO KALON name was used for longer than just the first ten to twenty years of the 20th Century.

41.    Mondavi's statement that the To Kalon winery was in Napa Valley prior to the turn of the 20th century is completely false. Plaintiff is informed and believes, and on that basis alleges that contrary to Mondavi's representations to the U.S. Patent and Trademark Office, it is clear from the maps and other relevant data that To Kalon was used in connection with the actual land.  The Churchills owned the To Kalon Vineyard Company until 1943, at which time it was transferred to Martin Stelling.  Martin Stelling used "To Kalon Vineyard" in association with the property until at least 1950.  There is also ample evidence to show other uses via companies and publications referring to "To Kalon" throughout the 1960s, 1970s, and even a few years before the Mondavi's filed their trademark application.  In fact, use of TO KALON persisted throughout the 20th Century as a reference to the geographical area in several publications and amongst the wineries in the area, including in a book about Robert Mondavi published in 1984, 3 years before the Robert Mondavi Winery filed an application for the mark. Such use shows that the TO KALON name continued to be used throughout the 20th Century to refer to the original vineyard established by H.W. Crabb.  Given that Mondavi acquired its property directly from Stelling, commissioned research from 2 different people regarding TO KALON, was considering TO KALON as an appellation, referenced TO KALON in a geographic manner, and made statements regarding the history of TO KALON in several different instances, including on its website and in several speeches, Mondavi was clearly aware that use of the TO KALON name was ongoing, and that other third parties also rightfully owned a part of the original To Kalon estate and should be entitled to use of "To Kalon."

42.     The current Robert Mondavi Winery website includes a statement that TO KALON is Ancient Greek for "the highest beauty."

43.     Plaintiff is informed and believes, and thereupon alleges, that at the time Mondavi applied for the TO KALON VINEYARD application, which was less than a year after the ATF hearing on the Oakville viticultural hearing, Mondavi was clearly aware that the To Kalon estate was a historic vineyard that had been and continues to be highly regarded throughout Napa Valley's history and that the To Kalon estate had been recognized as one of the world's great vineyards since the late 19th century all the way through the 20th century.  Plaintiff is informed and believes, and thereupon alleges, that Mondavi was also aware of the translation of "To Kalon" to "highest beauty."  Even with this knowledge, Mondavi failed to correct the records of the U.S. Patent and Trademark Office and did not provide such information to the Office, such misrepresentation and intentional withholding resulting in the fraudulent issuance of registrations for TO KALON and TO KALON VINEYARD.

### TO KALON is an Actual Geographical Location which Mondavi is Improperly Using And Which is Geographically Misdescriptive, False and Misleading

44.     Crabb's original historic To Kalon estate was made up of approximately 526 acres of land.  Of this land, Constellation owns approximately 188 acres. Constellation also owns approximately 361 acres of additional land, which was not a part of the original To Kalon property.  However, in its advertising materials and promotional campaigns, Constellation refers to its entire property as TO KALON or TO KALON VINEYARD, even though less than half is a part of the original To Kalon estate.

45.     Plaintiff is informed and believes that Constellation uses the TO KALON and TO KALON VINEYARD trademarks on wine that is made from all areas of the property, and not just from the historic To Kalon estate.  Tim Mondavi

publicly stated that "The trademark allows us protection on the term To-Kalon. It says it's our right any way we choose to use it…we can use it, if we choose, to bottle a wine from Nairobi."

46.   Under 27 C.F.R. 4.39(m), "the name of a vineyard…shall not be used on a wine label unless 95 percent of the wine in the container was produced from primary winemaking material grown on the named vineyard…."

47.   The purpose of the TTB rules is to protect consumers and the integrity of the products that are produced so that the designation on the bottle accurately describes the origin of the wine.  Under 27 C.F.R. 4.39(m), Constellation cannot use the designation "To Kalon" or "To Kalon Vineyard" on a wine label unless 95% of the wine in the bottle was produced from grapes grown only on the part of its property that was the original To Kalon estate.

