| | |
|---|---|
| BUCHALTER<br>18400 VON KARMAN AVE., ST. 800<br>IRVINE, CA 92612 | HUNTON ANDREWS KURTH LLP<br>2200 PENNSYLVANIA AVE., NW<br>WASHINGTON, DC 20037 |
| VIA ECF<br>Honorable Yvonne Gonzalez Rogers<br>United States District Judge<br>Oakland Courthouse<br>1301 Clay Street<br>Oakland, CA 94612 | December 9, 2019 |

*The Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.,*
**4:19cv1424 (YGR)**

Dear Judge Rogers:

Pursuant to Rules 8.b of Your Honor's Standing Order in Civil Cases, the Parties respectfully submit a Joint Discovery Letter concerning certain discovery disputes. The parties have had several meet and confers, but were unable to reach a resolution on these issues.

**Defendant's Position**

**TVH Refuses to Produce Its Sales Data, and a Witness for Its Lost Sales and Harm to Its Reputation**: Plaintiff's theory of damages appears to be a moving target in this case.[1] Despite having changed its damages theory numerous times, Plaintiff now seeks actual damages in the form of corrective advertising (and disgorgement of Defendant's profits). This entitles Defendant to discovery of Plaintiff's sales and profit information to determine if Plaintiff has in fact suffered any actual damages because Plaintiff <u>must</u> show some non-speculative harm to its reputation in order to obtain corrective advertising. *See e.g., Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF HRL, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011) (holding corrective advertising must be based upon some measurable impact); *see also, Zelinski v. Columbia 300, Inc.*, 335 F3d 633 (7th Cir. 2003); *Zazu Designs v. L'Oreal, SA*, 979 F2d 499 (7th Cir. 1992) (holding that corrective advertising cannot be viewed in a vacuum but must be viewed in the context of actual damages to sales). Moreover, Plaintiff's sales data informs the scope of needed corrective advertising. *See e.g., MasterCardnt'l, Inc. v. Arbel Corp.*, 13 U.S.P.Q. 2d 1958 (S.D.N.Y. 1989).

Plaintiff argues that since it has yet to sell any To Kalon wines at all, its prior sales of non-To Kalon wines are irrelevant. But Plaintiff is seeking corrective advertising, which requires a showing of some non-speculative harm to its goodwill or reputation that needs to be rehabilitated. Since it is not selling To Kalon wines, the only reputation that it could assert was harmed is to its existing wine business. Courts have precluded awards of corrective advertising where a plaintiff cannot establish harm to its reputation. *See e.g., Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04-7203, 2006 WL 1359955, at *2 (S.D.N.Y. May 18, 2006) (precluding award of corrective advertising for failure to show damage to reputation). Thus, Defendant must be able to inquire as to Plaintiff's sales to determine whether damage to its reputation exists.[2]

**TVH Refuses to Designate a Witness for Defendant's 30(b)(6) Noticed Topics**: Plaintiff has refused to produce witnesses for a number of Defendant's 30(b)(6) noticed topics. This includes things such as Plaintiff's factual basis for its pleadings (Topic 44 and 46), what damages it is seeking (Topic 47), and its alleged harm to its reputation (Topic 39). Plaintiff is even refusing to produce a witness to testify as to its interrogatory responses (Topic 45). Plaintiff offers no reasonable basis for refusing to produce witnesses for such highly relevant topics to this action.

**Response to Plaintiff's Position:**
Plaintiff complains Defendant has not produced grape sourcing information. However, Defendant produced grape sourcing information that identifies the specific percentages of grapes in each varietal and vintage and the specific block of land each grape originated from. Defendant also

---

[1] First, Plaintiff sought in its original Complaint only corrective advertising. *See* D.I. 1 at 25. Subsequently, in its First Amended Complaint Plaintiff added a prayer for disgorgement of Defendant's profits. *See* D.I. 30 at 32. Then, Plaintiff apparently *dropped all such theories* in its Initial Disclosures under Rule 26(a) when it stated on August 30, 2019, "Plaintiff has not sought monetary damages." Three months later, however, Plaintiff changed position again. In response to Defendant's Interrogatory No. 21, Plaintiff did a pirouette and indicated it was seeking lost profits, disgorgement of Defendant's profits, and corrective advertising, despite not even having pled all those claims. And now, Plaintiff has supplement the response to Interrogatory No. 21 to limit its damages theories to disgorgement of Defendant's profits and corrective advertising.

[2] If corrective advertising is not a part of Plaintiff's case anymore, Defendant is willing to forego its request for Plaintiff's financial data.

