1   Timothy J. Carlstedt (State Bar No. 168855)
    HUNTON ANDREWS KURTH LLP
2   50 California Street, Suite 1700
    San Francisco, California 94111
3   Tel.: (415) 975 – 3700
    Fax: (415) 975 – 3701
4
    Edward T. Colbert (DC Bar No. 206425)
5   William M. Merone (DC Bar No. DC-458104)
    HUNTON ANDREWS KURTH LLP
6   2200 Pennsylvania Avenue, N.W.
    Washington, D.C. 20037
7   Tel.: (202) 955-1500
    Fax: (202) 778 – 2201
8
    *Counsel for Defendant/ Counterclaim Plaintiff*
9   *Constellation Brands U.S. Operations, Inc.*

10

11                  **UNITED STATES DISTRICT COURT**

12                 **NORTHERN DISTRICT OF CALIFORNIA**

13

14
    THE VINEYARD HOUSE, LLC,
15   a California limited liability company,              Case No.  4:19-cv-01424-YGR

16          *Plaintiff / Counterclaim-Defendant*,
                                                          **DEFENDANT'S MOTION TO**
17   v.                                                   **EXCLUDE OR LIMIT**
                                                          **CERTAIN TESTIMONY BY**
18   CONSTELLATION BRANDS U.S.                            **PAUL W. REIDL**
     OPERATIONS, INC.,
19   a Delaware corporation,

20          *Defendant / Counterclaim-Plaintiff.*

21

22

23

24

25

26

27

28

1    Defendant, Constellation Brands U.S. Operations, Inc., respectfully moves for

2    an order to exclude or limit certain testimony by Paul W. Reidl, a trademark attorney

3    retained by Plaintiff, The Vineyard House, LLC, from testifying as to the opinions

4    set forth in his first two reports.[1] Those reports are:

5    1.    Statement and Declaration of Paul W. Reidl, December 16, 2019 ("First Reidl

6          Rep."); and

7    2.    Statement and Rebuttal Declaration of Paul W. Reidl, January 8, 2020

8          ("Second Reidl Rep.").

9    *See Declaration of Armin Ghiam*, Exs. A, B.

10    Mr. Reidl advances numerous opinions on a variety of subjects, much of which

11   is either not relevant or as to which Mr. Reidl has no relevant expertise.  In addition,

12   Mr. Reidl proffers several legal opinions about trademark law and the application of

13   that law to the facts of this case.  For all the foregoing reasons, much of Mr. Reidl's

14   proposed testimony is improper, unreliable or irrelevant. We have provided to the

15   Court copies of the two reports addressed in this motion, highlighted to specifically

16   point to the paragraphs which Defendant seeks to exclude.

17

18    **THE APPLICABLE LEGAL STANDARD**

19    The party seeking to rely on an expert's opinion at trial must demonstrate by a

20   preponderance of the evidence that the proposed testimony would be admissible.

21   *Lust, By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th

22   Cir.1996).  To be admissible, the opinions must be offered by a qualified expert, and

23   must be both "helpful" and "reliable." *Daubert v. Merrell Dow Pharm.*, 509 U.S.

24   579, 594-95 (1993); *U.S. v. Herrera*, 788 F. Supp. 2d 1026, 1029 (N.D. Cal. 2011).

25   _____

26   [1] Mr. Reidl also present alleged expert opinions on quality control and trademark abandonment in
     his third expert report.  Always the trademark lawyer, Mr. Reidl's continued advocacy speaks
27   volumes as to his alleged unbiased nature.  While his third expert report contains wholly irrelevant
     testimony, Defendant will address those concerns during Mr. Reidl's cross-examination and in
28   presentation of the rebuttal expert testimony of Nova Cadamatre.

1    The "helpfulness" requirement's primary inquiry is one of relevance. "Expert

2    testimony which does not relate to any issue in the case is not relevant and, ergo, non-

3    helpful." *Daubert*, 509 U.S. at 591; *accord, e.g., in re: Autozone, Inc.*, 2016 WL

4    4208200, *16 (N.D. Cal. 2016) (evidence should be excluded as irrelevant if it does

5    not "fit" the issue to be decided).

