# Exhibit A

BUCHALTER
A Professional Corporation
GLENN P. ZWANG (SBN: 112295)
JEFFREY M. JUDD (SBN: 136358)
PETER BALES (SBN: 251345)
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: 415.227-0900
Fax: 415.227.0770
Email:   gzwang@buchalter.com
         jjudd@buchalter.com
         pbales@buchalter.com

BUCHALTER
A Professional Corporation
FARAH P. BHATTI (SBN: 218633)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email:   fbhatti@buchalter.com

Attorneys for Plaintiff
THE VINEYARD HOUSE, LLC
*Attorneys for Plaintiff, The Vineyard House, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE VINEYARD HOUSE, LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**CONSTELLATION BRANDS U.S. OPERATIONS, INC.,**<br><br>Defendant. | Case No. 4:19-cv-1424-YGR<br><br>**RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL** |

**RULE 26 DISCLOSURE STATEMENT AND
<u>DECLARATION OF PAUL W. REIDL</u>**

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF CONTENTS …………………………………………………... | 2 |
| INTRODUCTION ………………………………………………………… | 3 |
| EXECUTIVE SUMMARY ………………………………………………... | 3 |
| OPINIONS ………………………………………………………………… | 4 |
| QUALIFICATIONS ………………………………………………………. | 12 |
| EXHIBITS ………………………………………………………………. | 21 |
| COMPENSATION ………………………………………………………... | 21 |
| EXHIBIT A ………………………………………………………………... | 22 |
| EXHIBIT B ……………………………………………………………….. | 23 |
| EXHIBIT C ………………………………………………………………. | 24 |
| EXHIBIT D ………………………………………………………………... | 25 |
| EXHIBIT E ………………………………………………………………... | 26 |
| EXHIBIT F ………………………………………………………………. | 27 |
| EXHIBIT G ………………………………………………………………... | 28 |
| EXHIBIT H ………………………………………………………………... | 30 |
| EXHIBIT I ………………………………………………………………… | 32 |

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

I, Paul W. Reidl, declare as follows:

## INTRODUCTION

1.      My name is Paul W. Reidl.  I am the principal attorney in the Law Office of Paul W. Reidl, located at 25 Pinehurst Lane, Half Moon Bay, California 94019.  My professional qualifications are summarized in paragraphs 12-21 of this Declaration.

2.      I have been retained in this case by the Plaintiff, The Vineyard House, LLC, ("TVH") to testify on the use of geographic and historical terms and trademarks in the wine business, focusing on Napa Valley.  Counsel for TVH has provided me with, and I have reviewed, the documents referenced in Exhibit A.  I have also reviewed the materials noted in Exhibit A.

3.      My opinions flow from the documents provided to me by counsel for TVH, my own research, and my own knowledge and experience in the wine business and in the labeling, marketing, registration and use of trademarks, geographic terms, and historical terms for wine in the United States.

## EXECUTIVE SUMMARY

4.      Geographic and historical terms are very important to the wine business because wine is an agricultural product.  There is a long tradition of using geographic and historical terms on wine labels in order to ground the wine in the "terroir" of its origin.  In Napa Valley, it is not uncommon for one winery to own a trademark comprising a geographic term but for others within that geographic area to use the geographic term as a geographic indication or a vineyard designation in order to give the wine a "sense of place."  It is also not uncommon for wineries to use the history of their property or winery, in a non-trademark sense, to provide information to consumers as part of their marketing "story."  This historical information further grounds the wine in a specific geographic place.

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

## OPINIONS

5.      Wine grapes are grown on parcels called "vineyards."  After the grapes are harvested, their juice is extracted by crushing or pressing.  Wine is made by fermenting the juice.  Fermentation occurs when yeast (either natural yeast or introduced yeast) in the juice digests the sugars in the juice and secretes alcohol.  Once the fermentation is completed, the wine may then be aged in oak barrels or with oak staves or chips.  Some wines may also undergo a secondary ("malolactic") fermentation to produce a creamier, buttery flavor.

6.      In the United States, there are generally two traditional types of brand names for wines:  geographic terms and personal names.  Both types of traditional brand names are used for the same basic purpose, namely, to impart a sense of uniqueness to the wine in the bottle.

7.      Geographic brand names are a "New World" adaptation of the European geographic indication system.  For centuries, the most prominent feature on the label of European wines was the name of the geographic area in which the grapes were grown and the wine was made. This system is generally called the geographic indication system.  It has various names in various countries, such as Appellation d'Origine Contrôlée (France), the Indicazione Geografica Tipica (Italy) and Denominazione di Origine Controllata (Italy).  Chianti, Bordeaux, Rioja and Champagne are well-known examples of European geographic indications.  The administrative bodies for these regions establish rules and regulations for grape growing and wine making, with one intended result being that the wines from the region have many of the same flavor characteristics.

8.      The geographic indication system also functions as a symbol of quality and trust. The premise of the geographic indication system is the belief that the "terroir", i.e., the climate,

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1   soil and topography of the growing area, plays a dominant role in determining the flavor profile of

2   the grapes and ultimately the wine.

