# Exhibit B

BUCHALTER
A Professional Corporation
GLENN P. ZWANG (SBN: 112295)
JEFFREY M. JUDD (SBN: 136358)
PETER BALES (SBN: 251345)
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
Telephone: 415.227-0900
Fax: 415.227.0770
Email:      gzwang@buchalter.com
            jjudd@buchalter.com
            pbales@buchalter.com

BUCHALTER
A Professional Corporation
FARAH P. BHATTI (SBN: 218633)
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949.760.1121
Fax:  949.720.0182
Email:      fbhatti@buchalter.com

Attorneys for Plaintiff
THE VINEYARD HOUSE, LLC
*Attorneys for Plaintiff, The Vineyard House, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE VINEYARD HOUSE, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>CONSTELLATION BRANDS U.S. OPERATIONS, INC.,<br><br>    Defendant. | Case No. 4:19-cv-1424-YGR<br><br>**RULE 26 DISCLOSURE STATEMENT AND REBUTTAL DECLARATION OF PAUL W. REIDL** |

**RULE 26 DISCLOSURE STATEMENT AND**
**REBUTTAL DECLARATION OF PAUL W. REIDL**

-1-

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CONTENTS ………………………………………………….. | 2 |
| INTRODUCTION ………………………………………………………… | 3 |
| EXECUTIVE SUMMARY ………………………………………………... | 3 |
| OPINIONS (CISSEL REPORT) …..……………………………………… | 4 |
| OPINIONS (MCDONALD REPORT) ……………………………………. | 9 |
| ADDITIONAL QUALIFICATIONS ……………………………………… | 10 |
| EXHIBITS ………………………………………………………………… | 11 |
| COMPENSATION ………………………………………………………... | 11 |
| EXHIBIT A ………………………………………………………………... | 12 |
| EXHIBIT B ………………………………………………………………... | 14 |

I, Paul W. Reidl, declare as follows:

## INTRODUCTION

1. My name is Paul W. Reidl. I am the principal attorney in the Law Office of Paul W. Reidl, located at 25 Pinehurst Lane, Half Moon Bay, California 94019. I previously submitted a Rule 26 Disclosure Statement and Declaration in this matter on December 16, 2019 ("My Declaration.") My professional qualifications are summarized in paragraphs 12-21 of My Declaration.

2. I have been asked by the Plaintiff, The Vineyard House, LLC, ("TVH") to comment on the Expert Witness Reports of Robert F. Cissel ("the Cissel Report") and Dr. Susan McDonald ("the McDonald Report"), both dated December 16, 2019  In addition to those documents and materials reviewed in connection with My Declaration, Counsel for TVH has provided me with, and I have reviewed, the documents referenced in Exhibit A.

3. My opinions flow from the documents provided to me by counsel for TVH, my own research, and my own knowledge and experience in trademark law, trademark application prosecution, the wine business and in the labeling, marketing, registration and use of trademarks, geographic terms, and historical terms for wine in the United States.

## EXECUTIVE SUMMARY OF OPINIONS

4. **Cissel Report**. I disagree with Mr. Cissel's conclusion regarding the materiality element of the fraud claim. (See Cissel Report at 10-11.) He assumes that "the only significance TO KALON had back in 1987 was the fact that H.W. Crabb used it decades earlier" as a trademark, and then concludes that because the trademark "had long since been abandoned" (which had been disclosed to the PTO), the applicant (Robert Mondavi Winery, or "RMW") did not fail to disclose a material fact to the PTO. The documents identified in Exhibit A show that To Kalon had

geographic significance at the time of the application, RMW knew that, and this was **not** disclosed to the PTO.  In my opinion, RMW's failure to disclose that To Kalon referred to a geographic location of significance to the wine trade in Napa Valley was material, because had that fact been disclosed the application should have been denied.

5. **McDonald Report**. In my opinion, Dr. McDonald's analysis is theoretical and has little relevance to the wine business.  She assumes that principles and practices applicable in the healthcare, pharmaceutical and technology sectors also apply to the wine business.  Dr. McDonald therefore assumes, without citing any empirical support, that wine consumers will see TVH's labels and conclude that the references to "To Kalon Vineyard" relate solely to a "brand" rather than a geographic location.  Based on my years of experience in the wine business generally, and with wine marketing and labels in particular, her assumption is incorrect.  As explained in My Declaration, wine is a product of the land.  Wineries include the names of vineyards on labels precisely because they reflect the name of the geographic area on which the wine grapes are grown.  At this price point (i.e. ultra-premium wines costing over $150 a bottle), where consumers will exercise caution and care in their purchases, the consumer take-away from seeing To Kalon Vineyard on the label is that this is the geographic place where the grapes were grown.  This marketplace reality is bolstered by the facts that others also use To Kalon or To Kalon Vineyard on their labels.

