# Exhibit D

PAUL W. REIDL

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    ---oOo---

4   THE VINEYARD HOUSE, LLC,

5          Plaintiff,

6       vs.                    Case No. 4:19-cv-1424-YGR

7   CONSTELLATION BRANDS U.S.

8   OPERATIONS, INC.,

9          Defendant.

10  _____/

11

12

13

14

15

16       VIDEOTAPED DEPOSITION OF PAUL W. REIDL

17            San Francisco, California

18           Thursday, January 16, 2020

19

20

21  Reported by:

22  ASHALA TYLOR, CSR #2436, CLR, CRR, RPR

23

24

25  PAGES 1 - 104

PAUL W. REIDL

Page 14

1  Q. And this is for counseling clients in the
2  alcoholic beverage industry?
3  A. And other industries, yes.
4  Q. Now, you mentioned you had expertise in
5  how marketers select brands. Do you have any
6  degrees in marketing?
7  A. No.
8  Q. Have you taken any courses in marketing?
9  A. No.
10 Q. Have you conducted any consumer perception
11 surveys in conjunction with this case?
12 A. No.
13 Q. Now, do you claim to be an expert on
14 history?
15 A. Insofar as wine labels are concerned and
16 the general structure and architecture and the
17 regulatory requirements, yes.
18 Q. What about generally, you know, history of
19 Napa Valley? Do you profess to have expertise in
20 that area?
21 A. I will leave that to the historians.
22 Q. Okay. And do you claim to be an expert on
23 geography?
24 A. Only in the sense that geography impacts
25 wine labels and wine marketing, and the decisions

1  Gallo?
2      A.  That's correct.
3      Q.  I think you actually were the person who
4  originally applied for this, weren't you?
5      A.  I was.
6      Q.  Now, do you recall if you disclosed the
7  geographic significance of New Amsterdam to the
8  examining attorney during prosecution?
9      A.  I do not.
10     Q.  Do you think it would have been material
11 to disclose the geographic significance of
12 New Amsterdam?
13     A.  I do not know.
14     Q.  What would determine whether it would have
15 been material to disclose the geographic
16 significance of New Amsterdam to the examining
17 attorney?
18     A.  Counsel, for me to discuss that, I would
19 have to disclose privileged communications that I
20 had with my client at the time.
21         MR. JUDD:  So I will instruct you not to.
22         THE WITNESS:  Thank you.
23 BY MR. KANE:
24     Q.  So would you say, without going into
25 your -- any privileged communications you might have

1   had with your client, generally are there some
2   situations where it may be material to disclose the
3   geographic significance of a term; whereas, others
4   there might not be?  It might not be material?
5       A.   I -- I don't know how to answer that
6   question.
7       Q.   Do you think that there is an obligation
8   of a trademark attorney prosecuting a trademark
9   application to always disclose when a trade -- when
10  an applied-for term is a geographic reference?
11      A.   Again, I think it depends on the term.  I
12  think it depends on the facts.  It depends on that
13  lawyer's assessment of their obligations under
14  PTO rule -- the PTO's version of Rule 11.  I don't
15  think you can generalize.
16           MR. KANE:  I'd ask the court reporter if
17  she can please mark as Exhibit 1049 the following
18  document.
19                    (Exhibit 1049 was marked for
20                    identification and attached
21                    hereto.)
22  BY MR. KANE:
23      Q.   Mr. Reidl, have you seen this document
24  before?
25      A.   No, sir.  This was after I left Gallo.