Timothy J. Carlstedt (State Bar No. 168855)
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, California 94111
Tel.: (415) 975 – 3700
Fax: (415) 975 – 3701

Edward T. Colbert (DC Bar No. 206425)
William M. Merone (DC Bar No. DC-458104)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 955-1500
Fax: (202) 778 – 2201

*Counsel for Defendant/ Counterclaim Plaintiff
Constellation Brands U.S. Operations, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE VINEYARD HOUSE, LLC, a California limited liability company, *Plaintiff / Counterclaim-Defendant*, v. CONSTELLATION BRANDS U.S. OPERATIONS, INC., a Delaware corporation, *Defendant / Counterclaim-Plaintiff.* | Case No. 4:19-cv-01424-YGR **DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF MATTHEW EZELL** |

Defendant, Constellation Brands U.S. Operations, Inc., respectfully moves for an order excluding Matthew Ezell, a survey researcher retained by Plaintiff, The Vineyard House, LLC, from testifying as to the opinions set forth in his report. Despite purporting to conduct a "confusion" survey, Mr. Ezell did not even try to measure the only form of confusion at issue in this case. As such, his proposed testimony is irrelevant to the questions before the Court and should be precluded.

## BACKGROUND

The sole issue in this case, as pertains to confusion, is whether consumers of premium Napa County wines who have encountered the TO KALON VINEYARD brand before (*e.g.*, buying wine made by Constellation or its licensees, reading wine reviews), would, upon seeing one of Plaintiff's accused wines, believe mistakenly that the grapes used to make it likewise come from the highly-regarded "To Kalon Vineyard." This case is not about *who* makes or puts out Plaintiff's wines (after all, they are clearly labeled as coming from "The Vineyard House"); it is about the source of the grapes used *to make* the wine. And here, Plaintiff's labels *expressly state* that the source of the grapes is "To-Kalon Vineyard." Confusion is thus inevitable.

Plaintiff's only defense therefore is to obfuscate. Plaintiff evidently intends to "prove" at trial the irrelevant point that consumers understand that wine labeled as coming from THE VINEYARD HOUSE is—not surprisingly—put out *by* "The Vineyard House." And to that end, Plaintiff will offer the testimony of Matthew Ezell, who was hired to design and conduct a survey to test this pointless point.

Specifically, Mr. Ezell proposes to testify about the results of an "Eveready" survey he designed and fielded to assess consumer confusion as to what company is behind Plaintiff's "Block 8" wine.[1] *See Expert Report of Matthew G. Ezell*, ¶¶ 10, 15 (*Armin Ghiam Declaration*, Ex. A); *cf. also, e.g., E & J Gallo Winery v. Proximo*

---

[1] The "Block 8" wine is one of three wines Plaintiff labels as emanating from "H.W. Crabb's To-Kalon Vineyard," all of which are accused of infringement. *See, e.g.,* Dkt. No. 1, ¶¶ 48-49, 64.

*Spirits, Inc.,* 2011 WL 5922090, *1-*2 (E.D. Cal. 2011) (discussing the original *Eveready* study). He will say, based on the results of his study, that few consumers believe that Plaintiff's "Block 8" wine "is made or put out by Constellation," and instead correctly recognize that the wine comes from The Vineyard House. *See Ezell Rep.*, ¶¶ 19-20. Mr. Ezell will also testify that consumers do not believe that the producer of THE VINEYARD HOUSE "Block 8" wine needed anyone's permission to make the wine (other than, obviously, the permission of the "The Vineyard House" entity). *See id.*, ¶¶ 21-22.

