EXHIBIT A

January 8, 2020

**Via Email**

Glenn P. Zwang
Peter Bales
Buchalter
55 Second Street
Suite 1700
San Francisco, California 94105
gzwang@buchalter.com
pbales@buchalter.com

        Re:       *The Vineyard House v. Constellation Brands U.S. Operations, Inc.*
                  Case No.: 4:19-cv-1424-YGR

Dear Glenn and Peter:

As requested, I supplement my percipient witness notice consistent with the Federal Rules of Civil Procedure, as a lay expert witness. In addition to my personal details of employment and education, set out in the letter of December 16, and as testified during my deposition of December 20, 2019, I am prepared to testify about geographic significance in the wine business, including the elements that would be relevant to determining an American Viticultural Area (AVA), such as Oakville and similar AVAs and appellations such as Napa Valley.

In the wine business, the TTB oversees and protects the use of geographic appellations when they are official political regions or when they are American Viticulture Regions (AVAs), but only trademark law protects the names of vineyards. For example, use of a political designation such as the state of California means that 100% of the grapes must be grown within that officially designated region; a political designation such as a county, e.g. Napa County, means that at least 75% of the grapes must come from within that county; use of an AVA, e.g. Napa Valley or Oakville, means that at least 85% of the grapes have come from within that legally defined area. Thus, the names "California", "Napa County", "Napa Valley", or "Oakville", and their use on wines, are officially defined, and protected by the TTB. However, the names of vineyards are not protected in this way. Thus, the owner of a vineyard name can only protect their vineyard name through trademark enforcement.

The concept of a geographically significant area requires some definite boundaries. In the case of political regions such as "California" or "Napa County", these boundaries are defined by legal maps. In the case of AVAs, these boundaries are generally formed by geological features such as mountains, valleys, alluvial fans, rivers and similar identifiable features of the land. Within any given appellation or AVA, there are almost always multiple owners of vineyard operations or winery operations, often immediately adjacent to each other. While there can be differences in the nature of the vineyards within an AVA or appellation, they will often be of a subtle nature and often the product of stewardship of the vineyard, growing history, vines planted and other non-geological elements. In particular, the Robert Mondavi Winery To Kalon Vineyard is located within, and a part of, the Oakville AVA and Napa Valley AVA and is not geographically distinct from its neighbors in the same AVA.

Neither the United States nor California have vineyard registration or recordation requirements nor opportunities, and so the only way to protect the name and identity of a vineyard operation is through trademark law.  There are thousands of vineyard operations in the state of California, and I believe that the name of every one of them would be protected as a trademark, if the names meet the other requirements of trademark law.  Trademark law is the only way for those operations to protect their names.  Examples in Napa would include Hyde Vineyard, Dr. Crane Vineyard, or Fay Vineyard.  A "Vineyard" is a complex concept incorporating not just the physical location of the vines, but ownership, stewardship and the like and is subject to change as ownerships change.  Indeed, it is not unusual for a well-known brand to be separated from the original vineyard used at the commencement of wine making.

In the wine business, trademarks (and/or brands) are critical to identifying the source of the wines, and by "source" I refer to the winery producing the wine, which is not the same thing as a vineyard.  For example, Inglenook was a famous estate in Rutherford, Napa Valley, in the 19th Century, founded by Gustave Niebaum.  However, for many years, wines were made and sold under the trademark "Inglenook" by Hublein, Canandaigua, and then by The Wine Group even though they had no connection to the vineyard originally planted by Gustave Niebaum in the 19th century.  In 2011, the current owner of the land where the 19th Century winery had stood, Francis Ford Coppola, bought back the trademark "Inglenook".  Only then could the current winery on that site produce wines under the name that the original business on that site had used.  Even today the Inglenook vineyard or Inglenook Winery is not the same as the Neibaum operation of the 19th Century, but the brand is wholly owned and recognized in the wine business as belonging to the Francis Ford Coppola family business.

Unless the vineyard names and designations are protected by trademark law, there would be nothing to stop the proliferation of uses of successful brands by other businesses.  There would be no way to stop others from using the names associated with famous prestigious vineyards.  By way of example, "Martha's Vineyard" or "Fay Vineyard" are all well-known and valuable vineyard designations.  Permitting use by persons other than the owners of those names would lead to confusion of the public as to the source of the wine.

The concept of a vineyard is not the same thing as the "land" on which at any given time grapes may be grown as the land can change hands and pass in or out of use as part of a vineyard designation.  For example, Mr. H.W. Crabb owned land in Oakville and traded under the name To Kalon for about 13 years, from 1886 to 1899.  Long after Mr. Crabb's death, and long after the To Kalon name had stopped being used on wines, Beaulieu Vineyards ("BV"), purchased a large piece of that land, and owned it for about 50 years, during which time it was commonly known as "BV-4".  When Mr. Beckstoffer bought that land from BV in 1993, he did not get the right to call wine from that land "BV", "BV-4" or "Beaulieu Vineyards", even though that vineyard had previously been owned by a business with that name, and that vineyard had been commonly known as "BV 4".  BV and Beaulieu Vineyards remained trademarks of the trademark owner, BV, when they sold the land.  The trademark is separate from the real estate.  Had Mr. Beckstoffer called the vineyard BV-04, it would have confused consumers into believing that the vineyard was still owned and operated by BV.

Quite simply, I am unaware of any instance in California or the United States where the name of a recognized vineyard is not considered the property of the owner and protected by trademark law.

Yours truly,

*Mark de Vere*

Mark de Vere