Timothy J. Carlstedt (State Bar No. 168855)
Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111
Tel.: (415) 975 – 3700
Fax: (415) 975 – 3701

Edward T. Colbert (DC Bar No. 206425)
William M. Merone (DC Bar No. DC-458104)
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 955-1500
Fax: (202) 778 – 2201

*Counsel for Defendant/ Counterclaim Plaintiff Constellation Brands U.S. Operations, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE VINEYARD HOUSE, LLC, a California limited liability company, *Plaintiff / Counterclaim-Defendant*, v. CONSTELLATION BRANDS U.S. OPERATIONS, INC., a Delaware corporation, *Defendant / Counterclaim-Plaintiff.* | Case No. 4:19-cv-01424-YGR **OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1 REGARDING PRIOR ARBITRAION** |

1  Plaintiff, The Vineyard House, LLC, has filed an overlength and irrelevant motion in an effort to keep Defendant, Constellation Brands U.S. Operations, Inc., from doing something it has no intention of doing.  Specifically, Plaintiff wants to bar Constellation from discussing at trial how Mr. Nickel, before exploiting the TO KALON name, first violated the trademark rights of the FAR NIENTE winery in a similar effort to trade on a competitor's goodwill.  *See Pl. MIL #1*, p. 2.  And although those prior bad acts are certainly relevant to Mr. Nickel's later actions in this case, Constellation has no need to rely on them to prove Mr. Nickel's bad faith here.  Thus, it is unnecessary to limit testimony or argument "about" the arbitration.

Nonetheless, certain public arbitration filings are *separately relevant* for another purpose (which Plaintiff does not even discuss), and it is for that purpose that Constellation intends to introduce them into evidence.  Thus, whether the documents are admissible must be evaluated with an eye toward the reason for which they will be offered, and for the proffered purpose they are highly relevant.

## ARGUMENT

Plaintiff has repeatedly argued that "To Kalon Vineyard" supposedly is the <u>geographic name</u> for the parcel of land it owns.  *See, e.g.,* Dkt. No. 1, ¶¶ 1, 52-54; Dkt. No. 45-1, p. 18; Dkt. No. 71, pp. 2, 7.  That is **the core** of Plaintiff's "fair use" defense.  *See id.*; *cf.* 15 U.S.C. § 1115(b)(4) (exempting from infringement use of a name "otherwise than as a mark" to "describe … [the] geographic origin" of a party's goods).  According to Plaintiff, "To Kalon is the only name reasonably available" to it to identify its parcel.  *See* Dkt. No. 1, ¶¶ 52, 53 (claiming that Plaintiff's use of "H.W. Crabb's To Kalon Vineyard" is only "for the purpose of identifying the geographical location and significance of [Plaintiff's] property").  Plaintiff further proposes to offer expert testimony (through Mr. Frost) that the name TO KALON VINEYARD is "generally understood" in the wine industry (including among winery owners) to identify "a specific geographic location" that

includes Plaintiff's land.  *See Expert Report of Doug Frost*, ¶¶ 3, 10 (attached hereto as *Armin Ghiam Declaration*, Ex. A).

As a result, evidence suggesting that "To Kalon Vineyard" is <u>not</u> the geographic name for Plaintiff's vineyard parcel would be highly relevant in this case.  *See* Fed. R. Evid. 401 (evidence is relevant if it has "any tendency to make a fact [of consequence] … less probable than it would be without the evidence").  And even more so, evidence that Plaintiff (or Mr. Nickel) **knew** that "To Kalon Vineyard" was not the name of the land would not only disprove Plaintiff's "fair use" defense, it would independently support a finding that Plaintiff acted in bad faith.  After all, if both Plaintiff and Mr. Nickel (its principal) knew that the land was not geographically identified as (or "generally understood" to be) "To Kalon Vineyard," and further knew that Constellation owned a trademark registration for the TO KALON VINEYARD name, Plaintiff's decision to use the designation H.W. CRABB'S TO-KALON VINEYARD can only be seen as a deliberate attempt to trade off of Constellation's goodwill in the TO KALON name.

It is against that backdrop that the relevance of documents relating to the arbitration must be considered.  In a decision of the Court of Appeals of California affirming the lower court's refusal to vacate the Award resolving the arbitration between Plaintiff ("TVH") and Mr. Nickel (on one side) and Far Niente ("FNW"), the Court explained that one issue concerned water rights pertaining to the vineyard in Halter Valley that the parties called "the Halter Valley Parcel":

> As part of their settlement agreement, the parties negotiated that Jeremy [Nickel] would receive ownership of 33.6 acres of FNW land adjacent to TVH **known as the Halter Valley Parcel**. Historically, the Halter Valley Parcel had been irrigated with water from the Stelling Pond, which resides on land owned by defendant FN Land, LLC. Water from the pond had also been used to irrigate TVH's landscaping. In conjunction with the Halter Valley land transfer, the parties executed the easement that was incorporated into the settlement agreement. The sole water right memorialized in the easement is one to take water **"`for vineyard irrigation purposes' on the `Halter Valley portion of [TVH].'"** The easement does not include a right to use water for lawn and landscaping purposes at TVH.

