# EXHIBIT B

🚩 KeyCite Red Flag - Severe Negative Treatment
Unpublished/noncitable December 29, 2017

2017 WL 6629523
Not Officially Published
(Cal. Rules of Court, Rules
8.1105 and 8.1110, 8.1115)
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115,
restricts citation of unpublished
opinions in California courts.

Court of Appeal, First
District, Division 1, California.

Jeremy J. NICKEL et al.,
Plaintiffs and Appellants,
v.
FAR NIENTE WINE ESTATES, LLC
et al., Defendants and Respondents.

A150513
|
Filed 12/29/2017

(San Francisco County Super. Ct. No.
CPF-16-514929)

**Attorneys and Law Firms**

Richard Curtis Darwin, Buchalter Nemer, 55 2nd
Street, Suite 1700, San Francisco, CA 94111, for
Plaintiffs and Appellants.

Jeremy Todd Kamras, Arnold & Porter Kaye
Scholer LLP, 3 Embarcadero Center—10th Floor,
San Francisco, CA 94111, for Defendants and
Respondents.

**Opinion**

Dondero, J.

*1 Plaintiffs Jeremy J. Nickel and The Vineyard
House, LLC (TVH) appeal from the trial court's order
denying their petition to correct and/or vacate an
arbitration award entered in favor of defendants Far
Niente Wine Estates, LLC, Far Niente Winery Inc.,
Nickel & Nickel Vineyards, LLC, FN Cellars, LLC,
and FN Land, LLC (collectively, FNWE). Plaintiffs

argue the award should be vacated and/or corrected
because (1) they were denied the opportunity to
respond to late evidence submitted by defendants, (2)
the injunctive relief set forth in the arbitration award
is fatally ambiguous, and (3) the arbitrator lacked
jurisdiction to decide certain water rights issues. We
affirm.

## FACTUAL BACKGROUND
## AND PROCEDURAL HISTORY

Gil Nickel, Jeremy's father, was "an iconic presence"
in the California wine industry for years. Gil founded
Far Niente Winery (FNW) in Napa County in 1979. [1]
Since then, FNW has established four affiliated
wineries—Nickel & Nickel, Dolce Winery, EnRoute
Winery, and Bella Union Winery.

When Gil died in 2003, Jeremy, Gil's nephew Erik,
and Gil's widow Elizabeth were each bequeathed
ownership interests in FNW. Gil separately bequeathed
to Jeremy an adjacent nine-acre parcel on which, in
2010, Jeremy founded TVH, his solely owned winery.

In the years following Gil's death, relations between
Jeremy and the other FNW owners deteriorated.
Following the dismissal of a derivative suit filed
by Jeremy, the parties began negotiating a business
separation in order to comprehensively resolve "all
disputes and claims between them."

In August 2014 the parties entered into a settlement
agreement, which served to sever Jeremy's interests
in FNWE from those of the other owners. Among
other things, the settlement agreement established
a series of purchase options intended to terminate
any joint ownership of FNW wineries as between
Jeremy and the other owners. It also secured the
parties' intellectual property rights by providing that
Jeremy may "not infringe or violate any trademark,
trade name, or other intellectual property right held
by [FNWE]." In addition, the Settlement Agreement
incorporated a separately negotiated "Grant of Water
Rights Easement" (Easement), which memorialized
Jeremy's right to water from a pond located on FNW
property adjacent to TVH property.

In February 2015, FNWE discovered that Jeremy had acquired FNW customer lists, including a list containing the contact information for approximately 25,000 individuals. The lists included the names and contact information of about 90 percent of FNW's 6,000 active wine club members. Jeremy used the lists to conduct phone, e-mail, and letter solicitation campaigns on TVH's behalf. It is essentially undisputed that Jeremy fully intended to target FNW's customers by using a marketing campaign designed to imply that TVH was affiliated with FNW.[2] Around this same time, Jeremy also claimed a right to use water from FNW's pond for lawn irrigation and landscaping on TVH property. FNWE believed that this use was not authorized by the Easement.

**\*2** On March 12, 2015, FNWE filed a demand for arbitration, invoking an arbitration clause contained in the settlement agreement. The demand included claims for trade secret misappropriation, trademark infringement, unfair competition, breach of contract, and declaratory relief concerning the parties' respective water rights.

