# EXHIBIT E

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE VINEYARD HOUSE, LLC, ) <br> a California limited liability company, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONSTELLATION BRANDS U.S. OPERATIONS, INC. ) <br> a New York corporation ) <br> ) <br> Defendant ) | Case No.: 4:19-cv-1424-YGR |

**Expert Testimony of Susan Schwartz McDonald, Ph.D. on the Use of To Kalon as a Brand**

**on Plaintiff's Proposed Bottles**

                                                                                              HIGHLY CONFIDENTIAL

**Introduction: Scope of Engagement and Professional Qualifications**

Background and Scope of Engagement

1. I have been retained by Hunton Andrews Kurth LLP, counsel for Defendant in THE VINEYARD HOUSE, LLC v. CONSTELLATION BRANDS U.S. OPERATIONS, INC., to offer expert marketing opinion on whether Plaintiff is using the words "To-Kalon Vineyard" – or more specifically, "H.W. Crabbe's To-Kalon Vineyard" -- as a brand or a descriptive name on labels it intends to use for the purpose of marketing bottles of cabernet wines. The case revolves around a rather byzantine history of brand and land ownership in the Napa Valley, but it is my understanding that: "To Kalon," one of the country's oldest brand registrations, has a documented record of use as a trademark for over a century (interrupted only by a few periods of disuse); Mondavi revived the To Kalon brand and acquired a new registration for it; and Constellation Brands (through its acquisition of Mondavi) is the owner of that trademark today.

2. My testimony in this case does not to address the legal validity of that registration, nor does it recount or interpret the brand history. Neither do I offer testimony as an expert on the making of wine and the significance of "terroir" here or generally. My role is to present an analysis of The Vineyard House bottles from a marketing perspective -- specifically how those bottles make use of the words To-Kalon Vineyard -- taking account of the presentation of the words themselves and their context.

Professional Qualifications

3. I am President and CEO of NAXION, a century-old marketing research and consulting organization that advises companies on product development, brand health, customer experience, and other marketing activities. As an expert on marketing and opinion research, I consult to companies on brand strategy, opportunity assessment, innovation, commercialization strategy, and life-cycle management. My experience includes several decades of assignments designed to develop, launch, and position new market offerings, and to devise life cycle management strategies for brands as they mature in a competitive, technologically dynamic marketplace. Throughout my career, I have had frequent occasion to guide communications strategy in support of product launch as well as programs to monitor communications effectiveness throughout the product lifecycle. I have personally designed and conducted thousands of surveys in order to accomplish many of these objectives.

4. My experience spans healthcare, consumer packaged goods, technology, and financial services, with a broad focus on helping companies build and maintain strong brands. Throughout my career, I have worked on behalf of a number of alcoholic beverage products including beer and wine brands, identifying market entry strategy, positioning brands for strong market performance, and monitoring brand health.

5.      The combination of marketing and survey expertise forms the basis for a long career as a consultant to companies engaged in litigation under the Lanham Act, a context in which I have presented evidentiary surveys, offered expert rebuttal testimony, and provided opinions on the strength of brands – including secondary meaning and the likelihood of confusion between two trademarks.  I have also given extensive testimony on advertising deception.  Much of my expert testimony has addressed the requirements for building and maintaining healthy brands and the significance of brand as the foundational platform for enterprise value creation and successful engagement with customers.

6.      My professional marketing career has been spent at NAXION, known from 1943 to 2014 as National Analysts.  For two decades, National Analysts was a division of the global commercial and technology consulting firm, Booz•Allen & Hamilton, of which I was a Partner and Vice President.  My tenure at Booz•Allen included a period during which I served as the leader of that firm's worldwide pharmaceutical industry practice.  In 1992, National Analysts became an independent private entity under my co-ownership.  It is now an Employee-Owned Stock Ownership Corporation (ESOP) of which I am majority shareholder.

7.      Although my focus is on commercial application, I make frequent podium appearances and have lectured on research methodology and marketing at major universities (e.g., the University of Pennsylvania and Princeton University), as well as at industry-training seminars sponsored by major professional organizations.  I have also served as Chair of the Board of Directors of CASRO, the US marketing and survey research industry trade association (recently renamed The Insights Association).  Currently, I am a trustee of The Wistar Institute, the world's oldest independent incubator of biomedical discoveries in cancer and immunology.

