BUCHALTER
A Professional Corporation
JEFFREY M. JUDD (SBN: 136358)
PETER H. BALES (SBN: 251345)
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax:         (415) 227-0770
Email:
          jjudd@buchalter.com
          pbales@buchalter.com

Attorneys for Plaintiff and Consolidated Case Defendant
THE VINEYARD HOUSE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - OAKLAND**

| | |
|---|---|
| THE VINEYARD HOUSE,<br><br>    Plaintiff and Consolidated Case Defendant,<br><br>vs.<br><br>CONSTELLATION BRANDS U.S. OPERATIONS, INC.,<br><br>    Defendant and Consolidated Case Plaintiff. | CASE NO. 4:19-cv-1424-YGR<br><br>**TVH'S OPPOSITION TO DEFENDANT'S DAUBERT MOTION TO EXCLUDE SURVEY TESTIMONY OF MATTHEW EZELL** |

Plaintiff The Vineyard House, LLC ("TVH") respectfully submits this memorandum in opposition (the "Opposition") to the Motion to Exclude Testimony of Matthew Ezell (the "Motion") filed by Defendant Constellation Brands U.S. Operations, Inc. ("CBUSO").

## I. TVH'S SURVEY EVIDENCE SHOWING THE LACK OF CONFUSION IS DIRECTLY RELEVANT AND THE DAUBERT MOTION SHOULD BE DENIED

It is axiomatic that the pleadings define what is relevant in an action. In its Complaint, CBUSO repeatedly averred that TVH's use of the alleged trademark was likely to cause consumers of premium wines to believe that Constellation was the source of TVH's wine, to take advantage of Constellation's superior market position and reap the reward of the goodwill associated with Constellation's trademark. It was only after TVH submitted a consumer confusion survey showing that consumer of premiums wines are not at all likely to be confused about the source of TVH's wines that CBUSO articulated a new theory of infringement – that the confusion at issue in this action is instead the source of the grapes used to make TVH's wines. CBUSO's new "ingredients confusion" theory is neither mentioned nor implied in the Complaint, and CBUSO has not cited any authority or commentary suggesting that such a theory can constitute infringement, a cause that by definition is focused on product source and origin.

Moreover, CBUSO has acknowledge that to prevail on its trademark infringement claim, CBUSO must carry the burden of proof at trial to show, among other elements, that TVH's use of any To Kalon trademark is likely to cause confusion as to who makes or puts out the wine, *i.e.* confusion between the two products or companies, not where the grapes are grown. *See* Dkt. 1 (CBUSO's Complaint in 3:20-cv-00238) at ¶ 64 (Alleging that consumers of TVH wine are likely to be confused that TVH wine products, not grapes, are "***authorized, endorsed, sponsored or approved by Constellation***" or "***connected with, or are associated with Constellation***.") and Dkt. 98 ("Joint Statement of Claims and Defenses") at p. 7 ("TVH shall be liable for infringement under 15 U.S.C. § 1114 for using the To Kalon marks if: […] "3. Such use was in a manner likely to cause confusion among ordinary consumers as to the **source, sponsorship, affiliation, or approval of <u>such wine</u>**.") (Emphasis added).

Federal courts routinely admit surveys, especially the Eveready survey format used by

TVH's expert in trademark cases to measure the likelihood of consumer confusion.[1] TVH's survey expert, Matthew G. Ezell, designed a survey that tests the allegations in CBUSO's Complaint, namely, "to measure the degree, if any to which TVH's use of 'To-Kalon' as a vineyard designation is likely to cause confusion as to the source, authorization or approval of, or business affiliation or business connection with [CBUSO]."  Ezell Report, ¶ 2.  The survey presented the alleged infringing TVH product to likely consumers of premium wine and asked relevant questions (*e.g.*, "Who, or what company, do you believe makes or puts out this wine?"). *Id.* at ¶ 18.  The responses to the survey establish there is no likelihood of confusion and that CBUSO's infringement allegations are without merit.  *Id.* at ¶ 24.

