UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE VINEYARD HOUSE, LLC.,** | Case No.  4:19-cv-01424-YGR |
| Plaintiff, | CONSOLIDATED CASE |
| v. | **POST-TRIAL ORDER RE: ATTORNEYS' FEES AND EXPERT FEES** |
| **CONSTELLATION BRANDS U.S. OPERATIONS, INC.,** | Dkt. Nos. 249, 250 |
| Defendant. | |
| **CONSTELLATION BRANDS U.S. OPERATIONS, INC.,** | |
| Plaintiff, | |
| v. | |
| **THE VINEYARD HOUSE, LLC**, | |
| Defendant. | |

On January 26, 2021, this Court issued a Rule 52 Order After Trial on the Merits ("Rule 52 Order," Dkt. No. 244) finding in favor of Constellation Brands U.S. Operations, Inc. ("Constellation") and against The Vineyard House, LLC ("TVH") on both the declaratory relief action, Case No. 19-cv-1424 ("Main Action") and the action necessitated by TVH's active infringement of Constellation's trademark, Case No. 20-cv-238 ("Second Action").[1]  Thereafter, Constellation filed a "Motion of Attorney Fees" and recovery of expert witness fees which is now fully briefed.  The Court, having considered the briefing, and good cause appearing, **HEREBY GRANTS IN PART** the motion as follows:[2]

---

[1] The Court assumes familiarity with the contents of the Rule 52 Order and the procedural history of this consolidated case.

[2] The Court also **GRANTS** Constellation's motion to seal (Dkt. No. 248), because the request is narrowly tailored and only includes confidential information.  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds these motions appropriate for decision without oral argument.

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.     LEGAL FRAMEWORK

The parties do not dispute the standard to be used in evaluating the motion, only its application.  Two legal standards apply.  First, with respect to attorneys' fees, the Lanham Act provides that in "exceptional cases," a court "may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  As the Supreme Court has explained, however, an "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *accord SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180 (9th Cir. 2016).  When determining whether to exercise its equitable discretion to award fees, a court is instructed to look to the "totality of the circumstances," and should consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).  Second, with respect to expert witness fees, Federal Rule of Civil Procedure 26(b)(4)(E) provides that absent "manifest injustice," a party who seeks discovery from an expert must "pay the expert a reasonable fee for time spent in responding to [the] discovery." Fed. R. Civ. P. 26(b)(4)(E).  The Court addresses each.

# II.     APPLICATION

## A.     Attorneys' Fees Under the Lanham Act

This Court cannot recall a single instance where it awarded attorneys' fees under a standard requiring "exceptional" or "extraordinary" circumstances (as opposed to fees authorized by statute or contract to a prevailing party).  In short, this case should never have been tried.  Perhaps, it should never have been brought.  Unlike Mr. Beckstoffer, TVH did not have a legitimate claim.

However, even giving TVH the benefit of the doubt, certainly, after the Court issued a preliminary injunction, the action should have resolved. The fact that TVH ignored a walk-away

offer is baffling.  To the extent that TVH now interprets the Court's Rule 52 Order to argue that its claim had any merit, the Court can only surmise that TVH has seized on a few phrases included to cushion the landing for the lawyers hired to pursue, unfortunately, a client's bidding.[3]  Ultimately though, a line must exist across which litigants, and lawyers, should not cross without consequence.  This is the line defined by the concept of "exceptional."  This is the line that TVH cavalierly traversed without any regard for the attendant costs or impact.

Mr. Nickel, whose actions are one and the same with TVH, showed himself to be one who cared not whether he was acting in a rash manner, who indiscriminately ignored the findings of experts when the findings did not suit him and the established parameters of the law in the context of pending litigation, while later downplaying the actions in his testimony.  Courts should be used in good faith and not as a relatively free means to test one's self-centered, unfounded ideas.  An award of attorneys' fees impresses upon those who use the courts primarily for self-indulgent purposes, and without regard for the law, that the cost will be greater than that expended on their own side of the ledger.