48.   The manner in which Constellation is using the To Kalon name falsely suggests and misleads consumers into believing that the entire Constellation Vineyard was a part of the original Crabb property as established in the 1800s, and suggests and misleads consumers into believing that Constellation is the only owner of To Kalon estate property and therefore, the only source of goods that can be described as "To Kalon" or originating from "To Kalon."  Such statements are all false.

49.   Constellation has included such false and misleading statements in its marketing of its goods.  For instance, on its website, Constellation states that the To Kalon Vineyard, Oakville was "[o]riginally planted in 1868….[and] has become recognized as one of the finest first-growth vineyards of the world….To Kalon is a historic vineyard that provides Robert Mondavi Winery with grapes for its world-class Cabernet Sauvignon Reserve and Oakville District Cabernet Sauvignon, and is the exclusive source of our Fume Blanc Reserve."  The website further describes the "To Kalon Legacy" of Robert Mondavi.  What the website and marketing materials do is confuse the consumer as to what is To Kalon….Constellation clearly

admits that the term To Kalon refers to a historic vineyard but by obtaining a trademark registration and preventing others from using the mark, Constellation is misleading consumers into believing that it is the only real source of To Kalon wine.  This, again, is false.

50.     Constellation's advertising and promotional materials, including its website, create the false and misleading impression that it is the only owner of the historic To Kalon estate and that all of its wines can be designated To Kalon, even though such wines may not have originated from the original To Kalon estate. Mondavi's use of the TO KALON trademarks is geographically deceptively misdescriptive as the primary significance of TO KALON is geographic, and the purchasers of Constellation's wines are likely to believe that they originate in the historic To Kalon estate when in fact, they could actually be made from grapes grown in far off places such as Nairobi.

## Use of To Kalon By Plaintiff would be a Descriptive Fair Use

51.     Plaintiff is one of several owners of land which was a part of the original and historic To Kalon estate.

52.     Because Plaintiff's land was originally owned by Crabb and was later a part of the To Kalon estate and was so designated on several maps, Plaintiff has the right to reasonably identify the historical nature of its property and the fact that it was a part of the original and historic Crabb To Kalon estate.   To Kalon is the only name reasonably available to identify Crabb's historic To Kalon estate, of which Plaintiff's parcel was a part.  Use in this context would accurately describe the characteristics, ingredients and geographic origin of Plaintiff's goods.  Plaintiff is seeking to use only so much of the To Kalon name as is reasonably necessary to identify the origin of its property, which will not suggest any sponsorship or endorsement by Mondavi.

53.     Plaintiff's proposed use of the mark would be for purposes of identifying the geographical location and significance of its property and would

include historical references such as the name H.W. Crabb or other terminology which would clearly indicate the historical nature of the property and would do nothing to suggest any sponsorship or endorsement by Constellation. As the rightful owner of property that was a part of the original historic To Kalon estate, Plaintiff should be allowed to make such use and identify the property in this manner.

54.   To Kalon is a geographical indication of a specific place. Under the Treasury Department rules pursuant to the Federal Alcohol Administration Act (TTB), an American wine may, under defined circumstances, indicate that it originates from a particular geographic area. The regulation is designed to aid consumers in identifying the origin of the wine and to assist the winemaker in distinguishing its products from those that originate in different areas. In this instance, because To Kalon is a geographical indication, and because Plaintiff's property is a part of the same, Plaintiff should be allowed to use such geographical indication, especially when used in connection with other wording to establish the historical context of the geographical area.

## FIRST CLAIM FOR RELIEF

### (False Advertising and False Designation of Origin - 15 U.S.C. §1125(a))

55.   Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

56.   Constellation has used the terms TO KALON and TO KALON VINEYARD in commerce on or in connection with its wines.

57.   Constellation's use of TO KALON and TO KALON VINEYARD in its advertising, marketing, promotional materials and on its website misrepresents the nature, characteristics, qualities, and geographic origin of its wines.