Honorable Yvonne Gonzalez Rogers     3     December 9, 2019

produced a map showing such blocks for Plaintiff's reference.[3] Defendant has produced the most granular detail it maintains in its business records for the source of its grapes.

Plaintiff complains Defendant did not produce data with respect to Schrader wines. However, Schrader wines are not made or sold by Defendant. They are a sublicensee of Defendant's licensee Beckstoffer and relate to wines Schrader makes from grapes purchased from Beckstoffer. Although Defendant recently acquired Schrader, it remains a distinct legal entity and sublicensee of Beckstoffer's that is not a party to this action.[4] Further, Defendant does not possess any records as to Beckstoffer's grape sourcing as it is an independent third party.

Plaintiff complains Defendant has failed to produce its sales data. Defendant has produced several reports that cover all of its financial data through all sales channels for each SKU of To Kalon wine sold within the last six years. The only errors were mislabeling of SKU names (e.g., I Block sales were grouped together with Cabernet sales) resulting from combining several different financial databases. Defendant has been painstakingly correcting those errors and produced to Plaintiff a corrected report. Plaintiff complains Defendant has not produced the source documents. Defendant produced in native spreadsheets generated from its financial databases from queries on the SKUs at issue. Plaintiff appears to complain Defendant has not produced its entire financial database for the entire company for all products. Plaintiff should not be entitled to Defendant's entire financial database including, *e.g.*, its Corona beer business.

Plaintiff complains Defendant refuses to produce a settlement agreement from a prior litigation in this Court with Beckstoffer. While Defendant fails to see the relevance of its prior settlement in another case, to avoid further dispute, Defendant will supplement its production to produce the 2003 settlement agreement[5] and communications relating to the violations of this agreement. Defendant repeatedly told Plaintiff that it is not in possession of communications occurring prior to Constellation's acquisition of Mondavi in 2004.

Plaintiff demands that Constellation amend its document responses to explain "What Will Be Produced." During several meet and confers, Defendant maintained its objections to several requests, but agreed to produce and in fact did produce responsive documents. Plaintiff's complaint is only that Defendant has not "conformed its responses to what has been produced." While Defendant does not understand the need for such busy work, it previously agreed to supplement its responses despite Plaintiff already having the documents.

---

[3] Defendant is still gathering the data for the Harvest of Joy wines that were a small run sold exclusively through the winery and anticipate producing them shortly.

[4] Moreover, Plaintiff's claims regarding Defendant's advertising of its wines have nothing to do with Schrader wines, which are a wholly different product.

[5] Defendant never executed a settlement agreement with Beckstoffer in 2016, and the referenced 2016 settlement agreement is a typo.

**Plaintiff's Position**

**Grape Sourcing Percentages for To Kalon Wines**: On 12-2-19, the Court ordered that Constellation was required to identify the grape source and percentage of grape sources for each To Kalon wine for the past 6 years, but did not need to identify block and row numbers. Yet, Constellation refuses to provide this information in response to interrogatories and the information provided in documents is incomplete. TVH requests that the Court order Constellation to identify the specific percentages for grape sourcing for each wine that uses To Kalon on the label or bottle for the past 6 years. Constellation has not produced the complete grape sourcing records. The document that Constellation identifies as "relevant" to grape sourcing is missing relevant the block composition detail for several vintages and all relevant To Kalon wines, *i.e.* wines with To Kalon on the bottle/label from 2013 to the present. The document produced is missing the Robert Mondavi Harvest of Joy To Kalon Vineyard Red Blend block composition detail and the relevant Schrader wines, which Constellation acquired, including the Schrader MB To Kalon Vineyard CS.

**Constellation Has Not Produced All Sales Data:** TVH's FRCP 30(b)(6) deposition on Constellation's sales of To Kalon wines was scheduled for 12-10-19 *contingent upon* receipt of all sales data for the 6 year period being provided by 12-3-19. No documents were provided on 12-3-19 as promised. Constellation has produced some documents, but the complete data has still not been provided and Constellation refuses to provide the underlying files that were used to create the sales spreadsheets. The spreadsheets that were produced identify file paths to the source documents, but those source documents were not produced. The sales data does not appear to cover all sales channels. For example, Constellation has not provided any sales data in fiscal years 2014-2019 for the 3 Robert Mondavi wines that are appear to be sold only at the winery (Fume Blanc I Block, To Kalon Cabernet Sauvignon, and Harvest of Joy To Kalon Vineyard Red Blend).