6    When evaluating proposed expert testimony, a trial court must also determine

7    that the testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579,

8    589 (1993). The reliability requirement ensures "that an expert, whether basing

9    testimony on professional studies or personal experience, employs in the courtroom

10   the same level of intellectual rigor that characterizes the practice of an expert in the

11   relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).  Factors

12   tending to show that an opinion is unreliable include where the expert unjustly

13   extrapolated from the data to reach an unfounded conclusion, *see General Electric*

14   *Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing … requires a district court to

15   admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

16   expert."), or is being less careful than someone in their profession would be in their

17   regular work when not serving as a paid consultant. *See Kumho Tire*, 526 U.S. at 152;

18   *see also* Fed. R. Evid. 702 (Advisory Committee Notes).

19   The party offering an expert's opinion bears the burden of proving it has

20   adequate support, *Daubert,* 509 U.S. at 588-90, and a trial court is given broad

21   discretion to assess whether the reliability requirement has been met. See *United*

22   *States v. Alatorre,* 222 F.3d 1098, 1100 (9th Cir. 2000). Expert testimony is not

23   admissible if it is speculative. *General Electric*, 522 U.S. at 146 ("A court may

24   conclude that there is simply too great an analytical gap between the data and the

25   opinion proffered").  Moreover, matters of law are for the court's determination, not

26   that of an expert witness.  *Gallardo v. AIG Domestic Claims, Inc.*, No. 13-56358,

27

28

2015 WL 6501082 (9th Cir. Oct. 28, 2015) ("[T]he expert provided a bare legal conclusion that was properly excluded by the district court.")

## ARGUMENT

Mr. Reidl is a trademark attorney, seeking to couch legal opinions in the guise of alleged expert testimony.  In his reports, Mr. Reidl proffers "expert opinions" on trademark law and marketing.  Mr. Reidl proposes to testify about a laundry list of legal and non-legal issues—most of which are either irrelevant to the issues being litigated or beyond the bounds of his expertise.  His purported expert testimony is nothing more than legal advocacy by a trademark lawyer and is not the type of testimony that should be considered under the auspices of Fed. R. Evid. 702. Accordingly, his testimony should be limited, if not entirely precluded.

## I.   MR. REIDL IS NOT QUALIFIED TO TESTIFY ABOUT GEOGRAPHICAL NAMES OR MARKETING

In his first two reports (First Reidl Report and Second Reidl Report), Mr. Reidl argues that that TO KALON is a geographical name. *See First Reidl Rep.*, ¶¶ 14-21; *Second Reidl Rep.*, ¶¶ 6-13.  His reports make several assertions as to the alleged perceptions of consumers in the wine industry (*First Reidl Rep.* ¶¶ 5-10), what consumers are conditioned to seeing (*Id*. ¶ 13), terrior (¶¶ 12-13), how marketers tell a story to consumers (*Id*. ¶¶ 25-26), geographic significance of terms to consumers (¶¶10-11), and how consumers will perceive wine labels (*Second Reidl Rep.* ¶¶ 19-22).

Mr. Reidl also attempts to rebut the expert opinions as to consumer perception of Dr. Susan MacDonald, a marketing expert with over 35 years of experience scientifically testing consumer perceptions, with his supposed expertise as a trademark lawyer (*Second Reidl Rep.* ¶ 18).  Mr. Reidl lacks the qualifications and

1   expertise to render such opinions.[2]  He has no training in and holds no degrees in

2   marketing, sociology, geography, viticulture, or consumer perceptions.  Mr. Reidl is

3   simply a trademark lawyer offering here advocacy rather than informed expert

4   conclusions.  His entire expertise appears to come from advising a wine client as to

5   trademark issues.[3]  While Mr. Reidl may have seen some marketing presentations by

6   others while at E. & J. Gallo Winery, that does not given him any qualification to

7   opine on what consumers perceive on a wine bottle label and his purported expert

8   testimony should be excluded.[4]  Fed. R. Evid. 702; *Oakberg v. Zimmer, Inc.*, 211 F.

9   App'x 578, 580 (9th Cir. 2006) (affirming district court's finding of inadmissibility

10  of expert testimony when that testimony presented by experts that were not

11  qualified).