3       9.      The wine industry and culture in the United States is relatively new compared to

4   Europe.[1]  There were wineries and vineyards in Napa Valley prior to the onset of Prohibition in

5   1920, some of which are still there today:  To Kalon, Charles Krug, Beringer, Inglenook, Beulieu,

6   Italian Swiss Colony, and others.  Prohibition crushed the wine business (although some wineries

7   muddled through by making sacramental wine and wine for medicinal purposes), but the business

8   resumed when Prohibition ended in December 1933.  Even though the wine industry in the United

9   States was in its infancy, wine marketers and winemakers understood the importance of "terroir"

10  to determining the quality and flavor profile of the wine; however, they did not have the European

11  tradition of designated growing areas or the regulatory regime to lend legitimacy to the terroir of

12  the specific geographic area.

13      10.     In the United States, the use of geographic (and personal) names in the wine

14  business allowed vintners to create their own "story" about the quality of their wines.  The use of

15  geographic terms gave wine marketers the opportunity to talk about the terroir even though the

16  geographic area was not a formally designated geographic indication and supported by the quality

17  assurance criteria of the European regulatory regime.  By using a geographic brand or vineyard

18  name, the winegrower offered consumers a sense of a place for the origin of the wine. This sense

19  of place was buttressed by providing the consumer with information regarding the history of the

20  vineyards or winegrowing family.

21  //

22

23  [1]      Hence, wines originating in Europe are sometimes referred to as "Old World Wines" and wines originating in the Americas, Australia and New Zealand are sometimes referred to as

24  "New World Wines."

-5-

11.     There is now an established geographic indication system in the United States called "American Viticultural Areas" ("AVAs").[2]   The geography, or terroir, of the wine serves as a starting point for the "story" about the brand which is, in turn, the focal point of the marketing efforts for it.  The "story" is particularly important because it helps to differentiate the wine from those of competitors and, in the case of larger producers like Constellation or Gallo, from the multiple brands in the producer's portfolio.  The "story" positions the brand and tells consumers why they should be interested in buying it. This is particularly important for premium and ultra-premium wines because at these high price points customers pay close attention to the labels and the information about the wines because they are looking for small differences between wines made by multiple producers.

12.     Focusing on terroir in wine labeling and marketing is an inherent characteristic of the wine business because wine is an agricultural product made from grapes.  The wine tradition and culture – whether in the Old World or the New World -- is of vineyards, soil, geography, seasons and climate.  The winemaker can only work with the grapes that the terroir provides.  For this reason, for all types of table wine brands (geographic, personal names, fanciful), many winery web sites and labels talk about the land, its history, and the climate in which the grapes were grown. This is especially so at premium and ultra-premium price points.[3]

---

[2]     The principal difference between the European system and the American system is that the American system only establishes the geographic boundaries for the specific AVAs.  Unlike in Europe, there are not voluminous rules and regulations about how the grapes must be grown and the wines much be made for each specific AVA. Winegrowers in an AVA are subject only to the general TTB rules and regulations about winemaking which are applicable to all wines made in the United States.

[3]     One exception to this might be value priced, semi-generic wines that are sold in larger containers or boxes, e.g., 1.5, 3 or 5 liters.  Another might be wines that bear a "California" designation because these tend to be less expensive wines made from grapes grown in the Central Valley.

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

13.     The emphasis on terroir is also carried forward onto wine labels.  The terms "Vineyards" and "Ranches" are commonly added to the place name or the personal name to further ground the wine in a specific geographic location.  In fact, vineyard names are themselves geographic names because they are the name of the geographic place where the grapes are grown. Examples of vineyard names are Asti Vineyards, Frei Vineyards, Stagecoach Vineyards, and, of course, To Kalon.  In short, wine marketing and labels have conditioned consumers to associate brands with a geographic place, a person, or both.  This is important to establishing the legitimacy of the brand and differentiating it from the competition and the other brands within the winegrower's portfolio.

14.     To Kalon is an example of a traditional geographic name.  The term was coined by Hamilton Crabb (one of the pioneer winegrowers in Napa Valley) as the name for his vineyard properties and is associated with that specific geographic place.  Using it on a wine label gives the wine a sense of place of origin, i.e., "this wine originated from one of the oldest vineyard properties in Napa Valley, To Kalon."  It imbues the wine with a sense of history and place, just like (for example), Frei Vineyards in Sonoma County.[4]

15.     Geographic terms can become protectable trademarks if, through extensive use and promotion, they become identified with a single source.  A good example would be London Fog for clothing.  That mark has been used and promoted for coats and jackets for decades so, over time, consumers began to view it as designating a single producer of coats and jackets.  But even though it has become a trademark, others who make clothing in London can still use the geographic term "London" to tell consumers where the goods are made.  The existence of a trademark does

---

[4]     Frei Vineyards was planted in the late 19th Century by the Frei family.  Julie Gallo bought grapes from the Frei family which were used, in part, for Hearty Burgundy.  When the Frei family retired, the Gallo family purchased the vineyard.  Gallo continues to operate it.