## OPINIONS

**CISSEL REPORT**

6. One issue in this case is whether To Kalon is a geographic term.  In my previous report, I opined that it was.  My Declaration ¶ 14.  It is the name for the historic H.W. Crabb

RULE 26 DISCLOSURE STATEMENT AND REBUTTAL DECLARATION OF PAUL W. REIDL

property in Napa Valley and it is associated with and known as that specific place by the wine trade and consumers of these wines.

7. The Cissel Report discusses the procedures followed by the Trademark Office in examining the To Kalon application in 1987. In Section V of his report, he opines on the "materiality" element of Plaintiff's fraud claim. Mr. Cissel states:

> Nor is the fact that To Kalon was historically used by H.W. Crabb on his winery material. That mark had long since been abandoned….. That being the case, the only significance TO KALON had back in 1987 was the fact that H.W. Crabb used it decades earlier. But, as discussed, the Applicant disclosed that fact to the Examining Attorney so there was no omission of a material fact.

Cissel Declaration at 11.

8. I read Mr. Cissel's Report, including the Exhibits attached to it, very carefully and did not find any support for his opinion that: "[T]he **only** significance TO KALON had back in 1987 was the fact that H.W. Crabb used it decades earlier." (emphasis added.) The evidence identified in Exhibit A shows that To Kalon was commonly used in the wine trade to describe a specific geographic location in the Oakville area of Napa Valley.

9. Abandonment of trademark rights is a defined concept in trademark law. It means that the use of a mark was discontinued by its owner with the intention of not resuming such use. 15 U.S.C. § 1127. If a trademark becomes abandoned, it may be adopted by a third party. It is not uncommon for businesses to resurrect old, abandoned brands, e.g., MAICO and INDIAN for motorcycles, PINE BROS. for throat lozenges, etc. Vermont Country Store specializes in such resurrected brands. *See* https://www.vermontcountrystore.com/specialty-shops/category/brands-from-the-past.

10. In my opinion, geographic terms are different from trademarks. Geographic terms cannot be abandoned because at their core they are the name of a specific place. For example, Mt. McKinley in Alaska is still "Mt. McKinley" even though it is now often referred to as Denali. The same can be said about Ayers Rock/Uluru, Zaire/Congo, British Honduras/Belize, and my home town, Spanishtown/Half Moon Bay. Similarly, Tenochtitlan is still the name of a city-state in Mexico even though the Aztec civilization has long since vanished. Yugoslavia and the USSR may no longer exist, but they are still geographic terms.

11. Thus, Mr. Cissel has **assumed** that To Kalon has no meaning other than as an abandoned trademark. Then, after setting up this strawman, he knocked it down by observing that the historical **trademark** usage was fully disclosed to the Examining Attorney, and therefore no material facts were withheld from the PTO. Under the scenario described by Mr. Cissel, from a procedural standpoint, everything was perfectly proper because abandoned marks can be used and registered by third parties not associated with the original owner.

12. Every geographic term begins as a coined term, whether it is the French trappers naming the Teton range in Wyoming, the Spanish explorers naming Palo Alto, St. Junipero Serra naming Santa Clara, or Mr. Crabb naming his property To Kolon. The fact that Mr. Crabb was long dead and his business long gone does not eliminate or diminish the legacy left by the geographic term To Kalon. The question Mr. Cissel should have asked is whether at the time of the application, To Kalon was the name of the geographic place known as To Kalon Vineyard, just as Monticello is the name of the Jefferson homestead in Virginia and Mt. Vernon is the name of the Washington homestead on the Potomac. The documents identified in Exhibit A show that the term To Kalon was used to describe the site of the historic Crabb property at the time RMW filed the application, and that Mr. Mondavi knew that To Kalon referred to the historic Crabb property.

13. This is why I disagree with Mr. Cissel's conclusion regarding materiality. Unlike trademarks, geographic terms cannot be abandoned.  Like the Cissel Report, RMW's November 25, 1987 Office Action response ignored the geographic significance of To Kalon in the wine trade and, instead, misrepresented that "TO-KALON … has no present meaning or significance in the [wine] trade or industry."  The response implied that the use of To Kalon had ended decades earlier when in fact it was still in use, because people still referred to the property as To Kalon vineyard, including RMW and its President, Robert Mondavi.  The contemporary writings of Mr. Robert Mondavi and others which show that despite the loss of trademark significance, To Kalon was still known as the name of a specific geographic place.  In my opinion this information was material and should have been disclosed to the PTO.