However, none of that matters. Constellation is not *claiming* that consumers will be confused as to who "makes or puts out" Plaintiff's wine. *Cf.* Dkt. No. 20, p. 2 ("*Def. Reply to PI Motion*") ("This case … is not about mistaken purchases …"). The relevant question is whether consumers believe that *the grapes* used in Plaintiff's wines come from the same vineyard ("To Kalon Vineyard") that is the wellspring for genuine TO KALON and TO KALON VINEYARD wine. *That* is the goodwill upon which Plaintiff is trading, and Mr. Ezell's survey, purposefully or otherwise, does not explore that fundamental issue. *Accord [Rebuttal] Expert Testimony of Susan Schwartz McDonald, Ph.D.*, ¶¶ 4, 18-26 (*Ghiam Decl.*, Ex. B) ("[T]his case is about the significance of source in the most fundamental of ways: not the source of the wine in the bottle but the source of ingredients used to make the wine in the bottle. This is an 'Intel inside' sort of scenario, not a conventional brand confusion scenario."). As such, Mr. Ezell's survey is irrelevant to the issues here and should be excluded under Rule 702.

### THE APPLICABLE LEGAL STANDARD

The party seeking to rely on an expert's opinion at trial must demonstrate by a preponderance of the evidence that the proposed testimony would be admissible. *Lust, By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th

MOTION TO EXCLUDE TESTIMONY OF MATTHEW EZELL — - 2 - — 4:19-CV-01424-YGR

Cir.1996). To be admissible, the opinions to be offered by a qualified expert must be both "helpful" and "reliable." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 594-95 (1993); *U.S. v. Herrera*, 788 F. Supp. 2d 1026, 1029 (N.D. Cal. 2011).

The "helpfulness" requirement's primary inquiry is one of relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591; *accord, e.g., In re: Autozone, Inc.*, 2016 WL 4208200, *16 (N.D. Cal. 2016) (evidence should be excluded as irrelevant if it does not "fit" the issue to be decided). Thus, a survey that tests an irrelevant issue should be excluded, even if properly performed.[2] *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001); *see also Gucci America, Inc. v. Guess?, Inc.*, 831 F.Supp.2d 723, 745 (S.D.N.Y. 2011) (excluding survey designed to test point-of-sale confusion when the case involved a claim of post-sale confusion). This "threshold question" is for the Court to decide. *Clicks Billiards*, 251 F.3d at 1263.

## ARGUMENT

Mr. Ezell's survey is not relevant to the question of confusion presented *in this case*. To be fair, his standard, off-the-shelf "Eveready" study (if properly executed) could have been useful were the debate about the name used *for* Plaintiff's wine—for example, if it were labeled "THE HOUSE OF MONDAVI" (rather than "THE VINEYARD HOUSE"), an "Eveready" study undoubtedly would show that consumers believe that the wine was "made or put out" by Robert Mondavi (thus, demonstrating confusion) or, at a minimum, that the producer needed Mondavi's

---

[2] With that being said, there nonetheless are serious methodological flaws in Mr. Ezell's survey, such as his overinclusive definition of the relevant "universe," his failure to validate respondent purchasing intent, and his failure to take precautions against acquiescence and overstatement. *See, e.g., McDonald Rebuttal Rep.*, ¶¶ 27-46 (*Ghiam Decl.*, Ex. B). As Dr. McDonald succinctly stated, "Mr. Ezell conducted a survey that asked the wrong questions of the wrong respondents." *Id.*, ¶ 47. For the purpose of this motion, however, the Court need not consider those "follow on" issues, such as universe definition or sample composition, which go to weight. *See Clicks Billiards*, 251 F.3d at 1263. The only question here is the relevance (or lack thereof) of the questions Mr. Ezell asked.

permission to make the product.  *Cf. McDonald Rebuttal Rep.*, ¶¶ 18-22 (*Ghiam Decl.*, Ex. B); *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F.Supp.2d 1165, 1178-79 (C.D. Cal. 2010).  But that sort of "who makes this" confusion is not what this case is about.