1  *Nickel v. Far Niente Wine Estates, LLC*, Civ. No. A150513, 2017 WL 6629523, at
2  *7 (Ct. App. Cal., First Dist., Dec. 29, 2017) (emphasis added) (attached as *Ghiam*
3  *Decl.* Ex. B).  And in the original Arbitration Award itself, the Arbitrator likewise
4  explained that the case included a question about water rights relating to Plaintiff's
5  "Halter Valley Parcel":

> **The annexation of the Halter Valley Parcel to The Vineyard House** raised an important water rights issue. Historically, the Halter Valley Parcel had been irrigated with water from the Stelling Pond. Now that there were to be two different owners of the two properties (Jeremy owned The Vineyard House and the Halter Valley Parcel, while [the Far Niente parties] owned the Stelling Vineyard Parcel, which included Stelling Pond), the issue of water rights between the two had to be addressed. Accordingly, the parties executed a Water Rights Easement document …. In this Easement, the newly expanded TVH Parcel, **which now included the Halter Valley Parcel**, is referred to in the Water Rights Easement as the "Benefitted Parcel" (Ex. 155).

Final Award, *Far Niente v. Jeremy J. Nickel and The Vineyard House*, JAMS Ref. No. 1100080365, p. 42 (Jan. 13, 2015) (attached as *Ghiam Decl.* Ex C) (emphasis added).

That "Halter Valley Parcel" included a substantial area of the land that Plaintiff *now claims* was <u>always</u> known "geographically" as "To Kalon Vineyard." *Compare id.* (subject parcel comprised 33.6 acres of land) *with* Dkt. No. 1, ¶¶ 5, 17 (Plaintiff only owns 43 acres of land in total, of which 15-17 acres [Plaintiff says] are geographically eligible to be called "To Kalon").  Yet the evidence shows that the people who *owned* the land—first Far Niente, and then Plaintiff / Mr. Nickel— called it, and *understood it to be*, the "Halter Valley Parcel," which was located in "Halter Valley."  *See supra*.  **There is no mention of "To Kalon"** in *any* of the arbitration documents.  In fact, Mr. Nickel has testified that despite living in Napa Valley since the late 1970s (at the Far Niente winery) and later working in the Napa wine industry, *see Deposition of Jeremy Nickel*, 16:15-17:1, 17:21-18:10, 19:5-18; *Pl. MIL #1*, p. 3, he had not even *heard* of the name "To Kalon" until he inherited nine acres of land from his father (in 2011) and subsequently hired a *research company* (ARG) to investigate the history of his property. *See Nickel Dep.*, 20:2-

21:2 (attached hereto as *Ghiam Decl.* Ex. D). Up until then, he only knew the area as "Halter Valley". *See id.*, 94:18-95:6.

This evidence severely undercuts Plaintiff's claim that "To Kalon is the only name reasonably available" to identify its vineyard, or that it actually needs to use the designation H.W. CRABB'S TO-KALON VINEYARD to "identify[] the geographical location" of its property. *Cf.* Dkt. No. 1, ¶¶ 52, 53. Plaintiff's use of H.W. CRABB'S TO-KALON VINEYARD is not "geographic"; it is *a trademark* use. *See Expert Report of Susan Schwartz McDonald, Ph.D.*, ¶¶ 11-20 (attached hereto as *Ghiam Decl.* Ex. E); *see also, e.g., Meeker v. Meeker*, 2004 WL 2457793, *8, 10 (N.D. Cal. 2004); *cf.* 15 U.S.C. § 1115(b)(4) (the "fair use" defense can only apply to a use "otherwise than as a mark"). As such, evidence (*e.g.*, the arbitration documents) tending to show that Plaintiff and Mr. Nickel (who were both parties to the arbitration) unquestionably *knew* that the land was previously called the "Halter Valley Parcel," and that it was located in a geographic region known as "Halter Valley," is highly relevant to this case, and should therefore be admissible. *See* Fed. R. Evid. 401.[1]

---

[1] Although Plaintiff also seeks to invoke Fed. R. Evid. 403 as a basis for exclusion (claiming that evidence relating to the arbitration would be prejudicial even if relevant), *see Pl. MIL #1*, p. 2, it is generally understood that Rule 403 has limited applicability in bench trials. *E.g., United States v. Niebla-Torres*, 678 F.3d Appx. 487, 490 (9th Cir. 2017); *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (noting that "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial").

| | |
|---|---|
| 1 | |
| 2 | Respectfully Submitted, |
| 3 | |
| 4 | Dated: August 19, 2020    HUNTON ANDREWS KURTH LLP |

By:   /s/ *Edward T. Colbert*
Timothy J. Carlstedt (State Bar No. 168855)
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, California 94111
Tel.: (415) 975 – 3700
Fax: (415) 975 – 3701

Edward T. Colbert (DC Bar No. 206425)
William M. Merone (DC Bar No. 458104)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 955-1500
Fax: (202) 778 – 2201

*Counsel for Defendant/ Counterclaim Plaintiff Constellation Brands U.S. Operations, Inc.*