The JAMS arbitration hearing took place over seven days in August 2015. At the end of the hearing, the arbitrator announced that "[t]he evidence is closed." Both sides were directed to file simultaneous proposed awards, after which, "in the absence of anything else," the matter would be deemed submitted.

On November 4, 2015, the arbitrator issued a tentative award. In the document, he concluded that FNWE was entitled to an injunction enjoining plaintiffs from "infringing or violating [defendants'] trademarks, trade names, or other intellectual property ...." He noted that in both of their proposed awards, the parties had identified various marketing strategies in which Jeremy would or would not be permitted to engage under the trademark injunction. The arbitrator directed the parties to meet and confer, and to submit their respective views on the terms of an appropriate injunction by December 7, 2015. Thereafter, by December 14, 2015, each side would be allowed to file a further letter brief in response to the other side's submission. The arbitrator instructed the parties that their briefs should not reargue any of the legal or factual issues addressed in the tentative award.

On December 7, 2015, FNWE filed an eight-page supplemental submission, reporting that plaintiffs had recently sent out multiple e-mail solicitations to some of FNW's customers, in violation of the settlement agreement and the terms of the tentative award, by which plaintiffs had previously agreed to abide. Plaintiffs had also uploaded Facebook posts suggesting that TVH was affiliated with Dolce and Nickel & Nickel. The submission incorporated correspondence between the parties' attorneys regarding the alleged violations, including a letter from plaintiffs' counsel in which he admitted "a mistake" had been made with respect to the customer service lists. FNWE also attached a letter dated November 19, 2015, in which plaintiffs' attorney contested its attorney's interpretation of the material posted on TVH's Facebook page. On that same date, plaintiffs submitted their supplemental brief containing their suggested language for the proposed injunction.

On December 11, 2015, plaintiffs' attorney sent a nine-page letter to the arbitrator explaining that the e-mails referenced in FNWE's December 7, 2015 submission had been sent inadvertently. He also objected to FNWE's proposed terms for the injunction. He did not ask the arbitrator to reopen evidence. Nor did he object to FNWE's submission of evidence, or attempt to introduce rebuttal evidence.

On January 13, 2016, the final arbitration award (Award) was served on the parties. The Award contains comprehensive findings of fact, and indicates that the arbitrator had "carefully considered [the parties'] submissions" on the scope of injunctive relief. The Award sets forth the specifics of that relief, including a revised "Section IV" entitled "Claimants' Relief," which further delineates what plaintiffs can and cannot do in their marketing efforts. Plaintiffs were enjoined from using and/or disclosing FNWE's customer lists. The Award also includes declaratory relief holding that plaintiffs have no rights to use water from the pond other than those expressly set forth in the Easement. FNWE was also awarded $366,336, plus interest, as a remedy for unjust enrichment.

**\*3** On March 24, 2016, plaintiffs filed a petition to correct or vacate the Award, arguing, in part, that the Award should be vacated under section 1286.2,

subdivision (a),[3] because, among other reasons, the arbitrator had refused to allow them to submit additional evidence. They filed their amended petition on April 1, 2016.

On August 24, 2016, the trial court filed its order denying plaintiffs' amended petition. The court concluded, in part, that they had failed to show the arbitrator had denied them the opportunity to present evidence. They also had failed to show any resulting prejudice. The court further found the injunction was not impermissibly vague or indefinite, and rejected their challenge to the water rights portion of the Award.

On October 6, 2016, the trial court granted FNWE's motion to confirm the Award.

On November 29, 2016, the trial court filed its judgment in conformity with the Award. This appeal followed.

## DISCUSSION

### I. Standard of Review

Our Supreme Court has stated: "[W]e have made it clear that in light of the strong public policy in favor of private arbitration, judicial review of an arbitrator's award is quite limited." ( *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 275; see *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243 (*Marsch*).) The parties to a private arbitration impliedly agree that the arbitrator's decision will be binding and final. ( *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*); see *Kahn v. Chetcuti* (2002) 101 Cal.App.4th 61, 67; *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 754.)