8.      I received my BA degree magna cum laude, Phi Beta Kappa, from Smith College, and my MA and Ph.D. from the University of Pennsylvania's Annenberg School for Communication, where my studies were concentrated in the field of social psychology and communications theory.  I am the author of a text on market research and of numerous publications and speeches on marketing and market research methodology.  A complete copy of my curriculum vitae along with a list of publications authored in the past ten years, and testimony and depositions taken in the past five years is included in Appendix A.

**Material Reviewed and Professional Compensation**

9.      In forming the opinions I express here, I have considered the following materials in addition to drawing on my professional expertise:

    (i)     Documents TVH000001 – TVH000007

    (ii)    First Amended Complaint (ECF30)

    (iii)   Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF62)

HIGHLY CONFIDENTIAL

10.     I am being compensated at my standard billing rate of $675 per hour.  My compensation is in no way contingent on the outcome of this case.

**Statement of Opinions**

11.     At trial, I anticipate testifying that the proposed Vineyard House bottles use the words To-Kalon as a brand rather than merely a location, and that consumers who review the product label would understand the use as such.  The basis for my opinion is stated more fully below.

12.     All three of the bottles I have been asked to analyze (Block 5, Block 8, and the cabernet sauvignon bottle without a block designation) are quite similar in label configuration, styling and content.  They present a similar depiction of brand architecture on the fronts of those bottles and very similar (though slightly varied) "brand stories" on the back.  All three include the words "H.W. Crabbe's To-Kalon Vineyard" below their varietal designation (cabernet sauvignon or cabernet franc) and just above the words Oakville and Napa Valley, the geographic location of Plaintiff's commercial operations.



13.     Whether a product is handled physically or viewed on-line, examination of the packaging is understood to be a potentially critical moment of engagement – particularly for products whose complexity and price points invite serious consideration.  (Even routine purchases require pro forma inspection to confirm the product is what a consumer intends to buy.)  And for an artisan product like wine, the package examination process does not necessarily end before the moment of purchase.

                                                                                                 HIGHLY CONFIDENTIAL

Indeed, consumers revisit wine bottle labels in the context of consumption precisely because wines are some of the most complex, varied, and potentially costly consumable products we buy.  In short, wine bottles are less prone to the sort of reflexive label review involved in purchasing pedestrian products like ketchup, and it's fair to assume that purchasers have an appetite for the information on the label, as well as the product itself.

14.     Speaking generally, examination of any packaged goods label by consumers begins at the front-facing label where primary branding (source and product-identifying) elements are invariably placed.  The examination may end there (consummating in a purchase decision), or it may proceed to the back or sides in pursuit of additional detail about ingredients or other information, often casually referred to as "fine print".

15.     Let's "walk" that same cognitive path here from the front to the back of The Vineyard House bottles addressed in this report, in order to understand how the words "To-Kalon Vineyard" are being featured on those bottles and are likely to be interpreted by consumers making inferences about brand source.  All three bottles present several layers of branding information under The Vineyard House umbrella, but both of the block-designated bottles lay down additional layers.  Block 5 makes reference to Crabb's "black burgundy" and Block 8 references The Boss Vineyard.  Despite what some might argue is a cacophony of brand-identifiers competing for salience and attention on these labels, none of it mitigates or muffles the fact that *H.W. Crabb's To-Kalon Vineyard* is serving on each one as a prominent brand designation -- not a description of a generally known or understood location.



16.     There is an implicit and intuitive "syntax" that consumers employ to help them decide whether a term is being used as a trademark (or trademark element) or as a description.  And in that interpretation – just as with interpretation of ordinary language -- context counts.  It has been my experience, gleaned from speaking with very large numbers of consumers and observing them interpret brand signals, that unless words on a label are unambiguously descriptive, there is a tendency for consumer attributions to tilt in the direction of brand.  Once consumers establish what category of product they are looking at (e.g., cheese), what subtype it falls within (cheddar), and what

         HIGHLY CONFIDENTIAL

key ingredients or formulation claims are being made (low sodium), any prominent source-suggestive words on a label which don't qualify as ordinary vernacular will tend to inspire trademark attributions.

17.     To-Kalon Vineyard is not plausibly understood to be a *type* of thing (i.e., *a* "To-Kalon vineyard); nor is it commonly understood to be a geographic designation with defined boundaries that appear on official maps (like tiny Oakville, CA or the Napa Valley). Even wine aficionados cannot be counted to decipher the geographic timeline of this iconic brand. It would take a historian literally pages to track the various parcels that have been attached, partitioned, and reassembled throughout the 125 year-history of what has been *one enduring brand trademark* – even though one might say the ground has literally shifted underneath it.  There is quite literally no "there" there, merely anecdotal history and lore – the grist of branding.  And the act of attaching another possessive name to those words (H.W. Crabb's To-Kalon Vineyard) serves only to underscore for consumers that the usage is meant to signal commercial provenance, not geography or place.