The usual procedure for attempting to challenge a survey is to conduct a rebuttal survey and present those results as a battle of the experts, not a *Daubert* motion, especially for a bench trial.[2]  CBUSO had every opportunity to design its own survey with whatever questions it now contends TVH's expert should have asked.  One may reasonably infer that ***CBUSO did not conduct any confusion survey because it predicted the results would be unfavaorble, or CBUSO conducted a survey and did not like the results***.[3]

Instead of proffering its own survey, CBUSO asks the Court to exclude TVH's survey on relevancy grounds, arguing that TVH's expert should have asked more and different questions, questions that are wholly unrelated to the allegations in CBUSO's Complaint.  Specifically, CBUSO contends the Mr. Ezell should have asked whether the TVH label "provided any information as to the source of the grapes…."  McDonald Rebuttal Report, ¶ 25.  If CBUSO

---

[1] *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997) ("However, 'as long as they are conducted according to accepted principles,' … survey evidence should ordinarily be found sufficiently reliable under *Daubert*.); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("We have long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'"); and *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999) ("Surveys are … routinely admitted in trademark and false advertising cases …."). 
[2] *See* 6 McCarthy on Trademarks and Unfair Competition § 32:158 (5th ed. 2020) § 32:158 ("Introduction to survey evidence).
[3] CBUSO's failure to present its own survey warrants a presumption that the results would have been unfavorable. *See Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948, at *15 (N.D. Cal. 2007) ("[the plaintiff's] failure to submit its own survey may support an inference that [the plaintiff] predicted that the results of such a survey would be unfavorable."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, 2015 WL 9266497, at *4 (N.D. 2015) ("a trier of fact may be entitled to presume that one party's failure to conduct a survey concedes that the survey evidence would be unfavorable to it.").

contends the sole issue in its case is whether TVH is attempting to confuse consumers into thinking that the grapes in TVH's wines were grown on property owned by CBUSO, it should have so stated in its Complaint. It did not. It is axiomatic that the allegations in the Complaint define the nature and scope of the action and establish scope of relevancy for the survey. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.") CBUSO's Complaint repeatedly refers to TVH's alleged efforts to associate itself and TVH's wines with CBUSO and CBUSO's wines, not CBUSO's grapes or where those grapes are grown.

While CBUSO's *Motion* mentions grapes or sources of grapes repeatedly, its pending claim for trademark infringement – which determines what is relevant for the survey – **never mentions grapes or source of grapes once**. *See* Compl., ¶¶ 60-69. Instead, CBUSO's infringement claim alleges that "Constellation's TO KALON Marks are **source identifiers for Constellation**" -- NOT Constellation's grapes; that TVH's alleged use of the To Kalon Marks is likely to cause confusion and to cause consumers to believe that "TVH is Constellation" and that TVH's wine products are "authorized, endorsed, sponsored or approved by Constellation" or "associated with Constellation." *Id.* at ¶ 64. There is no basis for excluding a survey that was designed to test the allegations actually stated in the operative pleadings. *Accord* McDonald Rebuttal Report at ¶ 22 ("Lanham Act questions must be couture-cut to the legal and marketing problems facing the Court"). TVH tested the allegations CBUSO pleaded for its infringement claim and found no confusion.

## II. LIKELIHOOD OF CONFUSION REQUIRES CONFUSION ABOUT WHO MAKES OR PRODUCES THE WINE, NOT WHERE THE GRAPES COME FROM

"[A] trademark is anything that serves to indicate the source of one company's goods and to distinguish them from the goods of others. It 'is merely a convenient means for facilitating the protection of one's good-will in trade by placing a distinguishing mark or symbol—a commercial signature—upon the merchandise or the package in which it is sold.'" *Stark v. Diageo Chateau*

*& Estate Wines Co.*, 907 F. Supp. 2d 1042, 1050 (N.D. Cal. 2012); *citing United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 98, 39 S.Ct. 48, 63 L.Ed. 141 (1918).