The Court will not regurgitate the findings of the Rule 52 Order which outlined the lack of any substantive legal or factual basis for pursuing the lawsuit,[4] other than to highlight some critical issues which epitomize the point:

1. Constellation owns and owned an incontestable trademark on the term TO KALON and TO KALON VINEYARD on wine since 1988.  Moreover, the Patent and Trademark Office warned TVH against using the mark.

2. The record evidence contained overwhelming numbers of references showing that Mr. Crabb used To Kalon (or some variation thereof) as a brand on wine, the name of a company, and the name of his vineyard, all simultaneously.  While, of course, the term

---

[3] For instance, the reference in the Rule 52 Order that the "record is replete with conflicting evidence showing how narrow, or alternatively, how widespread, is the reference to To Kalon" says nothing about the unambiguous finding that To Kalon does not, and never has, related to the Baldridge property.

[4] The Court concurs with the recitation of citations to the record in Constellation's moving papers.  As noted, the Court does not repeat the same here.

also included the alluvial fields in Oakville, the argument that it only referred to a vineyard was specifically contradicted by the evidence for which there was no argument addressing this glaring inconsistency.

3. TVH's case is not, and never was, Mr. Beckstoffer's case, the latter of whom owned some of the alluvial, grape-growing fields which were previously owned by H.W. Crabb. Further, Mr. Beckstoffer acted as a reasonable businessperson would in settling his own case with a license, understanding the metes and bounds of the law.

4. No historical records exist to show that the Baldridge Parcel was ever used to grow grapes. This was confirmed by an independent examiner, *before the litigation commenced,* hired by TVH itself and relied upon for permitting purposes with Napa County.  The examiner explicitly advised of the lack of any connection to wine making. The hiring of an academic who is willing to testify to a strained reading of a couple of sentences in a historic report does not provide a valid counter-narrative.  Rather, it is easily disregarded as irrelevant.

5. Mr. Nickel demonstrated himself to be obsessive in his desire to leverage the To Kalon name by importing it to all parts of his various businesses including wine and horse racing and ignoring the advice of his own employees regarding the use of the term as a likely trademark violation.

6. Finally, TVH raised so many issues in a desperate attempt to make something out of nothing that it is not surprising that costs skyrocketed.  Constellation did have to defend and respond in kind.  Constellation submits, and TVH does not contend otherwise, that the parties exchanged 63 sets of discovery or responses and twenty-two expert reports, including a damages expert opining that TVH was entitled to approximately $25.7 million in damages.  The parties took 21 depositions; 5 of which were experts.  Motion practice included two rounds of motions related to pleadings, preliminary injunctions, and discovery disputes.  For trial, the parties presented more than 1000 trial exhibits.

Across the board, TVH's theories proffered at trial lacked merit and any factual basis. The notion that one can hire an expert who is willing to testify to some proffered theory does not create a

4

1 | foundation to argue that the lawsuit had a meritorious basis.  An expert's opinion must be

2 | grounded in the record.  Where the factual basis is vacuous, so too are the expert's opinions.

3 |       TVH's authorities do not compel a different result as each is distinguishable.  *See Globefill*

4 | *Inc., v. Elements Spirits, Inc.*, 756 F. App'x 764, 766 (9th Cir. 2019) (affirming the district court's

5 | determination that the case was not exceptional where the losing party had reasonable litigation

6 | positions); *Angioscore, Inc. v. Trireme Med., Inc.*, No. 12-CV-03393-YGR, 2015 WL 8293455, at

7 | *2 (N.D. Cal. Dec. 9, 2015) (finding no exceptional case where the case was reasonably litigated

8 | by all parties); *Netlist, Inc. v. Diablo Techs., Inc.*, No. 13-CV-5962 YGR, 2015 WL 5157315, at

9 | *2 (N.D. Cal. Sept. 1, 2015), aff'd, 667 F. App'x 774 (Fed. Cir. 2016) (finding no exceptional case

10 | where plaintiff submitted credible evidence and expert testimony, thereby making the case not

11 | objectively unreasonable); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-CV-01647-YGR, 2015 WL

12 | 5542995, at *2 (N.D. Cal. Sept. 18, 2015), aff'd, 710 F. App'x 889 (Fed. Cir. 2018) (finding no

13 | exceptional case where defendant conceded that plaintiff had at least a colorable basis for an

14 | infringement case against it); *Gonzalez v. Tagged, Inc.*, No. 16-CV-00574-YGR, 2016 WL

15 | 4376343, at *3 (N.D. Cal. Aug. 17, 2016) (holding no exceptional case where a magistrate judge's

16 | prior finding and a jury verdict suggested that plaintiff's underlying lawsuit was not objectively

17 | unreasonable).  As noted above, and confirmed by case cites, this Court does not award such fees

18 | lightly.