58.   Constellation's acts constitute false advertising, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of 15 U.S.C. §1125(a). Among other things,

Constellation's advertising, marketing, promotional materials and website create the false and misleading impression that it is the sole owner of the TO KALON estate and as such, is the only rightful source of such goods.

59.   Constellation's acts as alleged herein have been deliberate, willful and in bad faith, and this case constitutes an exception case justifying an award of reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief – Federal Law)

60.   Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

61.   An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their rights to use of the name TO KALON.  Defendant has sent Plaintiff cease and desist letters regarding Plaintiff's trademark applications for marks containing the TO KALON term and Defendant has demanded that Plaintiff withdraw its pending applications and not use or dilute Defendant's "famous" mark.

62.   Plaintiff believes that it has the rights to use the term TO KALON as part of a vineyard designation and otherwise to fairly and accurately describe the geographic origin of its property which was a part of Crabb's original To Kalon estate.  Defendants have not in any manner acknowledged Plaintiff's rights in owning a part of the original To Kalon estate.  Rather, Defendants have only asserted their trademark rights in the TO KALON marks against Plaintiff without consideration for Plaintiff's fair use rights in the same.

63.   Plaintiff desires a judicial determination of its and Constellation's rights with respect to use of the TO KALON name.  A judicial declaration is necessary and appropriate at this time under the circumstances in order for Plaintiff to promptly ascertain its rights and protect its interests with respect to the To Kalon land which Plaintiff currently owns.  Plaintiff would also like a prompt judicial

1 | determination so it can determine what can be featured on labels for its next release

2 | of wines.

### THIRD CLAIM FOR RELIEF

### (Cancellation of Trademarks – Federal Law)

5 |     64.    Plaintiff repeats, realleges and incorporates by reference, as though

6 | fully set forth herein, the allegations in all prior and subsequent paragraphs.

7 |     65.    Constellation is the owner of U.S. Registration Nos. 1,489,619 for TO

8 | KALON for wine and U.S. Registration No. 1,857,851 for TO KALON

9 | VINEYARD for wine (collectively the "Trademark Registrations").

10 |     66.    Constellation (through the previous registrant Mondavi) has falsely

11 | stated, under penalty of perjury, that "TO-KALON cannot be translated and has no

12 | present meaning or significance in the relevant trade or industry." TO KALON is

13 | clearly translated as the "highest beauty" as clearly stated on Defendants' website.

14 | In addition, based on the evidence presented herein, it is clear that Defendants were

15 | aware of the fame of the TO KALON name in connection with the relevant trade or

16 | industry at the time the application was filed.

17 |     67.    Constellation (through the previous registrant Mondavi) was clearly

18 | aware of the significance of the TO KALON term and the translation of the same at

19 | the time of filing the Trademark Registrations. Defendant had commissioned two

20 | separate studies to research the TO KALON name and were provided information

21 | which is completely contrary to the statements that they made to the U.S.

22 | Trademark Office in order to fraudulently obtain a trademark registration.

23 |     68.    The statement "TO-KALON cannot be translated and has no present

24 | meaning or significance in the relevant trade or industry" was made by an

25 | authorized signatory of Defendant and was made with the intent to induce

26 | authorized agents of the U.S. Patent and Trademark Office to grant the Trademark

27 | Registrations to Defendant. The U.S. Trademark Office reasonably relied on the

28 | statements made by Defendant, under penalty of perjury, even though they were

false and granted the Trademark Registrations to Defendant.  Defendants' fraud on the U.S. Patent and Trademark Office provides a basis for cancellation of the Trademark Registrations.

69.     Defendants' trademark registrations are also subject to cancellation as they are deceptively misdescriptive and primarily geographically deceptively misdescriptive when used on the relevant goods.  Defendants use the TO KALON and TO KALON VINEYARD marks on wine that includes grapes which are not grown on the historical To Kalon Vineyard.  Such use is deceptively misdescriptive as such use misdescribes an ingredient, quality and characteristic of Defendants' wines.  Such use is also primarily geographically deceptively misdescriptive as the primary significance of "To Kalon" and "To Kalon Vineyard" is geographic and purchasers of Defendants' wines are likely to believe that the wines originate from Crabb's historic To Kalon estate, when in fact, such wines are actually made from grapes that were not a part of the To Kalon estate.