**Constellation Refuses to Produce the Agreements and Communications With Beckstoffer Concerning the License Agreement and the Lawsuit Over the Use of the Trademark:** To date, Constellation has produced a 2003 License Agreement and some communications. Constellation has not produced all the non-privileged documents. Constellation has not produced the "August 8, 2003 Settlement Agreement, the "To Kalon Settlement Agreement;" the "Beckstoffer and Schrader [i.e. Constellation] To Kalon Vineyard Grape Contracts" or the "Multiple Year Vineyard Designation Contract" for To Kalon. Constellation did produce letters where it accuses Beckstoffer of violating all of these agreements concerning the use of To Kalon. But Constellation has not produced the agreements themselves or the non-privileged communications related to formation and carrying out these agreements, especially communications related to the alleged violations of these agreements and resolving those alleged violations.

**Constellation Refuses to Narrow Improper FRCP 30(b)(6) Topics:** Constellation served a 47 topic notice. TVH and Constellation have agreed that all topics will exclude privilege, work product, and expert testimony matters and TVH will only prepare the designee based on information known or within TVH's possession, custody or control. After exhausting meet and confer efforts and narrowing the issues that remain, TVH has objections to only the following

Honorable Yvonne Gonzalez Rogers                    5                         December 9, 2019

topics: 1, 27, 31, 32, 39, 44, 45, and 47. Constellation refuses to narrow these topics in any manner whatsoever. For example, topic 47 asks TVH to prepare a person to testify on "All statements of fact, allegations and other representations made by Plaintiff in its Complaint and the Exhibits thereto." This is an improperly overbroad topic. *See* Darbeevision, Inc. v. C&A Mktg., 2019 U.S. Dist. LEXIS 134914, *20, 2019 WL 2902697 (C.D. Cal.) (Rule 30(b)(6) requires "painstaking specificity" and "does not permit 'burdening the responding party with production and preparation of a witness on every facet of the litigation.'").

**TVH's Sales of Non-To Kalon Wines Are Irrelevant:** TVH dropped its claim for lost profits and confirmed the same to Constellation in emails, telephone calls, and a revised interrogatory response. *Compare*, Constellation's Statement Above ("Plaintiff has refused to stipulate that it is dropping its actual damages claims."). TVH seeks redress for Constellation's unjust enrichment and as a deterrent to further enrichment. As such, TVH's sales are irrelevant to that claim or any defense. *See Maier Brewing Co. v. Fleischman Distilling Corp*., 390 F.2d 117, 121 (9th Cir.); and *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980). In *Maier Brewing*, the Ninth Circuit awarded an accounting to a plaintiff who had not suffered any diversion of sales from the defendant's infringement.

TVH's claim for corrective advertising does not make its sales relevant. TVH's sales of non-To Kalon wines has no relevance to a prospective corrective advertising award. Courts usually look to the wrongdoer's, *i.e.* Constellation's, advertising budget for determining the amount of corrective advertising . *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1996) (Courts "have acknowledged the Federal Trade Commission's rule requiring businesses who engage in misleading advertising to spend 25% of their advertising budget on corrective advertising); and *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374-76 (10th Cir. 1977). "Prospective costs may be difficult to determine precisely and present a danger of over compensation if they exceed the value of the mark," however "the burden of any uncertainty in the amount of damages should be borne by the wrongdoer." *Adray* at 989. The cases Constellation relies upon do not support its relevancy argument. *See Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 ("Cromley conceded that the cost of corrective advertising would be the same no matter how many bowling balls Columbia sold under the Pin Breaker name in Korea. This is correct."). In *Quia Corp. v. Mattel, Inc.*, the plaintiff sought corrective advertising damages after Mattel engaged in a massive, online marketing campaign for a product that infringed the plaintiff's mark. 2011 U.S. Dist. LEXIS 76157 (N.D. Cal. July 14, 2011). The court stated that "[a] plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages." *Id.* at 15-16. In *ZAZU Designs v. L'Oreal S.A.*, 979 F.2d 499 (7th Cir. 1992), the plaintiffs sought lost profits.

**Constellation Has Not Provided the Amended Document Requests RFP (Set 2) Confirming What Will Be Produced.** Constellation promised, but has yet to provide these amended responses.

We thank You for the Court's consideration in this matter and remain available for a teleconference should the Court so order one.

Honorable Yvonne Gonzalez Rogers             6                                December 9, 2019

>                                        Respectfully submitted,
>
>                                        /s Edward T. Colbert
>                                        Edward T. Colbert
>
>
>                                        /s Peter Bales
>                                        Peter Bales

cc:     All Parties (via ECF)