13  ## II.   MR. REIDL OFFERS NO ANALYSIS HELPFUL TO THE COURT AND OPINES ON ULTIMATE ISSUES IN THE CASE

15          Based purely on supposition—without any actual analysis—Mr. Reidl opines

16  both that Plaintiff has a "fair use" right to use TO KALON as a geographic indicator,

17  and that Robert Mondavi supposedly committed fraud on the U.S. Patent and

18  Trademark Office in applying for a registration for TO KALON by failing to disclose

19  its supposed geographic significance.  *See, e.g.*, *First Reidl Rep.*, ¶¶ 14-21; *Second*

---

[2] As discussed *infra*, Mr. Reidl also failed to conduct any analysis that would be helpful to the Court.

[3] Indeed, about the only expertise Mr. Reidl appears to have is as a trademark lawyer, and Mr. Reidl basically is offering his own opinions on trademark law and their application to the facts of this case.  *See e.g., First Reidl Rep.*, ¶15 (testifying as to law of fair use), ¶ 24 (likelihood of confusion); *Second Reidl Rep.*, and ¶¶ 9-10 (law of abandonment).  However, it is not Mr. Reidl's job to testify as to the law, that is the Court's role.  *Gallardo v. AIG Domestic Claims, Inc.*, No. 13-56358, 2015 WL 6501082 (9th Cir. Oct. 28, 2015) ("[T]he expert provided a bare legal conclusion that was properly excluded by the district court.)

[4] While Mr. Reidl professes expertise stemming from reviewing countless marketing documents for his client, that is no different than any other trademark lawyer that reviews its client's marketing documents to ensure trademark compliance.  That does not make him an expert on consumer perception.  He did not conduct any marketing studies himself or have any background in sociology or marketing.

*Reidl Rep.*, ¶¶ 6-13.[5]   Specifically, Mr. Reidl assumes that TO KALON is a "traditional geographical term" simply because it was coined by Hamilton Crabb as the name for his vineyard.[6]   *First Reidl Rep.*, ¶ 14; *see also Second Reidl Rep.*, ¶ 6, 8, 12 ("To Kalon was the name of the geographic place known as To Kalon Vineyard . . . ."). In other words, Mr. Reidl postulates that because TO KALON was supposedly the name of a vineyard in 1800s, it *must* be a geographical name—under that name, for all time. He merely assumed that a vineyard name is solely and exclusively a geographic term,[7] rather than an identity tied to the owner. *See, e.g.*, *First Reidl Rep.*, ¶ 13.

Mr. Reidl offers similar conclusory opinions in his rebuttal report, which he filed in an effort to shore up his first, anemic report. For example, Mr. Reidl for the first time states in an unsupported *ipse dixit* fashion that geographic terms are different from trademarks because "geographic terms cannot be abandoned."[8] *Second Reidl Rep.*, ¶¶ 10, 13. This is a "bootstrap" argument if ever there was one. This argument does not support a finding of a "primary geographic significance" in the term TO KALON—the issue which Plaintiff must establish. That is, even if Mr. Reidl's naked assertion is true, that is a meaningless comparison as it would, of necessity, require that a trademark can never include a geographic reference. Yet Mr. Reidl himself prosecuted geographic names as trademarks on behalf of his own former employer E. & J. Gallo Winery. Under his guidance as their trademark

[5] Leaving aside the fact that Mr. Reidl offers no evidence for that supposition, he discounts the fact that Robert Mondavi disclosed the historic use of the TO KALON brand by H.W. Crabb to the Trademark Office—the very use which is the sole basis of all of Plaintiff's claims.

[6] In fact, there is substantial uncontroverted evidence in the record demonstrating that Mr. Crabb always used the term TO KALON as a brand to describe his business operations throughout the United States. *See, e.g.*, *Def. Opp. to Pl's. Mot. for Prelim. Inj.*, D.I. 62 at 2-12. Mr. Reidl neglects to address any of those facts.

[7] Based on this theory, one may arrive at the absurd conclusion that any business operation with a name that is tied to a physical location is automatically a geographic name, *e.g.*, the local Starbucks store can be a geographic name.