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1    not prevent them from telling consumers, in a non-trademark way, that their clothing was made in

2    London. This is important to clothing producers because the term "London" communicates

3    information about quality, style, and sophistication.

4         16.    Napa Valley is perhaps the most well-known AVA in the United States.  There are

5    numerous sub-AVAs within the Napa Valley AVA.  Each bears the name of a geographic feature

6    or something historical about the area.  These include: Los Carneros, Howell Mountain, Wild

7    Horse Valley, Stags Leap District, Mt. Veeder, Atlas Peak, Spring Mountain District, Oakville

8    AVA, Rutherford, St. Helena, Chiles Valley, Yountville, Diamond Mountain District,

9    Coombsville, Oak Knoll District and Calistoga.

10        17.    It is not uncommon for a winery to own a trademark for the name of an AVA and

11   for other wineries located in the geographic area to use the term on wines made from grapes grown

12   in the geographic area.  For example, there is a Stags Leap winery that is owned by the Australian

13   company, Treasury Wine Estates.  It owns several Federal trademark registrations for Stags Leap.

14   However, others in the Stags Leap area use the Stags Leap geographic term on their wines to

15   indicate to consumers the geographic origins of the wine.  These include Clos du Val winery,

16   Shafer Vineyards, Silverado Vineyards, Chimney Rock Cellars, Pine Ridge and others.

17   Photographs that I personally downloaded from the internet are attached as Exhibit B.  These show

18   that Stags Leap uses the geographic term as a trademark, while others use the geographic term to

19   describe the geographic place in which the grapes for the wine were grown.[5]

20        18.    The Atlas Peak AVA is another example.  Accolade Wines owns a trademark

21   registration of Atlas Peak for wine, yet wineries in the AVA use the geographic term on their wines

22

23   _____
     [5]    I have limited my examples to Napa Valley but this practice exists for other AVAs in other
24   geographic locations, such as Dry Creek Valley in Sonoma County and Red Mountain in
     Washington State.

     -8-
25

1   to indicate to consumers the geographic origins of the wine.  These include Hall, Krupp and

2   Stagecoach, and Rombauer.  Photographs that I personally downloaded from the internet are

3   attached as Exhibit C.  These show that Accolade uses the geographic term as a trademark, while

4   others use the geographic term to describe the geographic place in which the grapes for the wine

5   were grown.

6        19.    Constellation owns a brand that is identical to the name of a Napa Valley AVA,

7   Wild Horse, yet wineries in this geographic area use the term as a geographic term on wines made

8   from grapes grown in that area.  Photographs that I personally downloaded from the internet are

9   attached as Exhibit D.  These show that Constellation uses the geographic term as a trademark,

10  while others use the geographic term to describe the geographic place in which the grapes for the

11  wine were grown.

12       20.    Similarly, a winery in the Carneros geographic area is named Domaine Carneros

13  and has a Federal registration for that trademark.  Yet, as with other AVAs, wineries located in

14  that geographic area use the term as a geographic term to communicate to consumers where the

15  grapes for the wine have been grown.  Photographs that I personally downloaded from the internet

16  are attached as Exhibit E.  These show that Domaine Carneros uses the geographic term as a

17  trademark, while others use the geographic term to describe the geographic place in which the

18  grapes for the wine were grown.

19       21.    Another example is the Rutherford AVA.  Cakebread Cellars owns a Federal

20  registration of Rutherford Reserve.  Yet, as with other AVAs, wineries located in that geographic

21  area use the term as a geographic term to communicate to consumers where the grapes have been

22  grown.  Photographs that I personally downloaded from the internet are attached as Exhibit F.

23

24

25   RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

These show that Rutherford uses the geographic term as a trademark, while others use the geographic term to describe the geographic place in which the grapes for the wine were grown.

22.    This is also true for the To Kalon Vineyard.  Defendant Constellation owns the trademark, but others use the mark on their wines because the grapes for the wines were grown on the historic To Kalon property.  Photographs that I personally downloaded from the internet are attached as Exhibit G.  These show that others use the geographic term to describe the geographic place in which the grapes for the wine were grown.

23.    It is important to place these labels in the context of the Federal regulatory scheme. This is administered by the Alcohol and Tobacco Tax and Trade Bureau ("TTB") in the Department of the Treasury.[6]  Under TTB rules:

a.     Wines may only be labeled with an AVA if 85% of the grapes used to make that wine originate from the AVA.

b.     Wines may only bear a vineyard designation if 95% of the grapes used to make that wine were grown in the vineyard.

c.     All labels, including those with a vineyard designation, must have a brand name. As a practical matter, this means that vineyard designations or AVAs only appear as secondary designations on labels because the primary designation must be the brand name.  Thus, for example, the typical label architecture of a lawful (hypothetical) label might look like this:

//

//

---

[6]    TTB was created by the Homeland Security Act of 2002 ("HSA").  Previously, the Federal regulatory scheme was administered by the Bureau of Alcohol, Tobacco and Firearms ("BATF") in the Department of the Treasury.  The HSA sent BATF and its law enforcement functions to the Department of Justice.  It stripped-out its regulatory functions and kept them with Treasury under the newly-created TTB.