14. Mr. Cissel places great stock in the regularity of the examination procedures applied to the To Kalon application.  But this proves nothing.  Prior to the creation of the internet, Examining Attorneys relied primarily on the truthfulness of the statements made to them by counsel. Examining Attorneys had few feasible options: with the possible exception of dictionary definitions and gazetteers, reference books, and the NEXUS database, their ability to verify responses to Office Actions was limited.  In marked contrast, today's Examining Attorneys actively verify applicant representations, and frequently base Office Action refusals solely on the information they have obtained from internet searches.[1] The resources provided by the internet have resulted in more rigorous examination, and more Office Action refusals.[2]  Thus, the

---

[1] The TTAB has held that both Applicants and Examining Attorneys may rely on information found on the internet, subject to certain evidentiary considerations.  *See Safer Inc. v. OMS Inv. Inc.* 94 U.S.P.Q.2d 1031, 1039 (TTAB 2010).

[2] Mr. Cissel left the Trademark Office for the TTAB in 1983, prior to the advent of the internet age and its impact on trademark examination procedures.

Examining Attorney who reviewed the November 25, 1987, Office Action response had to accept it at face value even though RMW failed to disclose the geographic nature of the term To Kalon.

15. Practitioners before the PTO have the same duty of candor as they have in Federal courts. See 37 C.F.R. Part 11. RMW's response to the Office Action ignored the geographic nature of To Kalon. RMW also did not disclose that To Kalon was well-known in Napa Valley as the historical location of one of the Valley's most famous vineyards. RMW also did not disclose that RMW itself used To Kalon as a geographic term with meaning in the wine business. In my opinion, this should have been disclosed. I therefore disagree with Mr. Cissel's conclusion.

16. Hypothetically, if in 1987 the Examining Attorney had access to the current internet and the use of modern search engines, the search for To Kalon would almost certainly have disclosed the many articles and references to Kalon as the geographic name for the vineyard property in Napa Valley. In my experience with post-internet examination practices, the Examining Attorney probably would not have bothered with the Office Action information request but, instead, would have issued an Office Action refusal based on the findings of her research. Thus, if the fact that To Kalon was a known geographic place been disclosed, in my experience the Examining Attorney would likely have refused registration.

17. The fact that the Examining Attorney, and subsequent Examining Attorneys, accepted the specimens of use for To Kalon wine has no bearing on whether it is a geographic term. Cissel Report pp. 8- 9. Once a mark is registered, an Examining Attorney who reviews a Section 8 Declaration does not revisit the question of whether the registered mark should have been registered in the first place.[3] The Examining Attorney simply looks at the specimen, decides

---

[3] A Section 8 Declaration, 15 U.S.C. § 1058, is a declaration of continuing use which must be filed within the 5th and 6th years of registration, within the 10th year of registration, and every 10 years thereafter. The Declaration must include a specimen of use.

-8-

RULE 26 DISCLOSURE STATEMENT AND REBUTTAL DECLARATION OF PAUL W. REIDL

if it depicts the use of the mark on the goods, and if so the Declaration is accepted. The specimens submitted to the PTO by RMW (and, later, Constellation) were wine bottles/labels containing the term To Kalon. They should have been approved. But the relevant question is not whether the specimens were acceptable. Instead, the relevant question is whether the term should have been registered in the first place due to its geographic nature. As discussed above, the term would likely have been refused registration if the geographic significance of To Kalon had been disclosed.

**MCDONALD REPORT**

18. I did not see anything in the McDonald Report reflecting that she has any experience in the wine business or with wine labels, other than the ambiguous statement that she has worked for alcoholic beverage companies on issues other than labelling and brand communication. (McDonald Report ¶ 4 at p.2). She concludes, however, that when the typical wine consumer looks at Plaintiff's labels, he or she will conclude that To Kalon Vineyard is a trademark, not a geographic term. As one with 29 years of experience in wine labels and wine marketing, I disagree with her opinion because it is contrary to the way wines are labeled and marketed.

19. As I explained in My Declaration, geographic designations are critically important to wine marketing because wine is a product of the geographic area in which the grapes are grown. (My Declaration ¶¶ 12, 13). The geographic nature of the vineyard designation is often used as part of the "story" for the wine and is frequently elaborated-on in the vintner's web site. (Id. ¶ 25). A vineyard-designated wine commands a higher price precisely because of its scarcity and uniqueness. (Id. ¶ 25). Wine labels have a very specific architecture that places the vineyard designation (usually in a smaller font) below the brand name. This is illustrated by the labels in

Exhibit C, D and G of My Declaration and in Exhibit B to this Declaration, which consists of representative labels personally downloaded by me from the internet.