Because Mr. Ezell prepared his study design way back in January, *see, e.g., Ezell Rep.*, p. A-2, his misunderstanding of the issues was likely shaped by Plaintiff's counsel, who was arguing at that time (during the preliminary injunction process) that use of THE VINEYARD HOUSE as Plaintiff's "primary brand" somehow obviated the potential for confusion.  *See* Dkt. No. 18 ("*Pl. Opp. to PI Motion*"), pp. 3-4.  More specifically, and as the Court may recall, counsel claimed that even though Plaintiff admittedly used "To-Kalon Vineyard" to "tell the consumer the geographic location in which the grapes were grown[,]" *see id.*, p. 4, that somehow could not be an infringement because it supposedly was a non-trademark "fair use."  *See, e.g., id.*, p. 15.  In fact, counsel went so far as to suggest that *Sleekcraft* essentially should not even *apply* to cases (such as here) involving the use of a "secondary" or "ingredient" brand.  *See* Tr. (Feb. 20, 2020), p. 26 (*Ghiam Decl.*, Ex. C).

It is therefore no surprise that Mr. Ezell designed his study to test Plaintiff's theory that the prominent use of THE VINEYARD HOUSE on the "Block 8" label avoids "who makes this" confusion.  *See Ezell Rep.*, ¶ 24 (concluding from the data that consumers were not likely to believe that Plaintiff's wine was "made or put out by Constellation … [or] with the authorization or approval of Constellation," or that "whoever put[] out" the wine had a business affiliation with Constellation).  That Mr. Ezell did what Plaintiff asked, however, does not save his study from irrelevance.

This case is about "*ingredient* confusion"—the "Intel Inside" sticker.  *Accord McDonald Rebuttal Rep.*, ¶ 21 (*Ghiam Decl.*, Ex. B).  If Plaintiff's use of "H.W. Crabb's To-Kalon Vineyard" leads consumers to believe that its wines are made with grapes grown in the famed TO KALON VINEYARD—grapes that, as Plaintiff's

wine expert, Doug Frost, explained "command a huge price premium over other similar fruit;" *see Expert Report of Doug Frost*, ¶ 16 (*Ghiam Decl.*, Ex. D)—*that* is actionable infringement, *see* 15 U.S.C. § 1114(1), and *that* is what this case is about. Admittedly, though, it would be pointless to commission a survey to test that issue because Plaintiff's bottles **literally say** that the wine is made with grapes *from* "To-Kalon Vineyard." *See Ezell Rep.*, ¶ 16 ("Block 8" bottle); *accord Pl. Opp. to PI Motion*, p. 2 (agreeing that "consumers understand that the name of a specific vineyard on a bottle's front label is a vineyard designation that describes the origin of the grapes used to make the wine").

## CONCLUSION

Mr. Ezell investigated an irrelevant issue. It would therefore be pointless for him to testify, and would only serve to tie up trial time and necessitate costly testimony from another expert in response. "[I]s it relevant[?]" is a "threshold question" for survey admissibility, *Clicks Billiards*, 251 F.3d at 1264, and Mr. Ezell's study unquestionably fails that test. The Ezell Survey should be excluded.

|   |   |
|---|---|
|   | Respectfully Submitted, |
| Dated: August 17, 2020 | HUNTON ANDREWS KURTH LLP |
|   | By: /s/ *Edward T. Colbert* |
|   | Timothy J. Carlstedt (State Bar No. 168855) |
|   | HUNTON ANDREWS KURTH LLP |
|   | 50 California Street, Suite 1700 |
|   | San Francisco, California 94111 |
|   | Tel.: (415) 975 – 3700 |
|   | Fax: (415) 975 – 3701 |
|   | Edward T. Colbert (DC Bar No. 206425) |
|   | William M. Merone (DC Bar No. 458104) |
|   | HUNTON ANDREWS KURTH LLP |
|   | 2200 Pennsylvania Avenue, N.W. |
|   | Washington, D.C. 20037 |
|   | Tel.: (202) 955-1500 |
|   | Fax: (202) 778 – 2201 |
|   | *Counsel for Defendant/ Counterclaim Plaintiff Constellation Brands U.S. Operations, Inc.* |