As a general rule, the merits of a dispute, the sufficiency of the evidence, or the validity of the arbitrator's reasoning will not be reviewed. ( *Moncharsh, supra,* 3 Cal.4th at p. 11.) Moreover, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of law or fact even if the mistake appears on the face of the award and causes substantial injustice. ( *Id.* at pp. 6, 11, 27–28; *Marsch, supra,* 23 Cal.App.4th at p. 244.) Judicial review is limited to those situations enumerated in section 1286.2[4] to vacate an award or section 1286.6[5] to correct an arbitrator's decision. ( *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775; *Moncharsh,* at pp. 27–28.)

 *4 "On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." ( *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892, fn. 7; see *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 23–24.)

### II. Submission of Post-hearing Evidence Supporting Trademark Injunction

Plaintiffs assert the trial court erred in failing to vacate the Award's trademark infringement injunction because after the proceeding had been closed to new evidence, the arbitrator, in formulating the terms of the injunction, considered and relied on evidence submitted by FNWE with their December 7, 2015 letter brief without affording plaintiffs an adequate opportunity to respond. The authorities plaintiffs rely on, however, do not support their claim of error.

Section 1286.2 provides a trial court may vacate an arbitration award on several grounds, including that "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to ... hear evidence material to the controversy ...." (§ 1286.2, subd. (a)(5).) This provision operates as "a safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case." ( *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439.) When a party contends it was substantially prejudiced by the arbitrator's exclusion of material evidence, a court should generally consider prejudice before materiality. (*Ibid.*) To find substantial prejudice, the court must first accept the arbitrator's theory and conclude the arbitrator might well have made a different award had the evidence been allowed.

Case 4:19-cv-01424-YGR   Document 159-3   Filed 08/19/20   Page 5 of 9

Nickel v. Far Niente Wine Estates, LLC, Not Reported in Cal.Rptr. (2017)

(*Burlage v. Superior Court* (2009) 178 Cal.App.4th 524, 531 (*Burlage*).)

In cases where a court has vacated an arbitrator's award pursuant to section 1286.2, subdivision (a)(5), it is typically because the arbitrator flatly refused to consider evidence relevant to the case, or allowed one side but not the other to present evidence on a point.

For example, in *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1108, only one party was allowed to offer oral testimony, and the opposing party was not allowed to cross-examine the witness who testified. The arbitration panel curtailed the testimony in part because the arbitrators did "not want 'to be here for another two hours.' " (*Id.* at p. 1109.) Similarly, in *Burlage,* the arbitrator excluded substantially all of the defendants' evidence, such that "the arbitration assumed the nature of a default hearing in which the [plaintiffs] were awarded $1.5 million in compensatory and punitive damages they may not have suffered." (*Burlage, supra,* 178 Cal.App.4th at p. 530.)

In this case, there is nothing in the record demonstrating that the arbitrator *refused* to hear any evidence that plaintiffs offered for consideration. Instead, after FNWE offered evidence showing that plaintiffs' wrongful use of their customer lists and trademarks was continuing even after the issuance of the Tentative Award, plaintiffs submitted a letter brief defending their conduct as having been inadvertent. They did not include any declarations or other evidence to support this defense, and did not thereafter offer to produce any relevant additional evidence on this point to the arbitrator. In his final arbitration award, the arbitrator noted the post-Tentative Award submissions by respondent reflected "the *consistent* theme that Jeremy has used in his marketing materials to suggest —and in some instances to state flat out—that TVH is associated or affiliated with ... the 'Far Niente Family of Wines'.... [T]his has had the inevitable —and apparently *intended*—effect of bringing TVH wines into the 'Far Niente Family of Wines,' even though there is no business or enological connection between the two." This conclusion by the arbitrator, supporting his final award, to this court reflects his review of the entire record, not simply the "post-tentative submissions" by respondents.

**\*5** Nor is there anything in the record to suggest that plaintiffs objected to the material FNWE submitted with its letter brief. Instead, plaintiffs argued that the brief was improper because it "attempts to retry this case on the merits, proposes an overbroad and unworkable injunction, and requests completely new relief unrelated to the trademark issue and beyond the proper scope of the Arbitrator's jurisdiction." There also is no indication in the record that plaintiffs asked for a continuance to afford them an opportunity to submit rebuttal evidence. [6]  Accordingly, the trial court's finding that plaintiffs "failed to submit evidence demonstrating that the arbitrator ... denied them the opportunity to present evidence ... [or] refused to accept evidence they presented" is supported by substantial evidence. [7]