18.     H. W. Crabb's To-Kalon Vineyard presents consumers with a two-layered brand, along the lines of Ruth's Chris Steakhouse.  In that particular (restaurant) context, "steakhouse" is descriptive, but both *Ruth's* and *Chris* are functioning as brand signifiers, and *Ruth's Chris Steakhouse* is the brand. In *the* context of these bottles, the word, "vineyard," is the corresponding descriptive term and both *H.W. Crabb's* and *To-Kalon* can be understood to function as brand signifiers (one nesting within the other).

19.     If we continue our walk to the back side of the bottle, we find three "brand stories" – or snippets of stories, all invoking the To-Kalon Vineyard or To-Kalon Vineyard Company.  As a marketer, I personally find them convoluted and vague, and perhaps that's the point.  Whether or not they leave consumers with a coherent or even accurate impression of the history, their "semiotic" objective is clear:  to tap the reservoir of brand value surrounding To-Kalon.  Unlike Joe's Little Italy, Crabb's To-Kalon Vineyard does not conjure a specific and well-characterized place so much as it conveys a mystique woven from metaphor and skilled brand-storytelling.  At the very moment when the Block 8 bottle defines the ancient Greek words (in effect, calling out the metaphor), consumers are hearing confirmation that those words are being used as a brand.

HIGHLY CONFIDENTIAL



20.     In sum, I believe that the proposed Vineyard House bottles use the words, To-Kalon (adorned by various historical references) as a brand rather than merely a location, and any consumer who troubles to read the label will perceive that.  In the context of ancient cultures, we refer to this symbol-rich storytelling as an origin myth.  In the context of modern branding, we refer to it as marketing strategy.


RESPECTFULLY SUBMITTED,


_____
Susan Schwartz McDonald, Ph.D.

# EXHIBIT A




*President & CEO*



As CEO of **NA**XION, and leader of the firm's Healthcare practice, Susan is a marketing strategist whose areas of expertise include demand forecasting and product optimization, pricing, market segmentation, brand positioning and portfolio strategy.  She is known for her marketing ingenuity and her track record in guiding commercialization of paradigm-changing technologies that require new market models, including some of the industry's most important global brands.  Other sectors in which she has extensive experience include OTC pharmaceuticals and consumer products – both packaged goods and technology-driven categories.

As a respected expert on brand marketing, Susan also directs the Litigation Support practice of **NA**XION.  In that context, she is frequently called upon to conduct surveys and testify as a marketing methodology expert in cases pertaining to trademark confusion, secondary meaning, patent infringement, brand dilution, and deceptive advertising.  The focus of her work in that area is often the process of brand development and the factors promoting strong, distinctive brand identity.

Much of Susan's 35-year marketing career was spent at Booz•Allen & Hamilton, a worldwide management and technology consulting firm, of which she was a Vice President for over five years.  She lectures and writes frequently on marketing issues and market research techniques, and has contributed to medical journals as well as marketing texts.  Susan is also coauthor of a standard text on qualitative research methods, *The Group Depth Interview: Principles and Practice* (Simon & Schuster/Prentice Hall).  Her early professional years were spent as a journalist and a poet, contributing regularly to a number of major magazines and newspapers, including *National Review* and *Harper's*.

Susan is the 2011-2012 Past Chair of the CASRO Board of Directors, the trade association of the US marketing and survey research industry, recently renamed The Insights Association. Currently, she is a trustee of The Wistar Institute, the world's oldest incubator of biomedical discoveries in cancer and immunology, and a member of the Advisory Board to the marketing research program of the Rutgers University Graduate School of Business. She is also President of the Board of the Chamber Orchestra of Philadelphia.

Susan holds M.A. and Ph.D. degrees from the Annenberg School for Communication, University of Pennsylvania, where she was trained in communications theory and social psychology.  Her B.A. was awarded magna cum laude, Phi Beta Kappa, from Smith College.

**SUSAN SCHWARTZ McDONALD**
**TESTIMONY/DEPOSITION ACTIVITY SUMMARY**

<u>The Group Depth Interview:  Principles and Practice</u>, Goldman, A. E., & McDonald, S. S., Prentice-Hall, Inc., Englewood Cliffs, New Jersey, 1987.