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as **to the origin or source of the goods** or services bearing one of the marks or names at issue in the case": TVH has been unable to locate any authority supporting CBUSO's theory that the To Kalon marks pertain to the source of the ingredients of the goods at issue. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012); *Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1173 (9th Cir.2007) ("The core element of trademark infringement is whether customers are likely to be confused about **the source or sponsorship of the products**.") (emphasis added).[4]  "[T]he classic type of source confusion [is] 'forward confusion,' where customers 'want to buy the senior user's product and because of the similarity of marks, mistakenly buy the junior user's product instead' and the junior user thus trades on the goodwill of the senior user." *United Tactical Sys., LLC v. Real Action Paintball*, Inc., 2014 WL 6788310, at *10 (N.D. Cal. 2014); *citing SunEarth, Inc. v. Sun Earth Solar Power Co.*, 2013 WL 4528539, at *13 (N.D. Cal. 2013) *amended in part*, 2013 WL 6157208 (N.D. Cal. 2013); *see also Nat'l Distillers Prod. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 480 (S.D.N.Y. 2002) ("Specifically, [the plaintiff] had to show a likelihood that consumers would mistakenly believe that the [the defendant's] vodka cooler product emanated from the producers of [the plaintiff's product]".).

"The central issue in a trademark action is whether consumers 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.'" *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d at 1053; *citing Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir.1987) (*quoting Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir.1983)); and

---

[4] *See also* In *re Box Solutions Corp.*, 79 U.S.P.Q.2d 1953, 2006 WL 1546499 (T.T.A.B. 2006) ("The question is not whether purchasers can differentiate the goods themselves, but rather whether purchasers are likely to confuse the source of the goods."); *In re Davia*, 110 U.S.P.Q.2d 1810, 1818, 2014 WL 2531200 (T.T.A.B. 2014) ("The issue is not whether shoppers will confuse applicant's CHANTICO pepper sauce and the prior registration's CHANTICO agave sweetener. The issue is not product confusion, but is whether there is likely confusion as to source or affiliation.").

*Official Airline Guides v. Goss*, 6 F.3d 1385, 1391 (9th Cir.1993) (issue can be recast as whether "the similarity of the marks is likely to confuse customers about **the source of the products**.") (Emphasis added). The issue is not whether the customers are likely to be confused about the source of the ingredients. CBUSO has never alleged that theory and cites no case law that supports it. Following a diligent search, to TVH's best knowledge no authority supports the theory of consumer confusion that CBUSO's marketing expert advocates.

Instead, CBUSO's typical "trademark claim rests on the notion that consumers could be more inclined to do business with [TVH] because they mistakenly believe that its [wine products] are sponsored by or affiliated with [CBUSO]." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d at 1209; and Compl., at ¶ 64. In other words, CBUSO must prove likelihood of confusion as to the wine products or company that made the wine products, not the source of the grapes used to make the wine products. *Id.* The traditional theory of trademark infringement articulated in the *Rearden*, *Perfumebay.com Inc.* and *Stark* cases is repeatedly stated in CBUSO's Complaint, in pertinent part, as follows:

- . . . TVH has begun to sell and ship wine bearing the TO KALON Marks, which **unauthorized use will create an association between Constellation and Constellation's TO KALON Marks and wine, on the one hand, and TVH and TVH's wine**, on the other hand." Compl. ¶ 4 (emphasis added).

- …Robert Mondavi Winery adopted the name **"TO KALON" as a label name** and trademark Compl. ¶ 14 (emphasis added).

- . . . **Constellation's TO KALON Marks are strong source identifiers** in the marketplace for Constellation's TO KALON brand wines and have garnered significant goodwill. Compl. ¶ 18 (emphasis added).

- . . . **TVH has begun to use TO KALON as a brand for its products**, and thereby benefit from the goodwill that Constellation's TO KALON Marks represent.") Compl. ¶ 31 (emphasis added).

- . . . Nickel's modus operandi of lending prestige to his own winery by *falsely associating TVH with more established and more prestigious neighboring wineries*. Compl. ¶ 32 (emphasis added).