19 |       In summary, when a myopic view of litigation untethered to the realities of the facts and

20 | the law converge, one finds an "exceptional" case.  Fortunately, for the courts and opposing

21 | parties, such cases are seldom seen.  Usually, resources or business judgment serve to counsel

22 | reasonableness.  Unfortunately, no such external force bridled the plaintiff here.

23 |      **B.**    **Reasonableness of Attorneys' Fees**

24 |       The parties agree that to "calculate reasonable attorneys' fees in a case brought under the

25 | Lanham Act, courts utilize the lodestar method." *Athena Cosmetics, Inc. v. Timbo Trading Co.*,

26 | 2020 WL 4805470, at *3 (C.D. Cal. 2020) "The lodestar figure is calculated by multiplying the

27 | number of hours the prevailing party reasonably expended on the litigation (as supported by

28 |

*United States District Court*
*Northern District of California*

1 adequate documentation) by a reasonable hourly rate for the region and for the experience of the

2 lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016).

3       Constellation seeks reimbursement of fees of $4,419,57.90. Alternatively, they seek

4 reimbursement of $190,517.30 with respect to the Second Action and $2,570,164 on the Main

5 Action for time spent after the Court's issuance of the Preliminary Injunction Order. (*See* Second

6 Action, Dkt. 40.) Even though the Court could likely find recoverable fees incurred *prior* to the

7 issuance of its Order Granting Motion for Preliminary Injunction ("PI-Order"), those fees incurred

8 after are certainly recoverable. Three factors weigh towards that infliction point. First, by that

9 date, the legal theories and the Court's analysis had been vetted. Second, Constellation offered to

10 resolve the matter with both sides walking away without further expense. Third, TVH understood

11 its factual arguments and expert analysis. Given Constellations' offer, much of the remaining

12 depositions and intense trial preparation could have reasonably been avoided.

13       **Number of Hours Spent**:

14       With respect to the Second Action, the total hours billed equaled 246.5, and with respect to

15 the other, the hours billed post the PI-Order totaled 3,260.2. In one paragraph, TVH complains

16 that Constellation's counsel "overstaffed and over-worked this case" contrasting it with its own

17 approach of using two lawyers and one paralegal billing "far fewer hours." TVH cites

18 Constellation's use of ten lawyers, five paralegals, and three other billable staff. Notably, plaintiff

19 does not take issue with a single entry, nor does it advise the Court how many hours its own

20 counsel spent. Rather, it merely asks the Court to reduce the amount so that "only hours

21 reasonable expended" are assessed.

22       TVH overstates the facts. A review of the documentation shows that the case was

23 principally litigated by five attorneys (Edward Colbert, Erik Kane, William Merone, Jeremy

24 Boczko, and Armin Ghiam). The ranges of experience are appropriate for the size and complexity

25 of this case. The others played an insignificant role. Further, the hours billed post the PI-Order

26 were reasonably incurred. Having reviewed the billings, the Court confirms that defense counsel

27 has eliminated block billing, potentially duplicative charges, and those billings related to an

28 unsuccessful claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

However, the Court does make further adjustments.  First, given the award of attorneys' fees, the Court does eliminate those hours expended (a) on Constellation's unsuccessful attempt to settle and (b) on the unsuccessful opposition to the TVH's motion to amend.  These entries subtotal $7,326.41 and $41,470.19, respectively.  Second, the Court does not award any fees for the filing of the motion for attorneys' fees.  Not only is over $102,500.00 excessive for this motion, but the entries contain research attempting to find authority to support this portion of the award. Having not read any legal justification in the briefing, the Court surmises that Constellation could not find any such authority.  Third, the research relative to the Bill of Costs was also excessive and the Court discounts those fees by $10,000.00.  Finally, the Court deducts an across-the-board amount of ten percent.  It is the Court's experience that attorneys can always be more efficient.  A ten percent savings is a reasonable estimate to achieve that end.