70.     Plaintiff has been damaged and will continue to be damaged by the continued registration of TO-KALON and TO KALON VINEYARD.  Accordingly, Plaintiff seeks cancellation of Defendants' Trademark Registrations.

## FOURTH CLAIM FOR RELIEF

### (False Advertising – California Law)

71.     Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

72.     Defendants' actions constitute false and misleading advertising in violation of California Business & Professions Code §17500 *et seq.*

73.     Defendant's false advertising, as detailed above, presents a continuing threat to consumers and members of the public in that Defendant promotes and advertises its wine through false and misleading advertising.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been injured, and such harm will continue unless the Court enjoins

Defendants' actions. Plaintiff has no adequate remedy at law for Defendant's continuing false advertising.

## FIFTH CLAIM FOR RELIEF

### (Unfair Business Practices – California Law)

75. Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

76. Defendants' acts constitute unfair competition in violation of California Business & Professions Code §17200 *et seq.*

77. Defendants' unlawful, unfair and fraudulent business acts and practices and its unfair, deceptive, untrue and misleading advertising presents a continuing threat to members of the public in that Defendant intends to promote and advertise its wine through such false advertising and in violation of 28 U.S.C. §205.

78. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been injured, and such harm will continue unless the Court enjoins Defendants' acts. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment and prays the Court for the following relief:

(1) That the Court preliminary and permanently enjoin Defendant, and any officers, agents, servants, employees or attorneys of Defendant, and all others in active concert or participation with it, from making, disseminating, or cause to be made or disseminated in any publication or advertising devices, including the internet, by public proclamation or in any other manner whatsoever, any statement concerning "To Kalon" or To Kalon Vineyard" which is untrue or misleading, and that is known or should be known through reasonable care to be untrue or misleading, including, among other things, referring to the 230-acre Robert Mondavi Vineyard as the "historic To Kalon Vineyard" and/or using the terms "To

Kalon" or "To Kalon Vineyard" to refer to any land other than the land that was once part of Crabb's historic To Kalon property of which Defendant now owns approximately 250 acres.

(2)     For a declaration that (i) Plaintiff has the right to use "TO KALON" as a vineyard designation and otherwise to describe fairly and accurately the geographic origin of its portion of Crabb's original To Kalon property; (ii) Defendants' Trademark Registrations for TO KALON and TO KALON VINEYARD do not preclude Plaintiff from using the term "Tokalon" in connection with its land or wine; and (iii) Any use of TO KALON by Plaintiff be deemed a fair use under all applicable trademark laws.

(3)     For an Order cancelling Defendant's Trademark Registrations for TO KALON and TO KALON VINEYARD;

(4)     For an award of corrective advertising, which is necessary and appropriate to counteract the beliefs created and reinforced by Defendants' false and misleading advertisements, which misbeliefs are likely to linger into the future absent such corrective advertising;

(5)     For costs of suit incurred herein, including all reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a); and

(6)     For other such other and further relief as the Court may deem just and proper.

DATED:  March 18, 2019                    BUCHALTER
                                          A Professional Corporation


                              By:  /s/ Michael L. Meeks
                                   MICHAEL L. MEEKS
                                   FARAH P. BHATTI
                                   CHRISTINA L. TRINH
                                   Attorneys for Plaintiff
                                   THE VINEYARD HOUSE, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  March 18, 2019

BUCHALTER
A Professional Corporation


By:  */s/ Michael L. Meeks*

MICHAEL L. MEEKS
FARAH P. BHATTI
CHRISTINA L. TRINH
Attorneys for Plaintiff
THE VINEYARD HOUSE, LLC

BUCHALTER
A Professional Corporation
Irvine

BN 35826777v1

**COMPLAINT FOR FALSE ADVERTISING, ETC.**