[8] Support for this assertion is his anecdote that despite being renamed "Denali" in 2015, it is still sometimes referred to as "Mt. McKinley." So if Mr. Reidl is correct, is the proper geographic reference "HERMOSA VINEYARD"? Or did that name become lost in time? *Second Reidl Rep.*, ¶ 10.

attorney, Gallo sought to register NEW AMSTERDAM for gin, despite the fact that historically it was a geographic term that referred to what is now called New York City. *See Ghiam Decl.* Ex. C (Reidl Dep. Ex. 1048).  This is another example of facts which Mr. Reidl refused to consider – and as to which he refused to testify at his deposition. *See* Ghiam Decl. Ex. D (Reidl Dep. Tr. 75:10-76:15). It is not the fact of his having done so that disqualifies Mr. Reidl, but his utter failure to consider these issues that exposes his opinions for what they are—advocacy and not an "independent" expert opinion.  He did not present any evidence with respect to what TO KALON meant to consumers in 1986—the relevant time period for Plaintiff's fraud claim.  What matters is the primary significance of the term to consumers at the time of the application by Robert Mondavi.  15 U.S.C. § 1052; TMEP § 1210.02.

And on this point, Mr. Reidl offers absolutely no analysis.  He does not address the fact that a brand may have geographic overtones (which TO KALON actually does not, but WEST POINT, and DISNEYLAND and PEBBLE BEACH do), while at the same time serving as a brand.  Nor does Mr. Reidl address whether TO KALON now or ever had *any* geographic significance.  His report lacks any analysis of what the *primary significance* of the term TO KALON is to consumers (whether currently as it relates to Plaintiff's geographic fair use defense, or in 1986 as it relates to Plaintiff's fraud claim).  During his deposition, Mr. Reidl admitted he conducted no consumer studies, no surveys, or any analysis that might inform his opinions.  *Ghiam Decl.* Ex. D (Paul W. Reidl Dep. Tr. 14:10-12).

Rather than conduct an analysis of how consumers perceived "TO KALON" at the time of the 1986 application (the appropriate time frame required by the test), Mr. Reidl simply posits that, at the time of filing Defendant's TO KALON application in 1986, TO KALON was "the name of the geographic place known as To Kalon Vineyard." *See Second Reidl Rep.*, ¶¶ 12, 13.  Of course, *Mondavi's* To Kalon Vineyard did have an address on highway 29, but that is not the test for

"primary geographic significance." Strikingly, Mr. Reidl's *only* cited evidence of the significance of "TO KALON" is a historical report, *which contradicts his own opinion*. That document states that as of 1980s, "[t]he name of 'To-Kalon' is largely forgotten now as a wine brand." *See Ghiam Decl.* Ex. B (*Second Reidl Rep.*, Ex. A); *Ghiam Decl.* Ex. E (1980 Heintz HW Crabb, Oakville pp. 23-24).   He has even ignored his own client's testimony that, despite living adjacent to the Mondavi Winery and having been a founder and co-owner of FAR NIENTE Winery in Napa Valley, he had not heard of TO KALON or Mr. Crabb until 2011, a quarter century after the Mondavi application was filed. *Ghiam Decl.* Ex. F (Jeremy Nickel December 17, 2019 Dep. Tr. 20:2-8).

Nor does his practical experience as a trademark attorney provide him with any specialized background knowledge that might inform his opinions.  Mr. Reidl is *not* a historian, geographer, cartographer or wine marketer.  He is an attorney who practices trademark law. *See First Reidl Rep.*, ¶ 30.   Mr. Reidl's statements concerning the alleged geographical nature of TO KALON are mere suppositions and *not* based on any analysis or qualified "knowledge, skill, experience, training, or education" that may be helpful to the Court. Fed. R. Evid. 702; *Nelson v. Matrixx Initiatives*, No. C 09-02904 WHA, 2012 WL 3627399, at *7 (N.D. Cal. Aug. 21, 2012), *aff'd sub nom. Nelson v. Matrixx Initiatives, Inc.*, 592 F. App'x 591 (9th Cir. 2015) ("The expert's opinion must be based on scientific knowledge; opinions based on unsubstantiated generalizations or opinions not derived by the scientific method must be excluded.") (citation and internal quotation omitted).