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1                                CABIN CREEK [brand name]

2                        Robin's Vineyard [vineyard designation]

3                          Stags Leap District [AVA]

4        d.     A winery may continue to use a registered trademark that is the same or similar to

5 the name of an AVA if that trademark was approved for use by TTB's predecessor agency before

6 July 7, 1986, or if there is sufficient information on the label to indicate to consumers that the wine

7 does not originate from that geographic area.

8        e.     TTB has historically ceded its statutory authority over trademarks to the United

9 States Patent and Trademark Office.  This was done many years ago in an interagency

10 memorandum of understanding.  TTB's policy is not to get involved in disputes between trademark

11 owners.

12        24.     Thus, there is a duality in the marketplace.  There are trademarks with geographic

13 names, and vineyards/AVAs with the same or a highly similar name.  As a practical matter (with

14 the exception of several very large vineyards), the regulatory requirements described in paragraph

15 23 necessarily limit the quantity of wines that can be labeled with an AVA or a vineyard

16 designation.  The scarcity of supply means that these wines usually command a premium or ultra-

17 premium price.  Because these wines must also have a brand name on the label and, further,

18 because the purchasers of wines at these price points tend to be more discriminating than the

19 average wine consumer who might purchase on impulse, there are fewer opportunities for

20 consumer confusion.

21        25.     The geographic "story" for a wine is often complemented by a description of the

22 history of the vineyard or the winegrower. This information can be (and is) provided on the back

23 label of a wine bottle; however, due to space constraints, the detailed information is most

24

25
RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

commonly found on the winery's web site.  This information does not act as a trademark (i.e. as a brand name for the wine) but, instead, is meant to elaborate on the "story" that is started by the geographic term on the label or the brand name. Photographs that I personally downloaded from the internet which illustrate the use of an historical description of the vineyards or winery are attached as Exhibit H.

26.    TVH also uses historical information on the back labels of wines made from grapes grown on its To Kalon property.  This use is consistent with what I have personally observed in the wine business.  Photographs that I personally downloaded from the internet which illustrate their use of an historical description of the property are attached as Exhibit I.

27.    I am unaware of any judicial decision that enjoined the use of an AVA that was similar to a trademark, or the accurate, non-trademark use of a geographical term or historical information about the property on which the grapes used for the wine were grown.

28.    I was not asked to opine on whether the property owned by TVH that is at issue in this case is part of what would be considered the historic To Kalon property established by Hamilton Crabb.

29.    I understand that discovery has not been completed as of the date of this Declaration.  In particular, no fact witnesses have been deposed.  Accordingly, if I am asked to supplement this Declaration once that discovery is completed, I will do so and submit a supplemental Declaration.

## QUALIFICATIONS

30.    I received a Bachelor of Arts degree in political science and speech communication, with a minor in theology, from The George Washington University in Washington, D.C. with highest honors, Phi Beta Kappa, in 1977.  I received a J.D. degree from The George Washington

University, with high honors and Order of the Coif, in 1980. I was a member of the The George Washington University Law Review and authored a case note.

31.     While I was in law school I was on the faculty of the Columbian College of Arts and Sciences of George Washington University. I also worked as a Law Clerk/Summer Associate at three firms in Washington, D.C.: Connor, Moore & Corber; Rose, Schmidt, Dixon, Hasley, Whyte and Hardesty; and Crowell & Moring.

32.     From 1980 through 1990, I was with the firm of Crowell & Moring in Washington, D.C. My practice focused on business counseling and litigation in the business law area, primarily antitrust, contracts and natural resources law. I worked on several intellectual property cases while at Crowell & Moring.

33.     From February 1991 – January 2009, I was Associate General Counsel of E. & J. Gallo Winery ("Gallo") in Modesto, California. Gallo is the largest wine producing and marketing company in the world. I represented Gallo in a variety of matters, primarily litigation, global intellectual property (patent, trademarks, copyright and advertising) and international regulatory matters. I was responsible for Gallo's global trademark protection program.

34.     During most of my eighteen (18) years at Gallo, I was responsible for all of the intellectual property aspects of branding, labeling and packaging, including trademark clearance. I worked closely with Gallo's co-founder (Ernest Gallo), the Marketing Department, and later the various Business Units on brand development and strategy. I reviewed thousands of prospective brand names and label designs, prosecuted hundreds of trademark applications, litigated oppositions and cancellation proceedings, litigated Federal Court cases, prosecuted UDRP actions, and participated in and attended numerous brand/packaging/program development and strategy meetings and conference calls. Among other things, in connection with these activities I read

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

extensively in the wine area, frequently visited retail outlets where wines were sold, performed numerous COLA and TESS searches, and reviewed brand plans, consumer research, promotional materials, and the like.