20. The label architecture of Plaintiff's wine is totally consistent with wines that are vineyard-designated. This is done to communicate the terroir to the consumer. That is why vinters put a vineyard designation on the label – to tell the consumer the geographic location in which the grapes were grown which, in turn, helps to justify the higher price ($225/bottle.)

21. As explained in my report, multiple parties use the term To Kalon Vineyard. (My. Declaration ¶ ¶ 22, 26). Given the ultra-premium price points of wines bearing To Kalon Vineyard,[4] and the historic significance of the term as the name of a vineyard in the Oakville area of Napa Valley, I believe that consumers will conclude that the term is geographic and associated with this specific place.

22. In my experience in the wine business, everyone assumes that when the label says "X vineyard(s)" below the brand name on a label, the consumer will view that as the name of the geographic place where the grapes are grown. Consumers will not perceive it as the name of a barn, a crush pad, a fermentation tank, or a wine cellar. The term" vineyard(s)" is the cue that this is the name of the place where the grapes were grown.

### ADDITIONAL QUALIFICATIONS

23. According to PTO records, I have prosecuted over 800 trademark applications. I have appeared in over 250 TTAB cases. While an Officer of the International Trademark Association, I was responsible for the PTO Subcommittee and was involved in commenting on PTO examination procedures. During my career I have had numerous meetings with PTO

---

[4]   My research discloses that wines bearing a To Kalon vineyard designation retail in the $150 - $500 range.

executives regarding examination procedures and have taught training sessions for the PTO Examining Attorneys.

24. For most of my career at Gallo, I met or spoke with marketing people on almost a daily basis concerning wine marketing and labels.  This included the co-founder (Ernest Gallo), his Executive Vice President for Marketing (Albion Fenderson), and the various Vice Presidents, Directors, and Brand Managers.  I participated in hundreds of meetings and provided my input (both legal and non-legal).  I read and commented-on hundreds of market research documents (focus groups and surveys) regarding consumer perception of wine labels.  Following my career at Gallo, I have continued working with winery owners, consultants, and marketing executives on these subjects, particularly in the context of developing new brands.  Many of my clients have been Gallo marketing executives.

**EXHIBITS**

25. My testimony may be supported by future deposition testimony and the exhibits thereto.  If I am asked to develop a demonstrative Exhibit or other Exhibit, I will supplement this Declaration.

**COMPENSATION**

26. My fees for this engagement consist of billable hours and expenses.  My hourly billing rate for this engagement is $500.

I make this Declaration having been advised of the penalties for perjury on this 8th day of January, 2020, at Half Moon Bay, California.

*/s/ Paul W. Reidl*
_____
Paul W. Reidl

RULE 26 DISCLOSURE STATEMENT AND REBUTTAL DECLARATION OF PAUL W. REIDL

# EXHIBIT A

First Amended Complaint and Exhibits

First Amended Answer

USPTO TESS and TTABVUE web sites

Google.com

Expert Report of Robert Cissel and Exhibits


1890-7-15 Pacific Wine & Spirits Review – p. 6

1891-05-04 Pacific Wine & Spirits

1892-5-7 The Breeder & Sportsman

1899-3-4 Sacramento Union – Crabb Obituary

1899-3-4 SF Call Crabb Obituary

1903-03-29 Los Angeles Herald Deaths of the Day E.S. Churchill

1903-03-31 Pacific Wine & Spirits Review Obituary E.S. Churchill

1909-10-01 St. Helena Star Wine and Vine Notes

1910-11-25 ST. HELENA STAR Vine and Vine Notes

1915 Official Napa County Map

1916-08-24 Riverside Daily Press

1916-08-24 SF Chronicle

1917-06-16 NAPA JOURNAL Churchill Case is Settled

1933-12-30 Napa Daily Register

1934-02-14 NAPA JOURNAL

1934-03-26 0R 83-206

1944-3-31 ST. HELENA STAR

1951-02-08 SF Chronicle

1961-01-19 SF Chronicle

1966-9-28 To Kalon Taylor to Gould

1969-01-14 LOS ANGELES TIMES

1969-01-14 SF Chronicle Mondavi Winery

1969-02 Wines & Vines

1970-09-24 Robert Mondavi Winery Received F.L. Gould items pertaining to H.W. Crabb

1980 Heintz HW Crabb, Oakville pp. 23-24

1996 Lapsely [sic] Bottled Poetry p. xvii

1998 Mondavi Harvests of Joy pp. 57-59

2008 Sullivan Napa Wine, pp. 87-88

Italian Swiss postcard_front original

**EXHIBIT B**