Further, plaintiffs have not shown "substantial prejudice" from the arbitrator's alleged refusal to hear the evidence that they never proffered. The letter brief they submitted to the arbitrator contained the very same information they now claim would have been in the testimony that the arbitrator allegedly prevented them from submitting, namely, that their violations of the Tentative Award were the results of inadvertent "mistakes" by their employees. [8] Moreover, the relief they seek is deletion of the portion of the Award restricting their use of FNWE's trademarks. Yet the evidence they claim they were prevented from submitting concerned their use of customer lists only. In particular, they do not argue that the post-Tentative Award Facebook posts linking TVH with Dolce and Nickel & Nickel was accidental or inadvertent. Nor do they contest the arbitrator's finding that, in his marketing efforts, Jeremy had consistently and affirmatively tried "to capitalize upon an association between TVH and the names 'Nickel' and 'Far Niente family.' " It is thus unlikely that the evidence plaintiffs assert they were prevented from introducing would have changed the arbitrator's trademark rulings. This is particularly true as they voluntarily offered to turn over the relevant customer lists to FNWE. The trial court's finding that plaintiffs had failed to show prejudice resulting from the arbitrator's actions is therefore supported by substantial evidence.

Case 4:19-cv-01424-YGR   Document 159-3   Filed 08/19/20   Page 6 of 9

Nickel v. Far Niente Wine Estates, LLC, Not Reported in Cal.Rptr. (2017)

### III. Whether the Trademark Injunction Is Ambiguous

**\*6** Plaintiffs assert certain provisions set forth in the Award's permanent injunction are fatally ambiguous, requiring correction or vacation under section 1286.6, subdivision (c). Specifically, they attack the provisions of the injunction that impose restrictions on their use of trademarks and trade names owned by FNWE, as well as on the manner in which they may market wines made by TVH. FNWE contends plaintiffs are barred from making these assertions because they did not request the same relief from the arbitrator.

Even if plaintiffs' assertions have not been forfeited on appeal, we conclude they fail because the relief plaintiffs seek is not authorized by section 1286.6, subdivision (c). That subdivision provides, in part: "Subject to Section 1286.8, the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶] ... [¶] ... The award *is imperfect in a matter of form, not affecting the merits of the controversy*." (Italics added.) Plaintiffs assert correction is required in that the award is "imperfect" because it is " ' not *legally* enforceable.' " (Italics added.) This statutory interpretation is overly broad, and is directly contrary to relevant case law construing this provision.

Section 1286.2, subdivision (c) is intended to apply to "technical problem[s] with the [arbitration] award." ( *Moncharsh, supra,* 3 Cal.4th at p. 13.) By its terms, it does not apply to matters " 'affecting the merits of the controversy.' " (*Ibid.*) While this ground is quite narrow, as we have already noted, judicial review of arbitration awards is limited to specific and narrow statutory grounds since "by voluntarily submitting to arbitration, the parties have agreed to bear [the risk of an erroneous decision by the arbitrator] in return for a quick, inexpensive, and conclusive resolution to their dispute." ( *Id.* at p. 11.) Our Supreme Court has further observed: " 'Inherent in [the arbitrator's] power is the possibility the arbitrator may err in deciding some aspect of the case.' " ( *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360 (*Cable Connection*).)

Plaintiffs' claims of error do not fall under section 1286.6, subdivision (c), because they all relate to the legal merits of the Award. Cases hold that, absent an agreement between the parties stating otherwise, an award may not be vacated on the ground that a legal error was an act in excess of the arbitrator's power. ( *Cable Connection, supra,* 44 Cal.4th at pp. 1360–1361.) Further, it is the general rule that an arbitrator is not required to act in conformity with rules of law but may base his or her decision on broad equitable principles. ( *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831–832; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 374–375 (*Advanced Micro Devices*); *Moncharsh, supra,* 3 Cal.4th at pp. 10–11.) Moreover, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of law or fact *even if* the mistake appears on the face of the award *and causes substantial injustice.* ( *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534; *Moncharsh,* at pp. 6, 11, 27–28.) Thus, an arbitrator may make a binding award, which must be judicially enforced, even though it conflicts with substantive law and would be reversible error if entered by a court in civil litigation. ( *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 784; *State Farm Mut. Auto. Ins. Co. v. Guleserian* (1972) 28 Cal.App.3d 397, 402; *Durand v. Wilshire Ins. Co.* (1969) 270 Cal.App.2d 58, 61.)