"Evaluation of Federally Funded Family-Planning Programs," <u>Program Evaluation at HEW: Research Versus Reality</u> (265-310) Henry, Nicholas, Marcel Dekker, Inc., New York, Basel, 1979.

*Market Segmentation*, <u>Handbook of Business Strategy</u> (second edition), Glass, Harold E., Editor, Warren Gorham & Lamont, Boston, Massachusetts, January 1991.

ARTICLES, PAPERS AND SPEECHES

*Strategies of Segmentation Research*, Proceedings of the Tenth Attitude Research Conference, Goldman, A. E., & McDonald, S. S., <u>American Marketing Association</u>, 30-42, 1979.

*The Psychology of Consumer Promotions*, presented at the meeting of the Promotion Marketing Association of America, Inc., New York, NY, March 1982.

*Targeting and Research Development:  Matching New Products and New Solutions*, Product Development and Management Association, Minneapolis, MN, March 1982.

*Practices, Strategies, and Motivations in Treatment of Rheumatoid Arthritis*, Goldman, A. E., & McDonald, S. S., <u>The American Journal of Medicine</u>, December 1983.

*Position and Forecasting for New Medical Products:  The Application of Segmentation and Conjoint Analyses*, The Joint Meeting of the Pharmaceutical and the Medical Surgical Marketing Research Groups, Chicago, IL, October 1985.

*The Case Against Peer Influence Groups*, <u>Medical Marketing and Media</u>, 23, 13, 4-8, October 1988.

*An Introduction to Market Segmentation*, International Association of Business Communications, Harrisburg Chapter, November 1988.

*Successful Needs/Benefits Segmentation:  A User's Guide*, <u>The Journal of Consumer Marketing</u>, Greenberg, M. G., and McDonald, S. S., 6, 29-36, Summer 1989.

*Brand Equity:  Working Toward a Disciplined Methodology for Measurement*, Advertising Research Foundation, New York, NY, January 1990.

*Getting Your Client to 'Buy Into' Marketing Research*, Pharmaceutical Market Research Group Meeting, Spring 1990, Philadelphia, PA.

*Continued …*

MARKETING PUBLICATIONS                                                         SUSAN SCHWARTZ MCDONALD
TESTIMONY/DEPOSITION ACTIVITY SUMMARY

*The Morning After:  Market Research Problems and How to Avoid Them*, Pharmaceutical Market Research Group Developmental Seminar, Fairfield, New Jersey, June 1990.

*Contamination in Qualitative Research*, presented at the 47th Annual Conference of the American Association for Public Opinion Research, St. Petersburg, Florida, May 1992.

*Multivariate Techniques*, Pharmaceutical Market Research Group, Developmental Seminar: Quantitative Research - Design and Analysis, Philadelphia, PA, June 1992.

*Making Optimal Use of Your Sales and Marketing Levers,* presented at the Institute for International Research conference on "Marketing and Sales Force Reengineering," Philadelphia, PA, September 1994.

*Another Look at Managed Care:  Reassessing Their Priorities ... and Ours,* presented at the Pharmaceutical Marketing Research Group Meeting on "Redesigning Marketing Research in a Restructured Environment," Philadelphia, PA, April 30 - May 3, 1995.

*How to Design and Implement Successful Pricing Research:  Counsel and Caveats from the Trenches,* presented at the Professional Pricing Society, 6th Annual Pricing Conference, Chicago, IL, October 1995; reprinted in The Journal of Professional Pricing, 13, 3, 2004.

*Charting the New Product Development Course:  A Market Research Case Study Workshop*, conducted at the Institute for International Research's 2nd Annual Pharmaceutical Marketing Research Roundtable, Philadelphia, PA, November 1996.

*The Positioning Research Ritual:  When Not to Bother At All,* presented at the Pharmaceutical Marketing Research Group Fall '98 Meeting, Baltimore, MD, September 1998.

*Project Conception:  Questioning Your Client/Designing the Study*, presented at the CASRO Advanced Project Directors Training Conference, Philadelphia, PA, September 14, 2000.

*Transforming Market Strategy into Marketing Action:  An Overview of Primary Research Techniques*, presented at the Healthcare Marketing & Communications Council Account Service Development Program, New York, NY, November 2001.

*The Positioning Paradox:  When Words Hold Ideas Captive,* presented at the Pharmaceutical Marketing Research Group Fall '02 Meeting, Tysons Corner, VA, October 2002.