- . . . TVH now seeks to use Constellations TO KALON Marks in order *to create a false association between TVH's winery and wines and Constellation's TO KALON Marks and wine.* Compl. ¶ 37 (emphasis added).

- . . . TVH . . . intends to *improperly associate his wine* with Robert Mondavi Winery and its *famous TO KALON wines*. Compl. ¶ 40 (emphasis added);

- TVH is intentionally infringing upon Constellation's TO KALON Marks to create an association between Constellation/Robert Mondavi Winery and Constellation's TO KALON Marks and TVH's wine – **a connection which does not exist**. Compl. ¶ 50 (emphasis added).

- TVH's Infringing Products are directed toward the same consumer as Constellation's TO KALON brand wines, namely, ***consumers seeking premium wines***. Compl. ¶ 57 (emphasis added).

Mr. Ezell designed his consumer confusion survey by first looking at the allegations in the operative Complaint. With CBUSO's specific allegations as a primary guide, Mr. Ezell asked a series of questions to determine whether prospective consumers of TVH wines would be confused about the source of TVH's wine. When a consumer confusion survey directly addresses the allegations stated in a complaint, the complainant should not be allowed to move the goalposts on the brink of trial by claiming in a *Daubert* motion that the truly relevant question must address matters completely absent from the allegations in the Complaint. CBUSO has not alleged in its Complaint that the TVH label causes consumers to be confused "as to the source of the grapes" used to make TVH's wines, as opposed to confusion about the source of the wines themselves, as the Complaint alleges. Mr. Ezell's survey, designed and accomplished in accordance with generally accepted consumer survey methods, tested the fundamental allegation in CBUSO's infringement Complaint – that is, the relevant issue in the infringement action - that TVH is seeking to associate its wines with CBUSO's wines.

### III. THE EVEREADY SURVEY IS THE APPROPRIATE SURVEY METHOD

"The Eveready survey format is widely regarded as an appropriate method of testing for likelihood of confusion." 6 McCarthy on Trademarks and Unfair Competition, § 32:174 (5th ed. June 2020) (hereafter "McCarthy on Trademarks"); *citing*, among other circuits, other cases, *E. & J. Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q.2d 1657, 1674, 1989 WL 159628 (E.D. Cal. 1989), *aff'd*, 967 F.2d 1280, 1292–1293 (9th Cir. 1992) (proper to admit and rely upon Eveready survey to find infringement); *E & J Gallo v. Proximo Spirits, Inc.*, 103 U.S.P.Q.2d 1640, 2012 WL 273076, *5 (E.D. Cal. 2012), s*ubsequent determination*, 103 U.S.P.Q.2d 1656, 2012 WL 273077 (E.D. Cal. 2012), *aff'd*, 583 Fed. Appx. 632 (9th Cir. 2014) (Eveready-type survey "highly probative" of an absence of likely confusion. On summary judgment, no likelihood of

confusion found.); *VIP Products, LLC v. Jack Daniel's Properties, Inc.*, 291 F. Supp. 3d 891, 908 (D. Ariz. 2018) (The Eveready format is "the prevailing standard for trademark survey research in cases involving strong marks."). "In cases involving strong marks, the Eveready test should be considered the gold standard for fundamental cognitive and marketing reasons." McCarthy on Trademarks, § 32:174 (citations omitted).[5]

To prove that consumers were likely to confuse the source of the defendant's product with the plaintiff's products, the Eveready plaintiff introduced the results of a survey that showed the alleged infringing product and asked "who do you think puts out the [product] shown here?" *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976). This same Eveready format or a similar version of it has been applied to a number of cases involving trademarks in the alcoholic beverage industry.