**Hourly Billing Rates:**

 TVH argues that the billing rates tendered are not commensurate with those more common in the Northern District of California, but are at a premium for New York and Washington, D. C.  The Court disagrees.  While slightly on the high side, the rates are within the range of those charged in the Northern District by lawyers practicing intellectual property. Constellation has justified the rates with third party analysis and the amounts are consistent with others with which this Court is familiar.

**Summary:**

Based on the foregoing, the Court calculates the award of attorneys' fees as follows:  On the requested amount of $190,517.30 with respect to the Second Action plus $2,570,164 for work on the Main Action after the PI Order subtotaling $2,760,681.30, the Court deducts (a) $7,326.41; (b) $41,470.19; (c) $102,500.00; and (d) $10,000.00 resulting in $2,599,384.70.  From this figure, the Court deducts ten percent and awards a net amount of $2,339,446.23.

**C.      Expert Fees Under Federal Rule of Civil Procedure 26(b)(4)(E)**

Federal Rule of Civil Procedure 26(b)(4)(E) mandates that a court "require that [a] party seeking discovery [from an expert]: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and (ii) for discovery under (D), also pay the other

7

United States District Court
Northern District of California

1    party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts

2    and opinions."  Subsection (A) applies here as it relates to the "Deposition of an Expert Who May

3    Testify," more specifically, it provides that "[a] party may depose any person who has been

4    identified as an expert whose opinions may be presented at trial."

5            In terms of evaluating the reasonableness of the request, the Court agrees that it should use

6    its discretion and consider objective criteria such as: "(1) the witness's area of expertise; (2) the

7    education and training required to provide the expert insight that is sought; (3) the prevailing rates

8    of other comparably respected available experts; (4) the nature, quality, and complexity of the

9    discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6)

10   fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist

11   the court in balancing the interest[s] implicated by Rule 26."  *Granite Rock Co. v. Int'l Bhd. of*

12   *Teamsters*, No. C 04-2767 JW (RS), 2008 WL 618897, at *1 (N.D. Cal. Mar. 3, 2008) *citing*

13   *Fisher-Price, Inc. v. Safety 1st, Inc.,* 217 F.R.D. 329, 333 (D. Del. 2003).

14           Here, Constellation seeks reimbursement of $20,981 which represents the expert fees

15   associated with four depositions, both in terms of preparation for the deposition and the deposition

16   itself.  The parties disagree over whether Constellation can seek amounts for preparation.

17   Apparently, district courts are split on this issue and the Ninth Circuit has not ruled.

18           To resolve the dispute, the Court relies on the plain language of the rule and finds that

19   nothing in the plain language mandates the reimbursement for preparation time associated with the

20   deposition.  The extent to which such preparation is needed and beneficial lies more with the

21   responding party rather than the party noticing the deposition.  Given the obligation to reimburse,

22   the noticing party can control the extent to which it requires the testimony in order to prepare for

23   trial.  Thus, the Court awards $11,681.00 which represents the 16.33 hours the three experts

24   actually spent in deposition.  The Court finds the hourly rates charged reasonable.  Certainly,

25   plaintiff was on notice of the amount and could have shortened the deposition if it believed the

26   rates were too high.

27   **III.    CONCLUSION**

28           For the reasons set forth herein, the Court **HEREBY GRANTS** the motion but in an amount

1  less than the full amount requested, namely attorneys' fees in the amount of $2,339,446.23 and

2  reimbursement of expert fees in the amount of $11,681.00 for a total amount of $2,351,127.23.

3       This Order terminates Docket Nos. 249 and 250.

4       **IT IS SO ORDERED.**

5  Dated:  July 28, 2021

7            YVONNE GONZALEZ ROGERS
          UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

9