### III.   MR. REIDL'S PROPOSED TESTIMONY IS IRRELEVANT TO THE ISSUES IN THIS CASE

Perhaps not surprisingly, given Mr. Reidl's experience as a trademark attorney, his expert reports read as legal briefs rather than expert opinions.  In addition to his open advocacy, Mr. Reidl also delves into areas wholly irrelevant to

1    the issues in this case.  Mr. Reidl spends a significant portion of his reports explaining

2    legal concepts relating to trademarks and the overlap of geographic designations such

3    as American Viticulture Areas ("AVA") with trademark protection.  *First Reidl Rep.*,

4    ¶ 15.  For example, his First Report explains that even if an AVA is trademarked,

5    "other wineries located in the geographic area [may] use the term on wines made

6    from grapes grown in the geographic area."  However, TO KALON is not an AVA

7    and never has been, so the vignette may be interesting but is completely irrelevant.

8         Another irrelevant story spun by Mr. Reidl is the significant time he spends

9    discussing European Appellations of Origin, which he admits is a system that does

10   not exist within the United States.  This again raises the question as to why he

11   includes it in his report. It would appear to be mere airy persiflage.  *See generally*

12   *First Reidl Rep.* ¶¶ 7, 9-13, 16-21, and 23; *Second Reidl Rep.*, ¶ 19.

13        It simply does not matter what limitations on the STAG'S LEAP brand might

14   exist because of the creation of the STAGS' LEAP AVA.  *First Reidl Rep.* ¶ 17.  Nor

15   whether some European countries have instituted vineyard registration systems.

16   Indeed no one—including Mr. Reidl, has claimed that TO KALON is an AVA.  Mr.

17   Reidl's comments on use of a*n AVA* to describe the general geographic origin of a

18   wine are simply irrelevant to Plaintiff's claims in this case because TO KALON is

19   not an AVA nor an appellation. Fed. R. Evid. 402.  Interestingly, Mr. Reidl actually

20   stops short of asserting that the TO KALON name is not a trademark.  His First

21   Report concludes that Defendant owns the trademark TO KALON, but opines that

22   others may "use the <u>mark</u> on their wines because the grapes for the wines were grown

23   on the historic To Kalon property"[9] (Emphasis added). Mr. Reidl presents no support

24   for any claim that TO KALON was—in 1986—primarily recognized by consumers

---

[9] Mr. Reidl bases this opinion on a number of third party wines that use the term TO KALON. *First Reidl Rep.*, ¶ 22; *see also Second Reidl Rep.*, ¶ 21. However, every one of those cited wines are made pursuant to a license from Constellation and, therefore, inure to the benefit of Constellation's TO KALON trademark as a matter of law.

as a geographic term.[10]  Therefore, Mr. Reidl's opinions are wholly irrelevant to the issues in this case.  Fed. R. Evid. 402.

## IV.   MR. REIDL'S REBUTTAL OF CISSEL IS NOT IN FACT A PROPER REBUTTAL

In his second report, Mr. Reidl purports to criticize Defendant's trademark office procedural expert Robert Cissel, a retired administrative judge from the Trademark Trial and Appeal Board as the U.S. Patent and Trademark Office ("USPTO").  *See Second Reidl Rep.*, ¶¶ 4, 6-17.  Yet, Mr. Reidl's report does not in fact rebut anything of Mr. Cissel's report and as such is improper.  *Int'l Bus. Machs. Corp. v. Fasco Indus. Inc.*, 1995 WL 115421, *1, *3 (N.D. Cal. Mar. 15, 1995) (stating that rebuttal evidence may be introduced to challenge the evidence or theory of an opponent, but it is not an opportunity to cure oversights in a party's case-in-chief or put forth new theories.)

In his expert report, Mr. Cissel discusses trademark office examination procedures based on his long career first as an examining attorney, then supervising and training examining attorneys, and finally functioning for years as an administrative judge for that agency.  He discusses USPTO procedures, how the examination process worked, and what things would be material to an examining attorney in approving a trademark application.