35.     From February 2009 to the present I have been the principal attorney in the Law Office of Paul W. Reidl.  I provide a full range of legal and consulting services in the trademark area to clients in various sectors, including the wine industry.  I also advise clients on alcohol beverage regulatory, copyright, and general business matters.

36.     My practice is principally a trademark practice.  Many of my clients make and sell alcohol beverages, specifically wine.  My business requires me to stay abreast of legal developments in the trademark area, wine markets, market trends, marketing, and other aspects of the business.  I must also stay abreast of trends in consumer behavior and taste, the retail environment, and marketing and promotional techniques generally. My  clients  range  from  a billion-dollar company to start-ups.

37.     I have written and spoken on various issues and written numerous articles on trademark law and other subjects. These include:

- Vell, Vell, Vell (a biography of my grandfather), in pre-publication;

- Trademark and Copyright Issues in the Wine World: Tips for Reducing Risk and Maximizing Brand Protection, National Business Institute (Sacramento, California)(September 2019);

- What Goods are Related to Wine and Why Does it Matter, International Wine Lawyers Association Annual Meeting (Lausanne, Switzerland) (July 2019);

- IP Risk Management for Craft Distillers, American Distilling Institute Annual Meeting (Denver, Colorado) (March 2019);

- Leadership in INTA, INTA Annual Meeting (Seattle, Washington) (May 2018);

- Protecting Brands Through Trademark Law, American Distilling Institute Annual Meeting (Portland, Oregon) (March 2018);

- Defending Yourself From Trademark Infringement, Distillers Magazine (Fall 2017);

- USPTO/INTA Industry Training Seminar, Wine Industry (Alexandria, Virginia) (December 2016);

- Resolving and Anticipating Contract, Label and Trademark Issues in the Wine Business (National Business Institutes) (Sacramento, California) (November 2016);

- Understanding New World Wine Labels, INTA Annual Meeting (Orlando, Florida) (May 2016);

- Intellectual Property and Wine Law, NBI Wine Law Symposium (San Francisco, California) (December 2015);

- Understanding Wine Labels: What is the Meaning of All This Gibberish? INTA Annual Meeting (San Diego, California) (May 2015);

- How and Why to Protect Your Intellectual Property, American Distilling Institute (Louisville, Kentucky) (March 2015);

- Trademark Issues in the Wine Business (Philadelphia Intellectual Property Association, Philadelphia, Pennsylvania) (February 2015);

- Intellectual Property Issues in Wine Law (Sacramento, California) (December 2014);

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

- No Trade, No Trade Mark: An Exploration of the Nuances of Trademark Use, State Bar of California Intellectual Property Section Annual Meeting (Los Angeles, California) (November 2014);

- Trade Dress Law, IP Issues in the Food and Beverage Industries (Napa, California) (October 2014);

- Managing Brand Risks in a Global Marketplace (with Judith Schwimmer and Jerry Jolley), 8th Annual Conference on Best Practices in Winery Operations (Napa, California) (March 2014);

- Using Expert Witnesses in the United States, AIDV Annual Meeting (Vienna, Austria) (October 2013);

- Think Big! Ethics and Personal Responsibility (with James McCarthy and Michael Mettauer), INTA Annual Meeting (Dallas, Texas) (May 2013);

- Understanding New World Wine Labels, INTA Annual Meeting (Dallas, Texas) (May 2013);

- Brand Protection and Strategy in the Wine Sector (with Jeffrey Friedman), 7th Annual Conference on Best Practices in Winery Operations (Napa, California) (March 2013);

- Protecting Brands Through Trademark Licensing:  A Convergence of Legal and Business Objectives, Intellectual Property Owners Association Annual Meeting (San Antonio, Texas) (September 2012);

- What Hath Al Gore Wrought: The Impact of (New) Electronic Media on Intellectual Property Rights & Risks, Alcohol Beverage Law and Technology Conference (San Francisco, California) (May 2012);

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

- Understanding New World Wine Labels, INTA Annual Meeting (Washington, D.C.) (May 2012);

- Social Media Tips and Pitfalls, Managing Intellectual Property Magazine (February 2012);

- Supply Contracts: Coping With the Three Tier Distribution System in the United States, AIDV Annual Meeting (Logrono, Spain) (October 2011);

- Using Social Media in Personal Branding, INTA Annual Meeting Workshop (San Francisco, California) (May 2011);

- Understanding New World Wine Labels, INTA Annual Meeting (San Francisco, California) (May 2011);

- Kendall-Jackson v. E. & J. Gallo Winery: Anatomy of a Trademark and Trade Dress Case, Dallas Bar Association (Dallas, Texas) (April 2011);

- Brand Protection in the Social Media Environment, SOCIALEX Forum on Legal Issues in Social Media (Washington, D.C.) (March 2010);

- Geographic Indication Registration Systems for Wines, AIDV Annual Meeting (Trier, Germany, 2009);

- Market Evolution and Brand Collision, INTA Annual Meeting (2009);

- Contributing author to FAB JOB GUIDE TO BECOMING A WINERY OWNER (B. Pearce, ed.) (2009);