**\*7** For example, in *Landis v. Pinkertons, Inc.* (2004) 122 Cal.App.4th 985 (*Landis*), the arbitrator changed his award to correct a legal error. The arbitrator's original award included economic damages and an award of general damages for emotional distress. ( *Id.* at p. 988.) The defendants requested that the arbitrator correct the award on the grounds that the plaintiff had not sought emotional distress damages in the complaint and the award was not authorized by law. (*Ibid.*) The arbitrator granted the defendants' motion to strike the award of emotional distress damages and issued an amended award to that effect. ( *Id.* at pp. 988–989.) On appeal, the *Landis* court, applying section 1286.6, subdivision (c), concluded the arbitrator had improperly amended the

Case 4:19-cv-01424-YGR   Document 159-3   Filed 08/19/20   Page 7 of 9

Nickel v. Far Niente Wine Estates, LLC, Not Reported in Cal.Rptr. (2017)

final award to correct an error of law. (*Landis*, at p. 992.)

Here, plaintiffs first argue that section VI, subdivision (1) of the Award improperly prohibits Jeremy from violating unclearly stated intellectual property rights. That subsection of the Award is found under the heading "Conclusion and Final Award," and states: "The Arbitrator orders a permanent injunction restraining and enjoining [plaintiffs] and each of them, including their agents, servants, employees, and all persons acting in concert with them or on their behalf, from infringing or violating [defendants'] trademarks, trade names or other intellectual property rights ...." Plaintiffs assert this language is vague and ambiguous because defendants' "trademarks" and "trade names" and "other intellectual property" are not defined or explained in the Award, exposing Nickel to contempt without knowing that which he is prohibited from doing. They also claim the Award as a whole is ambiguous because imperative language appears throughout the arbitrator's discussion of claims, but is not expressly incorporated into the trademark injunction section.

Essentially, plaintiffs ask us to modify the scope of the injunction, especially as to how they can describe Jeremy's nexus to FNW and its related products. This would involve revisions to the injunction itself —the language of which was hotly contested during the arbitration. Because plaintiffs treat the alleged ambiguities as highly significant and argue these provisions make the Award unenforceable, they cannot also claim that the language they challenge is merely a matter of form not affecting the merits and, as such, correctable under section 1286.6, subdivision (c). The statute authorizes courts to correct only " 'nonsubstantive matters of form' " that do not require a court to interpret, infer, or otherwise substitute its judgment for that of the arbitrator. (*Landis, supra*, 122 Cal.App.4th at p. 992.) The statutory grounds do not permit the courts to make substantive changes to an award's determinations of fact and law. (*Id.* at pp. 992–993.) We find no error.

## IV. The Water Rights Claim

As part of their settlement agreement, the parties negotiated that Jeremy would receive ownership of

33.6 acres of FNW land adjacent to TVH known as the Halter Valley Parcel. Historically, the Halter Valley Parcel had been irrigated with water from the Stelling Pond, which resides on land owned by defendant FN Land, LLC. Water from the pond had also been used to irrigate TVH's landscaping. In conjunction with the Halter Valley land transfer, the parties executed the easement that was incorporated into the settlement agreement. The sole water right memorialized in the easement is one to take water " 'for vineyard irrigation purposes' on the 'Halter Valley portion of [TVH].' " The easement does not include a right to use water for lawn and landscaping purposes at TVH.

At arbitration, FNWE sought a declaration that the obligation to make water available from Stelling Pond to plaintiffs is limited to that set forth in the Easement—namely, to make water available solely to the Halter Valley parcel for vineyard irrigation purposes only. The arbitrator concluded FNWE was entitled to this relief and that therefore Jeremy was not entitled to use the pond's water to irrigate TVH's lawn and landscaping, or for any other purpose. In the course of his decision, the arbitrator addressed Jeremy's arguments that, notwithstanding the terms of the Easement and the settlement agreement, he still had a right to use the water to irrigate TVH landscaping because he had both implied and prescriptive easements allowing him to do so. The arbitrator addressed these arguments and concluded plaintiffs had failed to establish all of the requirement needed to show that they had acquired either type of easement.