*The Long and Winding Road:  Market Research in Support of Creative Concept Development*, presented at the Healthcare Marketing & Communications Council Account Service Development Program, New York, NY, October 2004 and May 2007.

*Continued …*

MARKETING PUBLICATIONS                                           SUSAN SCHWARTZ MCDONALD
TESTIMONY/DEPOSITION ACTIVITY SUMMARY


*Taking Care of Business:  Defending Pharmaceutical Market Research against the Perils of Industry Regulation,* presented at the Pharmaceutical Marketing Research Group 2006 Spring Conference, Las Vegas, NV, March 5-7, 2006.

*AE Reporting in the Market Research Industry:  An Update on the Still-Gathering Storm,* presented at the Pharmaceutical Marketing Research Group Fall 2006 Conference, Baltimore, MD, September 10-12, 2006.

*A "Brief History of Time" in the Pharmaceutical Industry … And a Quick Peek into the Future,* presented at the Market Research Association Philadelphia Chapter Meeting, Philadelphia, PA, May 2007.

*Improving Survey Efficiency:  Understanding the Relationships Among Standard Measures of Concept Evaluations,* Polster, M., McDonald, S. & Boldry, J., poster presented at 2009 PBIRG Annual General Meeting, Phoenix, AZ, May 17-20, 2009.

*Evaluation of GLP-1 Product Attributes in Treating People with Type 2 Diabetes in US:  Comparing Time Trade-off and Willingness to Pay Methodologies,* Zanutto, E., Conner, C., Polster, M., McDonald, S. & Hammer, M, poster presented at ISPOR 14th Annual Meeting, Orlando, FL, May 18, 2009.

*Reinventing the Market Research Function:  In a Disruptive Era of Change, Old-fashioned Intuition Still Counts,* McDonald, S. and Sharma, S., <u>Pharmaceutical Executive,</u> January 2010.

*Assessing Drug Treatment Preferences of Patients with Crohn's Disease:  A Conjoint Analysis,* Lichtenstein, G.R., Waters, H., Kelly, J., McDonald, S., Zanutto, E, Hendricks, D. and Rahman, M*.* <u>The Patient:  Patient-Centered Outcomes Research</u>, 2010.

*Much not Understood about Physicians, and Even Less about Patients and MCOs,* <u>Pharma Market Research Report</u>, February 2010.

*The True Importance of Derived Importance for In-line Pharmaceutical Products:  Putting a Valuable Tool into Context,* Polster, M., and McDonald, S., in PBIRG's Perspective, Vol. 12 No. 1.

*When a Single Measure Is Sufficient:  Optimizing Survey Efficiency in Concept Evaluation Research,* Boldry, J., Polster, M. & McDonald, S., poster presented at 2010 AAPOR Conference, Chicago, IL, May 13-16, 2010.

*Understanding and Surviving the Regulatory Environment:  A 'State of the Union' Perspective,* Pharmaceutical Marketing Research Group Webinar, May 20, 2010.

*Continued …*

MARKETING PUBLICATIONS                                          SUSAN SCHWARTZ McDONALD
TESTIMONY/DEPOSITION ACTIVITY SUMMARY

*A Comparison of Preferences for Two GLP-1 Products – Liraglutide and Exenatide – for the Treatment of Type 2 Diabetes,* Polster, M., Zanutto, E., McDonald, S., Conner, C. & Hammer, M., Journal of Medical Economics, 2010 13(4):655-661.

*MD Attitude Segmentation:  Can You Ever Get There from Here?*  Presented at the PharMArket Research Conference, Parsippany, NJ, February 2011.

*The Quantum Mechanics of Brand: What You See – and Don't See – with Derived Importance Analysis*. Polster, M. and McDonald, S. April 2011.

*The Art of the Ask in Forecast Modeling: Implications of 'Allocation' vs. 'Discrete Choice' Projections.* Polster, M. and McDonald, S. January, 2012.

*DTC ROI:  When We Advertise to Consumers, What Do They Hear?*  Presented at the PharMArket Research Conference, Parsippany, NJ, February 2012.

*The Impact of Nausea and Vomiting of Pregnancy on Quality of Life:  Report of a National Consumer Survey and Recommendations for Improving Care,* Clark, S., Hughes, B., and McDonald, S., Obstetrical and Gynecological Survey, September 2013, Vol. 68, No. 9, Supplement 1:S1-S10.

*The End of Pharma Marketing – or a New Beginning?*  Sharma, S., and McDonald, S., Pharmaceutical Executive, February 2015.