In *E & J Gallo v. Proximo Spirits, Inc.*, 2012 WL 273076, at *4–5, the Court found the following Eveready survey, which is very similar to Mr. Ezell's survey, "highly probative of likelihood of confusion or the absence thereof":

> [The defendant's survey expert] conducted a likelihood of confusion survey using the survey format endorsed in the case of *Union Carbide Corp. v. Ever–Ready, Inc.*, 531 F.2d 366 (7th Cir.1976) ("Everready survey"). Under [the expert's] direction, interviewers showed 216 qualified respondents in the test cell a bottle of [defendant's] Tequila and then asked the following questions, among others: (1) "Who, or what company, do you believe puts out this product?"; (2) "What other brand or brands, if any, do you believe are put out by the company that puts out this product?"; (3) "Do you believe that this product ... is being put out with the authorization or approval of any other company or companies?"; and (4) "Do you believe that the company that puts out this product ... has a business affiliation or business connection with any other company or companies?" These questions were following by further probing questions, e.g. "Why do you say that?"

In *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1016 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019), District Judge Orrick presided over a bench trial of

---

[5] CBUSO alleges that its "TO KALON Marks are **strong source identifiers** in the marketplace for Constellation's TO KALON brand wines…" Compl., ¶ 18; *see also* Dr. McDonald Rebuttal Report at ¶ 19 ("I do not specifically object to that decision" to use the Eveready format.")

Sazerac's trademark and trade dress infringement case against Fetzer Vineyards. Sazerac claimed that Fetzer's 1000 Stories red zinfandel wine infringed Sazerac's Buffalo Trace bourbon trademark. The Court found "[t]here was no evidence of actual confusion between the products." *Id.* at 1016 ("Fetzer's expert's analysis using a modified Eveready survey was far superior to the two room survey employed by Sazerac's expert. The primary point of alleged confusion, the buffalo depicted on each label, is used on numerous other alcoholic beverages"). The Court found that the defendant's expert's survey, similar to Mr. Ezell's survey here, was "entitled to great weight" to show lack of confusion:

> [The defendant's expert] used a modified "Eveready" approach. Under the Eveready format, the appropriate universe is selected, exposed to the allegedly infringing product, and then asked a series of questions to determine whether the allegedly infringing product creates any confusion. […]
>
> After the respondents were shown the array of products (including both the 1000 Stories/Control bottle and Buffalo Trace bourbon), the "survey continued with the standard Eveready survey questions" that "are routinely asked when the Eveready survey format is used." [Citation to evidence omitted].
>
> [The expert's] survey specifically tested whether consumers might believe there was some affiliation or sponsorship between 1000 Stories wine and Buffalo Trace bourbon. [Citation to evidence omitted]. It revealed that there is "absolutely no confusion" between 1000 Stories wine and Buffalo Trace bourbon.

*Id.* at 1027-28.

*Nat'l Distillers Prod. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474 (S.D.N.Y. 2002) involved a vodka product trademark. The defendant's expert in that case completed an Eveready survey to show a lack of likelihood of confusion as to the source of the beverages and asked questions similar to those that Mr. Ezell asked in this case:

> "[S]ubjects were asked a series of questions, to wit: "What company or companies do you think makes or puts out this product?," "Whether you know the name of the company that makes this product, are you aware of any other products or brands put out by this company?," if yes, then, "What other products or brands do you think are put out by the company that makes this product?," and "If you have an opinion, do you think that the company that makes this product did or did not get approval or permission from any other company or companies in order to put out this product?" Not a single

respondent out of the approximately 300 interviewed associated either [of the alleged infringing products] with [plaintiff's product].

As Mr. Ezell explained, [t]he sample selection, questions, questionnaire design, and interviewing procedures employed in this survey were designed in accordance with standards and procedures generally accepted in the field of surveys. The survey was also designed to meet the criteria for survey trustworthiness detailed in the *Manuel for Complex Litigation, Fourth*." Ezell Report, ¶ 9.