Mr. Reidl does not disagree with or even challenge Mr. Cissel's expertise as to USPTO procedures.  Rather, Mr. Reidl uses his report as an opportunity to engage in hypothetical speculation and to advocate for his client's position.  Mr. Reidl speculates how things might have been different if the application was filed at another time under other conditions, *e.g.*, that the Examining Attorney *might* have discovered articles relating to TO KALON as an alleged geographical term if the Examining

---

[10] Indeed, he presents no support for the proposition that its primary significance today is as a geographically descriptive term.

- 9 -                                    4:19-CV-01424-YGR

1   Attorney had access to the "current internet", even though what is currently available
2   in 2020 is irrelevant.  *See e.g., Second Reidl Rep.*, ¶ 16.[11]

3       Mr. Reidl is not criticizing Mr. Cissel or his conclusions.  Rather he seeks to
4   present hypothetical scenarios without any factual basis, arguing that if those
5   conditions were presented – conditions for which there is no support offered by Mr.
6   Reidl, Mr. Cissel might have reached a different conclusion.   This is mere
7   tautological web-spinning and not a proper expert report.  That is, if the hypothetical
8   postulated is that every element of a claim is found to be present, then the claim is
9   supported.  Does Mr. Reidl proposed to explain the law to the Court?

10      The clearly argumentative advocacy is exposed as cross examination.  It is not
11   a rebuttal opinion.[12]  If Plaintiff wishes to engage in such conjecture, then it may use
12   its attorneys to cross-examine Mr. Cissel.  The Second Reidl Report is not rebuttal
13   but rather Plaintiff's too late attempt to offer its own trademark office expert in an
14   effort to support its claim of fraud – which it does not do even had it been timely
15   filed.  *See Int'l Bus. Machs. Corp. v. Fasco Indus. Inc.*, 1995 WL 115421, *1, *3
16   (N.D. Cal. Mar. 15, 1995).

18                                **CONCLUSION**

19      Mr. Reidl is neither a geographer nor a historian nor winemaker and so he
20   brings no helpful expertise to the case.  As a trademark lawyer, he merely proffers
21   legal opinions rather than expert opinions, conducts no analysis that would be helpful

---

[11] Mr. Reidl also speculates as to what consumer perceptions are based on certain 19th and early 20th century historical references.  But as discussed *supra*, Mr. Reidl is not a historian, nor a marketer, nor a cartographer.  Thus, Mr. Reidl is not qualified to opine on consumer perceptions of alleged geographic references gleamed from historical texts.  For example, such texts merely refer to Mr. Crabb's historical *business* and are not necessarily informative of whether such a historical business could be recognized as a *place*.  That is beyond Mr. Reidl's qualifications to discern.

[12] Whether or not Mr. Reidl knows trademark law or even prosecution practice, is irrelevant.  Plaintiff bore the burden and did not present a Trademark Office Expert.  It cannot avoid that decision by now presenting one which is transparently not a "rebuttal" report.

1  to the Court, and discusses issues wholly irrelevant to the case. Consequently, Mr.

2  Reidl's proposed testimony should be limited—if not entirely precluded.

3

4                                    Respectfully Submitted,

5

6  Dated: August 17, 2020              HUNTON ANDREWS KURTH LLP

7                         By:    /s/ _Edward T. Colbert_
                                 Timothy J. Carlstedt (State Bar No. 168855)
8                                HUNTON ANDREWS KURTH LLP
                                 50 California Street, Suite 1700
9                                San Francisco, California 94111
                                 Tel.: (415) 975 – 3700
10                               Fax: (415) 975 – 3701

11                               Edward T. Colbert (DC Bar No. 206425)
                                 William M. Merone (DC Bar No. 458104)
12                               HUNTON ANDREWS KURTH LLP
                                 2200 Pennsylvania Avenue, N.W.
13                               Washington, D.C. 20037
                                 Tel.: (202) 955-1500
14                               Fax: (202) 778 – 2201

15                               *Counsel for Defendant/ Counterclaim Plaintiff*
                                 *Constellation Brands U.S. Operations, Inc.*
16

17

18

19

20

21

22

23

24

25

26

27

28