- Trademark Dilution (University of Southern California I.P. Law Institute, 2008);

- Trade Practices and Intellectual Property, Chapter 9 in POINT OF PURCHASE ADVERTISING (Point of Purchase Advertising Int'l) (2008);

-17-

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

- Careers in Trademark Law, INTA Young Practitioners Forum (San Francisco, 2007);

- The Survey Blues, INTA Annual Meeting (2007) (with Dr. Gerald R. Ford);

- Geographic Indications, Trademarks, and International Issues, Guest Lecturer, Seminar on Advanced Trademark Law, The George Washington University Dean Dinwoodey Center for Intellectual Property Studies (2007, 2008);

- The Trademark Dilution Revision Act of 2006, The George Washington University Dean Dinwoodey Center for Intellectual Property Studies (2006);

- Global Trademark Programs: What You Should Know, INTA Roundtable Forum, (Beijing, China, 2006);

- Strategic Considerations in Global Trademark Registration and Enforcement Programs, INTA China Forum (Hangzhou, China, 2006);

- Maximizing Portfolio Value Through Licensing and Franchising, INTA China Forum (Hangzhou, China, 2006);

- Living in the Age of the Lightning Brand, President's Address, INTA Annual Meeting (2006);

- In Vino Veritas: Ruminations on the Labeling of Wines, INTA Annual Meeting (2005);

- Strategic Considerations in Cross-Border Litigation, INTA Leadership Meeting (2003);

- Geographic Indications and Wine Trademarks, INTA Bulletin (September 2003);

- On Treaties, 93 TRADEMARK REPORTER 99 (2003);

-18-

- Creating and Managing an International Trademark Portfolio, Intellectual Property Law for Corporate Counsel (Northstar 2003);

- USPTO Class 33 Training Session (Arlington, VA, 2002);

- New Member Orientation; How to Survive the Annual Meeting, INTA Annual Meeting (2002);

- Beer and Wine Advertising and Promotion … Why It's Not all "Fun and Games," INTA Annual Meeting (2000);

- Beyond the Vineyard: Miscellanea That Will Amaze Your Friends and Confound Your Colleagues, INTA Trademark and Paralegal Forum (San Francisco, 1999);

- Creating and Managing a Global Trademark Portfolio, Practicing Law Institute Understanding Basic Trademark Law Program (San Francisco, 1999 – 2010);

- The Use of Survey Evidence in Dilution Cases: Corporate Counsel Challenges, INTA Dilution and Famous Marks Forum (Washington, D.C. 1998);

- Keys to an Effective Trademark Enforcement Program, 20th Annual Intellectual Property Law Institute, State Bar of California (Monterey, 1995);

- Co-Author (with J. MacLeod, R. McMillan), Coal Supply Contracts, Chapter 23 in ENERGY LAW (Matthew Bender, 1990);

- Author (and co-author with T. Biddle) of five Chapters in Mine Safety and Health Law, 1 COAL LAW AND REGULATION (Matthew Bender, 1983); and

- Note, 48 G.W.U.L. REV. 791 (1980) (discussing constitutional limitations on the assessment of license fees by federal agencies)

38.    Beginning in 1994 I served on various committees and held various leadership positions in the International Trademark Association ("INTA"), which is the global association of

-19-

trademark owners and professionals.  I was the President and Chairman of the Board of INTA in 2006.  During that year I travelled extensively in furtherance of INTA's public policy objectives, including meeting with government officials in New York, Brussels, Toronto, San Francisco, Washington, D.C., Alexandria, VA, and Beijing and Hangzhou, China.  I was a member of the Task Force that drafted the Trademark Dilution Revision Act of 2006 and worked on securing its passage.  I was also named one of the fifty (50) must influential people in global intellectual property by Managing Intellectual Property magazine.

a.     As an INTA volunteer, I chaired the Geographic Indications Task Force, the Treaty Analysis Committee, and was the Vice President responsible for the Geographic Indications and Treaty Analysis Committees. After my tenure as President, I was a member of the Geographic Indications Committee.  All of these committees dealt with issues concerning geographic names and trademarks.

b.     Although I am no longer an INTA officer or committee member, I still follow developments in the wine trademark and geographic indications area because I receive the same quarterly reports that are sent to the Officers and the Board of Directors.

39.     I have been named as one of the top 1000 trademark lawyers in the world by the World Trademark Review since approximately 2010. I have been named the "California Trademark Firm of the Year" by M & A Global International and globallawexperts.com since 2013, and as one of the top trademark lawyers in California by American Lawyer Media. I have appeared in Who's Who in Trademark Law since 2016.

40.     I am a member of the State Bar of California, the bars of the California Federal courts, and the Intellectual Property Law Section of the California Lawyers Association.  I am also

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

a member of L 'Association International des Juristes du Droit de la Vigne et du Vin (AIDV) (International Wine Law Association), and on the Board of Directors of their United States chapter.