**\*8** On appeal, plaintiffs contend the arbitrator exceeded his jurisdiction by deciding the merits of FNWE's water rights claim as to TVH's land. Plaintiffs contend the Easement does not relate to TVH property. Instead, it pertains only to the separate vineyard in Halter Valley. Plaintiffs ask us to "correct" the Award by deleting two sections of the Award that address his claims of prescriptive and implied easements. He does not challenge the portion of the Award affirming that the Easement itself only grants the right to use water from the pond to irrigate the vineyards on the Halter Valley portion of the TVH parcel.

Our Supreme Court has stated that "courts should generally defer to an arbitrator's finding

that determination of a particular question is within the scope of his or her contractual authority." (*Advanced Micro Devices, supra,* 9 Cal.4th at p. 372.) We observe that in the Award, the arbitrator noted that in a case management order dated June 16, 2015, he had concluded the water rights claim fell within the scope of the Settlement Agreement and was therefore arbitrable. The arbitration provision in the settlement agreement broadly covers "[a]ny disputes *arising out of or relating to*" the settlement or the easement, "or the interpretation or enforcement of ... such agreements." (Italics added.)

The parties also agreed to proceed under JAMS Rules, and rule 11 states: "(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator *shall be final*. [¶] (b) Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction *and arbitrability issues* as a preliminary matter." (Italics added.)

In *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413 (*Greenspan*), the defendants argued that an arbitration award should be vacated because,

among other things, the plaintiff trustee did not plead joint and several liability on the breach of contract claim and thus the issue was not arbitrable. (*Id.* at p. 1438.) The court rejected the argument because under Rule 1 of the JAMS Rules, "the arbitrator, not a court, determines what issues are arbitrable, and we consequently defer to the arbitrator's determination that the issue of joint and severable liability was arbitrable." (*Greenspan,* at p. 1435.) We also will defer to the arbitrator's determination with respect to his jurisdiction over the parties' water rights dispute.

In sum, we conclude the trial court did not err by denying plaintiffs' motion to vacate and/or correct the Award and confirming the Award.

## DISPOSITION

The judgment is affirmed.

We concur:

Humes, P. J.

Banke, J.

**All Citations**

Not Reported in Cal.Rptr., 2017 WL 6629523

## Footnotes

1   We use first names in the interest of clarity. No disrespect is intended.
2   For example, telemarketers were directed to state that they were "calling on behalf of Jeremy Nickel with Far Niente, Nickel & Nickel, and Dolce wineries" and that "Jeremy Nickel has asked me to extend a curtsy [*sic*] call to patrons of his family's wines ...."
3   All further statutory references are to the Code of Civil Procedure unless otherwise noted.
4   Section 1286.2 provides, in part: "(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy

or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision."

5 Section 1286.6 provides: "Subject to Section 1286.8, the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶] (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

6 Plaintiffs cite to no cases for the proposition that an arbitrator has a duty to invite an opposing party to submit new evidence absent a request from that party. Instead, they cite to rule 17(d) of the JAMS Streamlined Arbitration Rules & Procedures (JAMS Rules), which permits arbitrators to exclude immaterial or unduly repetitive evidence provided that "all parties are afforded the opportunity to present material and relevant evidence." It is undisputed that the arbitrator accepted all of plaintiffs' evidentiary submissions and never refused to consider any evidence proffered by them.

7 Though we exercise our discretion to consider this claim on the merits, we agree with FNWE that plaintiffs forfeited any claim of error by failing to raise this issue before the arbitrator. (See, e.g., *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1345–1346 ["In any event, by failing to raise the issue at the arbitration hearing, Collins waived his right to assert error here."].) It is well settled that a party may not collaterally attack a procedure in an arbitration on grounds not raised before the arbitrator when the result turns out to be adverse. (*Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 93 [citing *Wellman v. Writers Guild of America, West, Inc.* (9th Cir. 1998) 146 F.3d 666, 673]; see also *Moncharsh, supra,* 3 Cal.4th at pp. 30–31.)

8 Plaintiffs offered to introduce declarations from Jeremy and a TVH employee as to how FNW customers were inadvertently solicited by TVH.

---

**End of Document**          © 2020 Thomson Reuters. No claim to original U.S. Government Works.