*Using Data to Make Decisions:  Ten Things I've Learned in 35 Years.*  Presented at the MSMR Alumni Market Research Conference, Arlington, TX, April 2015.

*When Size Matters … And What You Can Do About It:  Mapping the Dark Frontiers of 'Small Data' Modeling.*  Presented at the EphMRA Annual Conference, Frankfurt, Germany, June 2016.

*The 'Art of the Ask' in Choice Modeling:  Discrete Choice vs Allocation.*  Presented at the EphMRA Annual Conference, Frankfurt, Germany, June 2016.

*New PhRMA Campaign 'Goes Boldly' But Treads Unevenly.* May 2017.

*Ten New Year's Resolutions for Using Data to Make Marketing Decisions.* January 2018.

*Is Market Research Really Getting Emotional? Discovering What Implicit Metrics Actually Measure.* July 2018

*Continued …*

MARKETING PUBLICATIONS											SUSAN SCHWARTZ MCDONALD
TESTIMONY/DEPOSITION ACTIVITY SUMMARY

Serenity Pharmaceuticals, LLC, et al., Counterclaim-Plaintiffs v. Ferring B.V., et al., Counterclaim Defendants
U.S. District Court for the Southern District of New York
C.A. No. 1:17-cv-09922 (RWS), ECF Case
*Deposition on behalf of Counterclaim-Plaintiffs* (November 27, 2018)

J-B Weld Company, LLC, Plaintiff v. The Gorilla Glue Company, Defendant
U.S. District Court for the Northern District of Georgia
Atlanta Division
Case No.  17-CV-03946-LMM
*Deposition on behalf of Plaintiff (July 10, 2018)*

Forever 21, Inc., Plaintiff v. Gucci America, Inc., et al., Defendants
U.S. District Court of California, Western Division
Case No.  2:17-cv-04706-FMO-E
*Deposition on behalf of Defendants (June 28, 2018, New York)*

MARS, Incorporated, et al., Plaintiffs v. The J.M. Smucker Company, et al., Defendants
U.S. District Court for the Eastern District of Virginia Alexandria Division
No. 1:16-cv-1451 (CMH/MSN)
*Deposition on behalf of Defendants (July 12, 2017, Philadelphia)*

Adidas America, Inc., et al., Plaintiffs v. TRB Acquisitions, LLC, et al., Defendants
U.S. District Court, District of Oregon Portland Division
No. 3:15-cv-02113-SI
*Deposition on behalf of Defendants (May 31, 2017, Philadelphia)*

Pinterest, Inc., Plaintiff v. Pintrips, Inc., Defendant
U.S. District Court for the Northern District of California
No. CV 113-04608-PS-KAW
*Deposition on behalf of Defendant (January 14, 2015, Philadelphia)*
*Testimony on behalf of Defendant (May 26, 2015, San Francisco)*

In the Matter of Investigation:  Certain Footwear Products
U.S. International Trade Commission
No. 337-TA-936
*Deposition (May 21, 2015, Washington, DC)*

HM Electronics, Inc., Plaintiff v. R.F. Technologies, Inc., Defendant
U.S. District Court, Southern District of California
No. CV12-2884-BAS (MDD)
*Deposition on behalf of Defendant (November 24, 2014, Philadelphia)*

*Continued …*

OraLabs, Inc., Plaintiff v. The Kind Group LLC, Defendant
U.S. District Court for the District of Colorado
Civil Action No. 1:13-cv-00170-PAB-KLM
*Deposition on behalf of Defendant (July 24, 2014, Philadelphia)*

Healthcare Royalty Partners, L.P. (f/k/a Cowen Healthcare Royalty Partners, L.P.), Plaintiff v. Shionogi Inc., LLC, Defendant
Supreme Court of the State of New York, New York County
Index No. 650424/2012
*Deposition on behalf of Plaintiff (June 18, 2014, New York)*

Zest IP Holdings; Zest Anchors, LLC, Plaintiffs v. Implant Direct Mfg., LLC; Implant Direct LLC; Implant Direct International, Defendants
U.S. District Court, Southern District of California
No. 10-0541 LAB (WVG)
*Deposition on behalf of Plaintiffs (June 3, 2014, Chicago)*

T-Mobile US, Inc., T-Mobile USA, Inc. and Deutsche Telekom AG, Plaintiffs v. Aio Wireless LLC, Defendant
U.S. District Court for the Southern District of Texas, Houston Division
Civil Action No. 4:13-cv-2478
*Deposition on behalf of Plaintiffs (October 21, 2013, Philadelphia)*