## IV. THE RELEVANT QUESTIONS ARE FRAMED BY CBUSO'S ALLEGATIONS

CBUSO's Complaint defines the scope of relevancy in this action. From that basis, CBUSO's recently filed *Daubert* motion and the arguments of Dr. McDonald, CBUSO's rebuttal expert, have little – if any – force or effect. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); *see also In re Flash Memory Antitrust Litig.*, 2008 WL 62278, at *5 (N.D. Cal. Jan. 4, 2008) ("It should also be noted that Rule 26(b)'s phrase 'relevant to any party's claim or defense" clearly ties discovery to the parties' pleadings."); *A.G v. Oregon Dep't of Human Servs. (DHS)*, 2015 WL 1548919, at *1 (D. Or. 2015) (complaint and answer "establish the scope of discovery" and relevance).

TVH's counsel and its expert, Mr. Ezell, relied on the allegations of CBUSO's Complaint, filed January 10, 2020 to design the survey to rebut any claim of likelihood of confusion. CBUSO's Motion at p. 4:5-7 ("Because Mr. Ezell **prepared his study design way back in January**, *see, e.g.*, Ezell Rep., p. A-2, his misunderstanding of the issues was likely shaped by Plaintiff's counsel…"). There was no "misunderstanding" of CBUSO's allegations or the issues defined by its Complaint, that is, until CBUSO filed this *Daubert* motion, in an attempt to deflect the impact of Mr. Ezell's survey by diverting the Court's attention to issues outside the operative Complaint, based on a theory of infringement that is unsupported by any authority or commentary.[6]

---

[6] CBUSO has not cited, and TVH's extensive legal research has failed to identify any authority or commentary that supports the "ingredients" theory of infringement.

CBUSO alleges that "Constellation's TO KALON Marks are "strong source identifiers" for Constellation, because consumers associate Constellation/Robert Mondavi Winery as *the exclusive source of Constellation TO KALON brand wine*." Compl., ¶ 62 (emphasis added). CBUSO further alleges that the "TO KALON Marks are *strong source identifiers* in the marketplace *for Constellation's TO KALON brand wines* and have garnered significant goodwill." *Id.* at 18 (emphasis added); *compare with* CBUSO's Motion at 2:12-15 (arguing that the source of the grapes, not the source of the product, "is the goodwill upon which Plaintiff is trading.").

CBUSO thus states its Complaint in terms of confusion about the source "for Constellation's TO KALON brand *wines*" – NOT the source of grapes used to make the wine. *Compare* ¶ 64 ("TVH's *wine* is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that *TVH is Constellation*, and/or that TVH is a *licensee, authorized distributor, or affiliate of Constellation* […] and/or its *Infringing Products are authorized, endorsed, sponsored or approved by Constellation*, and/or that […] its *Infringing Products, are connected with, or are associated with Constellation*."); *with* CBUSO's Motion at p. 4:3-4 and 4:24 ("But that sort of 'who makes this' confusion is not what this case is about." […] This case is about "ingredient confusion.").[7]

As stated in its Complaint, CBUSO's "trademark claim rests on the notion that consumers could be more inclined to do business with [TVH] because they mistakenly believe that its [wine products] are sponsored by or affiliated with [CBUSO]." *Rearden LLC* v. *Rearden Commerce*, Inc., 683 F.3d at 1209. In other words, CBUSO must prove likelihood of confusion as to who makes or puts out the wine products, not the source of the grapes used to make the wine products.

When viewed through the lens of the Complaint it is clear that Mr. Ezell's consumer

---

[7] CBUSO's rebuttal expert Dr. McDonald, who chose not to conduct any survey whatsoever, argues that this case is "not about the source of the wine in the bottle but the source of the ingredients used to make the wine in the bottle." That Dr. McDonald does not cite CBUSO's Complaint as one of the "Documents and Materials [She] Relied Upon" is telling. *See* McDonald Rebuttal Report at ¶ 14. Had Dr. McDonald read the Complaint, she presumably would have realized the "ingredient confusion" theory is neither stated nor implied anywhere in the pleading. More importantly, TVH is not aware of any case law that has ever adopted this "ingredient confusion" test and CBUSO has cited no such cases – or any authority supporting that theory – in its Motion.