41.    I have not testified as an expert witness at a deposition or at trial in the last four (4) years.

## EXHIBITS

42.    My testimony may be supported by future deposition testimony and the exhibits thereto.  If I am asked to develop a demonstrative Exhibit or other Exhibit, I will supplement this Declaration.

## COMPENSATION

43.    My fees for this engagement consist of billable hours and expenses.  My hourly billing rate for this engagement is $500.

I make this Declaration having been advised of the penalties for perjury on this 16th day of December, 2019, at Half Moon Bay, California.

_____
Paul W. Reidl

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1

## **EXHIBIT A**

2

First Amended Complaint and Exhibits

3

First Amended Answer

4

https://napavintners.com/

5

USPTO TESS web site

6

The web sites of the various wineries mentioned herein

7

Google.com

8

The TTB COLA web site

9

https://www.stagsleapdistrict.com/

10

http://www.atlaspeakappellation.com/

11

https://en.wikipedia.org/wiki/Wild_Horse_Valley_AVA

12

http://www.americanwineryguide.com/regions/rutherford-ava-wineries/

13

www.beckstoffervineyards.com

14

https://vinepair.com/articles/to-kalon-napa-vineyard-mondavi/

15

https://www.guildsomm.com/public_content/features/articles/b/stamp/posts/the-true-story-of-to-kalon-vineyard

16

17

USPTO TMEP

18

27 CFR Part 9

19

ATF decision on Wild Horse Valley AVA Rulemaking, 53 Fed.Reg 48244 (11/30/88)

20

21

22

23

24

-22-

25

1

**EXHIBIT B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24






RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

25

1

**EXHIBIT C**

2

3

4

5

6

7

8

9

10

11

12




13

14

15

16

17

18

19

20

21




22

23

24

25

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

**EXHIBIT D**









RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1

**EXHIBIT E**

2

3

4

5

6

7

8

9

10

11

12

13

14




15

16

17

18

19

20

21

22

23




24

25

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1

**EXHIBIT F**

2

3

4

5

6

7

8

9

10

11

12





13

14

15

16

17

18

19

20

21

22

23





24

25

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1

**EXHIBIT G**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17





18

19

20

21

22

23

24

25

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL







RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1

**EXHIBIT H**

COLUMBIA WINERY

PROUDLY CRAFTED IN THE STATE OF WASHINGTON

In 1962, a relentlessly curious group of friends sought to prove the world-class quality of Washington wines, establishing what would become Columbia Winery. Today, Columbia Winery continues to craft acclaimed wines from distinctive regions throughout Washington.

Our Riesling opens with a pleasant bouquet of white flowers. On the palate, juicy notes of apricot and honey combine with crisp minerality and bright acidity for a refreshing, dry style.

VINTAGE  2018  Riesling

APP  Ancient Lakes of Columbia Valley

WE INVITE YOU TO VISIT US AT WWW.COLUMBIAWINERY.COM OR OUR TASTING ROOM IN THE HEART OF WOODINVILLE, WASHINGTON

VINTED & BOTTLED BY COLUMBIA WINERY, WOODINVILLE, WA
CONTAINS SULFITES    © 2017 COLUMBIA WINERY    8868-4    750 mL
**GOVERNMENT WARNING:** (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

0  00000 00000  0

---

*Est. 1890*

**FREI BROTHERS**®

RESERVE

Andrew Frei founded the Frei Brothers Winery in 1890 with the belief that great wine begins with great grapes. He located his vineyard in the heart of Sonoma County, one of America's most awarded winemaking regions. Today, we carry on the Frei Brothers heritage with wines whose distinctive aromas and flavors capture the land and climate of their individual growing region.

Alexander Valley, Sonoma's premier Cabernet Sauvignon appellation, is the source of grapes for this wine. This full-bodied wine has classic aromas and flavors of cassis, eucalyptus, and dark berries, complemented by a touch of sweet vanilla and toasty oak.

We invite you to enjoy our wines with family and friends.

www.freibrothers.com                    (866) 346-3963

PRODUCED & BOTTLED BY FREI BROS. WINERY, HEALDSBURG, CALIFORNIA 95448
**GOVERNMENT WARNING:** (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.
750 ML  •  CONTAINS SULFITES
© FREI BROS. SONOMA 2007  •  CABERNET SAUVIGNON



0  00000 00000  0

---



SONOMA COAST
CHARDONNAY

The original homestead of MacMurray Ranch was settled over 150 years ago in the Russian River Valley of Sonoma County. Actor Fred MacMurray purchased the ranch in the 1940s and farmed it for over 50 years. Today, the legacy of the ranch carries on as a premier vineyard and inspiration for the wines we craft at MacMurray Ranch. We are committed to cool climate varietals and expressing the unique qualities from where the fruit is sourced. Our Sonoma Coast Chardonnay offers a rich mouth feel and sweet aromatics with ripe fruit flavors of melon, citrus, and a hint of vanilla.

PRODUCED & BOTTLED BY MACMURRAY RANCH, HEALDSBURG, CALIFORNIA • CONTAINS SULFITES • 750mL
**GOVERNMENT WARNING:** (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.