survey addresses directly CBUSO's actual allegations.[8] CBUSO's late efforts to cast this case as one about "*ingredient* confusion" must be rejected, because the Complaint makes no such allegation, no matter what CBUSO's marketing expert may argue. Dr. McDonald contends that "[t]o understand whether the bottle creates that kind of source confusion, Mr. Ezell needed to ask other questions." Dr. McDonald fails to explain why CBUSO did not have her conduct such a survey that asks such questions. A likely explanation may be that the "ingredient confusion" theory did not occur to CBUSO at the time it filed the Complaint. Perhaps the more likely explanation is that Constellation *did* ask those questions, but found the answers supported the conclusion that there is no confusion here. In either case, that Constellation has developed no consumer survey evidence for this trial supports an inference that such a survey would be unfavorable to CBUSO's infringement claim. *See Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948, at *15 (N.D. Cal. 2007) ("[plaintiff's] failure to submit its own survey may support an inference that [plaintiff] predicted that the results of such a survey would be unfavorable."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, 2015 WL 9266497, at *4 (N.D. Cal. 2015) ("a trier of fact may be entitled to presume that one party's failure to conduct a survey concedes that the survey evidence would be unfavorable to it."). While not dispositive, that TVH has sponsored a consumer confusion survey that shows the absence of confusion while CBUSO has failed to proffer a consumer survey showing confusion on *any* theory is strong evidence of no

---

[8] Although not at issue in the motion, Dr. McDonald also argues in her Rebuttal Report that Mr. Ezell questioned the incorrect universe of potential customers by focusing on people who had purchased a bottle of wine within the previous year that cost $100 or more, and who planned in the upcoming year to do the same. *See* Ezell Report at ¶ 13-14. According to Dr. McDonald, Mr. Ezell's survey should have studied consumers who had a demonstrated a repeat practice of buying wine costing at least $200 a bottle. McDonald Rebuttal Report at ¶ 30. Yet again, the Complaint and CBUSO say otherwise: CBUSO defines the relevant consumer population as "consumers seeking premium wines." Comp., Par. 57 (at 12:23-24). CBUSO itself defines "Luxury" wines as any wine that costs greater than $20 a bottle. *See* Seethoff Dep. Tr., (Bales Declaration, Ex. A) at 13:13-14:3 (testifying as 30(b)(6) witness on CBUSO's behalf). Master of Wine/Master Sommelier Doug Frost (one of TVH's testifying experts) has stated the opinion that "consumers of high-end wines (frequently referred to as 'ultra-premium' and 'luxury-premium' wines), which range in price from $100 to well over $500 per bottle." Expert Report of Doug Frost, at 5:6-7, having performed a study of To Kalon wine prices. *See* Frost Report at ¶15 (Bales Declaration, Ex. B). The Ezell Survey sought to identify consumers of premium wines by asking whether (a) each survey respondent had purchased a bottle of wine costing at least $100 in the prior year and (b) if so, whether the respondent intended on purchasing a bottle of wine costing at least $100 in the upcoming year. Only those respondents who answered "Yes" to both questions were allowed to complete the survey.

infringement.

## V. CONCLUSION

As explained above, CBUSO grounds its Motion in the false statement that "Constellation is not *claiming* that consumers will be confused as to who 'makes or puts out' Plaintiff's wine." Motion at 2:9-10 (original italics). Indeed, CBUSO's Complaint repeatedly emphasizes that CBUSO's suit is intended to eliminate TVH's allegedly "unauthorized use" of the To Kalon marks to "***create an association between Constellation and Constellation's To Kalon Marks and wine***, on the one hand, ***and TVH and TVH's wine***, on the other hand." Comp., ¶ 4 (emphasis added). The questions TVH's expert asked in the consumer confusion survey directly test CBUSO's allegations. As such, the questions were relevant and the survey is admissible. Based on the foregoing, TVH respectfully requests the Court deny CBUSO's motion.

DATED: August 21, 2020

BUCHALTER
A Professional Corporation


By: _____/s/ Peter H. Bales_____
         PETER H. BALES

Attorneys for Plaintiff and Consolidated Case
Defendant The Vineyard House