0  00000 00000  0

---

PRODUCED & BOTTLED BY

*Schrader~Cellars*

ANGWIN, CALIFORNIA

707-942-1212

The grapes used in the creation of this wine came from the Beckstoffer Family's portion of H. W. Crabb's original To Kalon Vineyard which was established in 1868.

CONTAINS SULFITES                    750 ML

**GOVERNMENT WARNING:** (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

PRODUCED AND BOTTLED BY
PAUL HOBBS WINERY
SEBASTOPOL, CALIFORNIA
707.824.9879
WWW.PAULHOBBS.COM

To Kalon Vineyard, planted in 1880 by pioneering winegrower H.W. Crabb, helped establish Napa Valley as a world-class wine region.

GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

CONTAINS SULFITES                                    750ML

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

1

## EXHIBIT I

2

3

Founded by 2nd generation vintner Jeremy Nickel, The
Vineyard House (or "TVH") is a tribute to Jeremy's late father,
and hero, Gil Nickel, founder of two of Napa Valley's most
iconic wine estates.

4

5



6

Former property owner & proprietor of the historic To-Kalon
Estate, H.W. Crabb, had the world's largest collection of over
300 grape varietals growing on his nursery in 1882. In honor
of Crabb's significance as a pioneering viticulturist, we named
"block 5" after his most successful varietal which was commonly
known as "Crabb's"Black Burgundy". We only produced 1,200
bottles of Cabernet Franc from the 2015 vintage and 10% of all
TVH proceeds are donated to cancer research in Gil's name.

7

8

9

"Let's raise a glass in honor of our Fathers, and to making them
proud, Cheers!"

10

*Jeremy Nickel*

11

PRODUCED & BOTTLED BY JEREMY NICKEL CELLARS,
ST. HELENA, CALIFORNIA - 750ML - ALC. 14.5% BY VOLUME
www.TheVineyardHouseWinery.com

12

13

**GOVERNMENT WARNING:** (1) ACCORDING TO THE
SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC
BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK
OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC
BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR
OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.
CONTAINS SULFITES

14

15

16

17

18

19

20

21

22

23

24

25

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

Founded by 2nd generation vintner, Jeremy Nickel,
The Vineyard House (or "T.V.H.") is a tribute to
Jeremy's late father (and hero) Gil Nickel - founder
of two of Napa Valley's most iconic wine estates.

Hidden within the western foothills of Oakville lies
the "To-Kalon Valley" and at its entrance, stands
The Vineyard House — a modest two-story farm-
house that was constructed in 1853 (and resided in)
by prominent Napa Valley pioneer - Bill Baldridge,
until his death in 1889.



Subsequently, Baldridge's 165-acre estate was
acquired by H.W. Crabb and operated as part of his
"To-Kalon" estate until 1943.  The property sat
mostly dormant but was revitalized in 1979 when
Gil Nickel acquired 120 acres of the Stelling Estate
which included TVH & Far Niente Winery.

Gil Nickel passed away from cancer in 2003 and
bestowed to Jeremy the historic Farmhouse and the
9-acre knoll upon which the house sits.  10% of all TVH
proceeds are donated to cancer research in Gil's name.

"Here's to honoring our parents, and to making
them proud. Cheers!"



PRODUCED & BOTTLED BY JEREMY NICKEL CELLARS,
ST. HELENA, CALIFORNIA - 750ML - ALC. 14.5% BY VOLUME
www.TheVineyardHouseWinery.com

**GOVERNMENT WARNING:** (1) ACCORDING TO THE
SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC
BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK
OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC
BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR
OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS. CONTAINS SULFITES

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL

Founded by 2nd generation vintner Jeremy Nickel, The Vineyard House (or "T.V.H.") is a tribute brand honoring Jeremy's late father (and hero) GIL NICKEL- founder of two of Napa valley's most iconic wine estates.

Our Block 8 "Boss" vineyard is situated at the highest point on our 44-acre property. The 1.3 acre "knoll" is planted to tightly-spaced Cabernet Sauvignon vines rooted in well-drained, rocky shale soil.



Former property owner, H.W. Crabb (founder of the historic "To-Kalon" estate) was quoted as saying... "The name To-Kalon is Greek and means the highest beauty or the highest good, but I try to make it mean - the boss vineyard."

This BLOCK 8 wine is a beautiful, concentrated expression of Oakville Cabernet Sauvignon, and we (like H.W. Crabb) think it is the BOSS!

1,200 bottles produced...

Of which 10% of all proceeds will be donated to cancer research in Gil's name.

"Let's raise a glass in honor of our Fathers, and to making them proud, Cheers!"



PRODUCED & BOTTLED BY JEREMY NICKEL CELLARS, ST. HELENA, CALIFORNIA - 750ML - ALC. 14.5% BY VOLUME www.TheVineyardHouseWinery.com

**GOVERNMENT WARNING:** (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS. CONTAINS SULFITES

RULE 26 DISCLOSURE STATEMENT AND DECLARATION OF PAUL W. REIDL